# 25-564

## United States Court of Appeals
### *for the*
## Second Circuit

JANE DOE,

*Plaintiff-Appellee,*

– v. –

LEON BLACK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## DEFENDANT-APPELLANT'S APPENDIX

E. DANYA PERRY
JOSHUA PERRY
PERRY LAW
445 Park Avenue, 7th Floor
New York, New York 10022
(212) 213-3070

SUSAN ESTRICH
ESTRICH GOLDIN LLP
947 Berkeley Street
Santa Monica, California 90403
(213) 399-2132

MICHAEL B. CARLINSKY
JENNIFER J. BARRETT
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

CHRISTOPHER G. MICHEL
RACHEL G. FRANK
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000

*Attorneys for Defendant-Appellant*

June 17, 2025

i

# TABLE OF CONTENTS

| | Page |
|---|---|
| Civil Docket Entries | A-1 |
| Complaint, dated July 25, 2023 | A-33 |
| Notice of Motion, by Defendant, to Dismiss the Complaint, dated September 29, 2023 | A-52 |
| Opinion and Order of the Honorable Jessica G.L. Clarke, dated September 27, 2024 | A-54 |
| First Amended Complaint, dated November 7, 2024 | A-74 |
| Petition for Permission for Leave to Appeal, dated November 18, 2024 | A-97 |
| Order Granting Leave to Appeal, filed March 11, 2025 | A-147 |

A-1

SDNY CM/ECF NextGen Version 1.8.3

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:23-cv-06418-JGLC

Doe v. Black
Assigned to: Judge Jessica G. L. Clarke
Cause: 28:1332pi Diversity-Personal Injury

Date Filed: 07/25/2023
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Jane Doe**                    represented by **Jane Doe**
P.O. BoX 286
Haymarket, VA 20168
Email: jane.doe06418@gmail.com
PRO SE

**Douglas Holden Wigdor**
Wigdor LLP
85 Fifth Avenue
5th fl.
New York, NY 10003
212-239-9292
Fax: 212-239-9001
Email: dwigdor@wigdorlaw.com
*TERMINATED: 04/09/2025*

**John S. Crain**
Wigdor LLP
85 Fifth Ave.
Ste Fifth Floor
New York, NY 10003
212-257-6800
Fax: 212-257-6845
Email: jcrain@wigdorlaw.com
*ATTORNEY TO BE NOTICED*

**Meredith Anne Firetog**
Wigdor LLP
85 Fifth Avenue
Fifth Floor
New York, NY 10003
212-257-6800
Email: mfiretog@wigdorlaw.com
*ATTORNEY TO BE NOTICED*

**Jeanne-Marie Bates Christensen**
Wigdor LLP

A-2

SDNY CM/ECF NextGen Version 1.8.3

85 Fifth Avenue
5th fl.
New York, NY 10003
212-257-6800
Fax: 212-257-6845
Email: jchristensen@wigdorlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Leon Black**                          represented by  **E. Danya Perry**
E. Danya Perry PLLC DBA Perry Law
445 Park Avenue, 7th Floor
Ste 7th Floor
New York, NY 10022
212-840-7939
Fax: 646-849-9609
Email: dperry@danyaperrylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Kitsock Parachini**
E. Danya Perry PLLC DBA Perry Law
445 Park Avenue, 7th Floor
New York, NY 10022
212-213-3070
Fax: 646-849-9609
Email: aparachini@danyaperrylaw.com
*ATTORNEY TO BE NOTICED*

**Jacqueline M Stykes**
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016
212-849-7543
Email:
Jacquelinestykes@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Jennifer J. Barrett**
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016
212-849-7155
Fax: 212-849-7100
Email: jenniferbarrett@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Michael Barry Carlinsky**
Quinn Emanuel Urquhart & Sullivan LLP
295 5th Avenue
New York, NY 10016

A-3

212-849-7000
Fax: 212-849-7100
Email:
michaelcarlinsky@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Peter Anthony Gwynne**
E. Danya Perry PLLC DBA Perry Law
445 Park Avenue, 7th Floor
New York, NY 10022
212-393-4250
Fax: 646-849-9609
Email: pgwynne@danyaperrylaw.com
*ATTORNEY TO BE NOTICED*

**Ryan Adam Rakower**
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016
212-849-7000
Email: ryanrakower@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Susan Rachel Estrich**
Estrich Goldin LLP
947 Berkeley St.
Santa Monica, CA 90403
213-399-2132
Email: susan@estrichgoldin.com
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Non-Party**                    represented by **Brittany Henderson**
Edwards Henderson
425 North Andrew Avenue
Ste 2
Fort Lauderdale, FL 33301
954-524-2820
Fax: 954-524-2822
Email: brittany@cvlf.com
*ATTORNEY TO BE NOTICED*

**Paul G Cassell**
S.J. Quinney College of Law At The
University of Utah
383 S. University Street
Salt Lake City, UT 84112-0730
(801)-585-5202
Fax: (801)-585-2750
Email: cassellp@law.utah.edu
*ATTORNEY TO BE NOTICED*

A-4

SDNY CM/ECF NextGen Version 1.8.3

| Date Filed | # | Docket Text |
|---|---|---|
| 07/25/2023 | 1 | COMPLAINT against Leon Black. (Filing Fee $ 402.00, Receipt Number ANYSDC-28050017)Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 07/25/2023) |
| 07/25/2023 | 2 | CIVIL COVER SHEET filed..(Christensen, Jeanne-Marie) (Entered: 07/25/2023) |
| 07/25/2023 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Leon Black, re: 1 Complaint. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 07/25/2023) |
| 07/26/2023 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Jessica G. L. Clarke. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 07/26/2023) |
| 07/26/2023 | | Magistrate Judge Robert W. Lehrburger is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vf) (Entered: 07/26/2023) |
| 07/26/2023 | | Case Designated ECF. (vf) (Entered: 07/26/2023) |
| 07/26/2023 | 4 | ELECTRONIC SUMMONS ISSUED as to Leon Black..(pc) (Entered: 07/26/2023) |
| 07/26/2023 | 5 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 10/19/2023 at 03:00 PM in Courtroom 20C, 500 Pearl Street, New York, NY 10007 before Judge Jessica G. L. Clarke. (Signed by Judge Jessica G. L. Clarke on 7/26/2023) (tro) (Entered: 07/26/2023) |
| 08/10/2023 | 6 | MOTION for Leave to Appear Anonymously . Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 08/10/2023) |
| 08/10/2023 | 7 | DECLARATION of Jeanne M. Christensen in Support re: 6 MOTION for Leave to Appear Anonymously .. Document filed by Jane Doe. (Attachments: # 1 Exhibit 1). (Christensen, Jeanne-Marie) (Entered: 08/10/2023) |
| 08/10/2023 | 8 | MEMORANDUM OF LAW in Support re: 6 MOTION for Leave to Appear Anonymously . . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 08/10/2023) |
| 08/10/2023 | 9 | PROPOSED ORDER. Document filed by Jane Doe. Related Document Number: [Dkt. No. 6]..(Christensen, Jeanne-Marie) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 08/10/2023) |
| 08/11/2023 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 9 Proposed Order was reviewed and approved as to form. (tp)** (Entered: 08/11/2023) |
| 08/11/2023 | 10 | NOTICE OF APPEARANCE by Meredith Anne Firetog on behalf of Jane Doe..(Firetog, Meredith) (Entered: 08/11/2023) |
| 08/14/2023 | 11 | NOTICE OF APPEARANCE by E. Danya Perry on behalf of Leon Black..(Perry, E. Danya) (Entered: 08/14/2023) |
| 08/14/2023 | 12 | NOTICE OF APPEARANCE by Peter Anthony Gwynne on behalf of Leon Black.. (Gwynne, Peter) (Entered: 08/14/2023) |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| 08/14/2023 | 13 | NOTICE OF APPEARANCE by Michael Barry Carlinsky on behalf of Leon Black.. (Carlinsky, Michael) (Entered: 08/14/2023) |
| 08/14/2023 | 14 | NOTICE OF APPEARANCE by Jennifer J. Barrett on behalf of Leon Black..(Barrett, Jennifer) (Entered: 08/14/2023) |
| 08/14/2023 | 15 | RESPONSE to Motion re: 6 MOTION for Leave to Appear Anonymously . . Document filed by Leon Black. (Attachments: # 1 Exhibit A - Declaration of E. Danya Perry, # 2 Exhibit B - Declaration of Carlos Melendez).(Perry, E. Danya) (Entered: 08/14/2023) |
| 08/18/2023 | 16 | ORDER granting 6 Motion for Leave to Appear. For the reasons stated above, the Court GRANTS Plaintiff's motion. The Clerk of Court is respectfully directed to terminate ECF No. 6. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 8/18/2023) (jca) (Entered: 08/18/2023) |
| 08/25/2023 | 17 | CONSENT LETTER MOTION for Extension of Time to File Answer re: 1 Complaint addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated August 25, 2023. Document filed by Leon Black..(Gwynne, Peter) (Entered: 08/25/2023) |
| 08/28/2023 | 18 | ORDER granting 17 Letter Motion for Extension of Time to Answer re 17 CONSENT LETTER MOTION for Extension of Time to File Answer re: 1 Complaint addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated August 25, 2023., 1 Complaint. Application GRANTED. Defendant shall answer, move or otherwise respond to the Complaint by September 29, 2023. SO ORDERED. Leon Black answer due 9/29/2023. (Signed by Judge Jessica G. L. Clarke on 8/28/2023) (tg) (Entered: 08/28/2023) |
| 08/31/2023 | 19 | MOTION for Susan Estrich to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28227394. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Leon Black. (Attachments: # 1 Affidavit of Susan Estrich, # 2 Exhibit A - Certificate of Good Standing - CA, # 3 Proposed Order for Admission Pro Hac Vice).(Estrich, Susan) (Entered: 08/31/2023) |
| 09/01/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 19 MOTION for Susan Estrich to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28227394. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 09/01/2023) |
| 09/01/2023 | 20 | ORDER FOR ADMISSION PRO HAC VICE granting 19 Motion for Susan Estrich to Appear Pro Hac Vice. The motion of Susan Estrich for admission to practice Pro Hac Vice in the above-captioned action is granted. As further set forth by this Order. (Signed by Judge Jessica G. L. Clarke on 9/1/2023) (stt) (Entered: 09/01/2023) |
| 09/20/2023 | 21 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023. Document filed by Leon Black..(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 22 | MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*. Document filed by Leon Black.. (Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 23 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*. . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 24 | ***SELECTED PARTIES***DECLARATION of Carlos Melendez in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |

| 09/20/2023 | 25 | ***SELECTED PARTIES***DECLARATION in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |
| --- | --- | --- |
| 09/20/2023 | 26 | ***SELECTED PARTIES***DECLARATION of Susan Estrich in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 27 | ***SELECTED PARTIES***DECLARATION of Carlos Melendez in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 28 | ***SELECTED PARTIES***DECLARATION in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 29 | DECLARATION of Susan Estrich in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 30 | MEMORANDUM OF LAW in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11. (Defendant Leon Black's Memorandum of Law in Support of his Motion for Sanctions against Wigdor LLP and Jeanne Christensen)*. Document filed by Leon Black.. (Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 31 | DECLARATION of Carlos Melendez in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 09/20/2023) |
| 09/20/2023 | 32 | DECLARATION in Support re: 22 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 09/20/2023) |
| 09/21/2023 | 33 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated September 21, 2023 re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023. *Opposition and Further Request to Seal*. Document filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Firetog, Meredith) (Entered: 09/21/2023) |
| 09/21/2023 | 34 | DECLARATION of Meredith A. Firetog in Opposition re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023.. Document filed by Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3). (Firetog, Meredith) (Entered: 09/21/2023) |
| 09/21/2023 | 35 | ***SELECTED PARTIES***LETTER RESPONSE in Opposition to Motion addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated September 21, 2023 re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023. *Opposition and Further Request to Seal*. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit A, # 2 Exhibit B)Motion or Order to File Under Seal: 33 .(Firetog, Meredith) (Entered: 09/21/2023) |
| 09/21/2023 | 36 | ***SELECTED PARTIES***DECLARATION of Meredith A. Firetog in Opposition re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023.. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)Motion or Order to File Under Seal: 33 .(Firetog, Meredith) (Entered: 09/21/2023) |
| 09/22/2023 | 37 | ***SELECTED PARTIES***LETTER REPLY to Response to Motion addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 22, 2023 re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| | | September 20, 2023. . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 21 .(Estrich, Susan) (Entered: 09/22/2023) |
| 09/25/2023 | 38 | PROPOSED STIPULATION AND ORDER. Document filed by Jane Doe..(Firetog, Meredith) (Entered: 09/25/2023) |
| 09/26/2023 | 39 | STIPULATION NOW THEREFORE, the parties hereby stipulate and agree that: 1. The deadline for Plaintiff's opposition to Defendants Motion for Sanctions is extended from October 4, 2023 to October 18, 2023; 2. The deadline for Defendant's reply in support of his Motion for Sanctions is extended from October 11, 2023 to October 30, 2023; 3. The deadline for Plaintiff's response to Defendants anticipated Motion to Dismiss is extended from October 13, 2023 to November 3, 2023; and 4. The deadline for Defendant's reply in support of his anticipated Motion to Dismiss is extended from October 20, 2023 to November 17, 2023. STIPULATED AND AGREED. SO ORDERED. ( Replies due by 11/17/2023., Responses due by 11/3/2023) (Signed by Judge Jessica G. L. Clarke on 9/25/2023) (jca) (Entered: 09/26/2023) |
| 09/29/2023 | 40 | MOTION to Dismiss . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 09/29/2023) |
| 09/29/2023 | 41 | MEMORANDUM OF LAW in Support re: 40 MOTION to Dismiss . . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 09/29/2023) |
| 10/03/2023 | 42 | LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 3, 2023 re: Opposition to Plaintiff's proposed redactions. Document filed by Leon Black.. (Estrich, Susan) (Entered: 10/03/2023) |
| 10/05/2023 | 43 | ORDER: On September 20, 2023, Defendant publicly filed a partially redacted motion for sanctions. ECF No. 22. On September 21, 2023, Plaintiff made an emergency application to seal the motion and related submissions, proposing additional redactions. ECF No. 33. Defendant argues that Plaintiff's additional proposed redactions should be denied. ECF No. 37. The parties are directed to meet and confer by October 12, 2023 regarding Plaintiff's requested redactions, keeping in mind the presumption of public access to judicial documents and the standard set forth in Lugosch v. Pyramid Co. of Onondoga, 435 F.3d 110 (2d Cir. 2006). If the parties agree on the requested redactions to the motion for sanctions and related submissions, and if the redactions are consistent with the standard articulated in Lugosch, the parties shall file a joint letter to that effect. The letter should describe the basis for the redactions, and the parties should attach a proposed order directing Defendant to file a redacted copy of the motion for sanctions and related submissions. This joint letter and proposed order shall be filed by October 16, 2023. If the parties disagree on the redactions, Plaintiff shall file a letter explaining its position by October 16, 2023. Defendants shall reply by October 23, 2023. The parties' letters shall be filed under seal pending resolution of this motion. Any letter shall be no more than five pages. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/5/2023) (tg) (Entered: 10/05/2023) |
| 10/10/2023 | 44 | JOINT LETTER MOTION for Extension of Time to File *Case Management Plan and Scheduling Order* addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 10, 2023. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/10/2023) |
| 10/11/2023 | 45 | ***SELECTED PARTIES***JOINT LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 11, 2023 re: parties' agreed upon redactions to Defendant's partially redacted Motion for Sanctions. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1 - Agreed Upon Redactions of Defendant's Motion for Sanctions, # 2 Exhibit 2 - Text of Proposed Order)Motion or Order to File Under Seal: 33 .(Estrich, Susan) (Entered: 10/11/2023) |

| 10/12/2023 | 46 | ORDER granting 44 Letter Motion for Extension of Time to File. Application GRANTED. The initial pretrial conference is hereby RESCHEDULED for December 8, 2023 at 2:00 p.m. The joint letter and proposed Case Management Plan is due one week prior, December 1, 2023. (Signed by Judge Jessica G. L. Clarke on 10/12/2023) (ate) (Entered: 10/12/2023) |
| 10/12/2023 | | Set/Reset Hearings: Initial Conference set for 12/8/2023 at 02:00 PM before Judge Jessica G. L. Clarke. (ate) (Entered: 10/12/2023) |
| 10/17/2023 | 47 | ORDER granting 21 Letter Motion to Seal. The Court appreciates the parties' efforts to reach a resolution regarding the proposed redactions. The proposed redactions for the Memorandum of Law in support of the Motion for Sanctions are hereby GRANTED. To the extent the proposed redactions in the Melendez Declaration are already published on the docket at ECF No. 15-2, that material shall not be redacted. It is hereby ORDERED that Defendant file a redacted copy of the motion for sanctions and related submissions that conform to this Order by October 18, 2023. The parties are further directed to redact, consistent with this Order, their respective filings (ECF Nos. 21, 35, 36, 37 and 45) and re-file them by October 18, 2023. The Clerk of Court is respectfully directed to terminate ECF No. 21. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/17/2023) (tg) (Entered: 10/17/2023) |
| 10/17/2023 | 48 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 49 | MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*. Document filed by Leon Black.. (Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 50 | DECLARATION of Susan Estrich in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 51 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*. . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 48 .(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 52 | ***SELECTED PARTIES***DECLARATION of Carlos Melendez in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 48 .(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 53 | ***SELECTED PARTIES***DECLARATION in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 48 .(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 54 | MEMORANDUM OF LAW in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11. (REDACTED).* Document filed by Leon Black..(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 55 | DECLARATION of Carlos Melendez (REDACTED) in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/17/2023) |
| 10/17/2023 | 56 | DECLARATION of (REDACTED) in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11*.. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/17/2023) |
| 10/18/2023 | 57 | DECLARATION of Meredith A. Firetog in Opposition re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023.. Document filed by Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3). (Firetog, Meredith) (Entered: 10/18/2023) |

A-9

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| 10/18/2023 | 58 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated September 21, 2023 re: 21 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated September 20, 2023. . Document filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Firetog, Meredith) (Entered: 10/18/2023) |
| 10/18/2023 | 59 | MEMORANDUM OF LAW in Opposition re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.* . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 10/18/2023) |
| 10/18/2023 | 60 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.* . Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 47 .(Christensen, Jeanne-Marie) (Entered: 10/18/2023) |
| 10/18/2023 | 61 | DECLARATION of Jeanne M. Christensen in Opposition re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.*. Document filed by Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9).(Christensen, Jeanne-Marie) (Entered: 10/18/2023) |
| 10/18/2023 | 62 | ***SELECTED PARTIES***DECLARATION of Jeanne M. Christensen in Opposition re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.* Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)Motion or Order to File Under Seal: 47 .(Christensen, Jeanne-Marie) (Entered: 10/18/2023) |
| 10/25/2023 | 63 | LETTER addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated October 25, 2023 re: Plaintiffs opposition to Defendants Motion for Sanctions. Document filed by Jane Doe. (Attachments: # 1 Exhibit 1).(Firetog, Meredith) (Entered: 10/25/2023) |
| 10/30/2023 | 64 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 30, 2023. Document filed by Leon Black. (Attachments: # 1 Exhibit A - Letter dated August 25, 2023).(Estrich, Susan) (Entered: 10/30/2023) |
| 10/30/2023 | 65 | REPLY MEMORANDUM OF LAW in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.* . Document filed by Leon Black..(Estrich, Susan) (Entered: 10/30/2023) |
| 10/30/2023 | 66 | ***SELECTED PARTIES***DECLARATION of Susan Estrich in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.* Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit A - Letter dated August 25, 2023)Motion or Order to File Under Seal: 64 .(Estrich, Susan) (Entered: 10/30/2023) |
| 10/30/2023 | 67 | DECLARATION of Susan Estrich in Support re: 49 MOTION for Sanctions *Pursuant to Fed. R. Civ. P. 11.*. Document filed by Leon Black. (Attachments: # 1 Exhibit A- Letter dated August 25, 2023).(Estrich, Susan) (Entered: 10/30/2023) |
| 10/31/2023 | 68 | ORDER denying as moot 48 Letter Motion to Seal; granting 64 Letter Motion to Seal. Application GRANTED. The Clerk of Court is directed to terminate ECF No. 64. The Clerk of Court is further directed to terminate ECF No. 48 as moot. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/31/2023) (jca) (Entered: 10/31/2023) |
| 11/03/2023 | 69 | RESPONSE in Opposition to Motion re: 40 MOTION to Dismiss . . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 11/03/2023) |
| 11/17/2023 | 70 | REPLY MEMORANDUM OF LAW in Support re: 40 MOTION to Dismiss . . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 11/17/2023) |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| 12/01/2023 | 71 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 1, 2023 re: Initial Pretrial Conference. Document filed by Jane Doe. (Attachments: # 1 Exhibit Exhibit A - Civil Case Management Plan and Scheduling Order).(Christensen, Jeanne-Marie) (Entered: 12/01/2023) |
| 12/04/2023 | 72 | MEMO ENDORSEMENT on re: 71 Letter, filed by Jane Doe. ENDORSEMENT: The initial pretrial conference, scheduled for December 8, 2023, is hereby ADJOURNED sine die. Defendant's motion to stay discovery to be filed by December 8, 2023, Plaintiff's opposition to be filed by December 22, 2023 and Defendant's reply to be filed by December 29, 2023. SO ORDERED. ( Motions due by 12/8/2023., Responses due by 12/22/2023, Replies due by 12/29/2023.) (Signed by Judge Jessica G. L. Clarke on 12/4/2023) (tg) (Entered: 12/04/2023) |
| 12/08/2023 | 73 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated December 8, 2023. Document filed by Leon Black..(Estrich, Susan) (Entered: 12/08/2023) |
| 12/08/2023 | 74 | MOTION to Stay . Document filed by Leon Black..(Estrich, Susan) (Entered: 12/08/2023) |
| 12/08/2023 | 75 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 74 MOTION to Stay . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 73 .(Estrich, Susan) (Entered: 12/08/2023) |
| 12/08/2023 | 76 | ***SELECTED PARTIES***DECLARATION of Susan Estrich in Support re: 74 MOTION to Stay .. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1 to Declaration (Under Seal), # 2 Exhibit 2 to Declaration (Under Seal), # 3 Exhibit 3 to Declaration (Under Seal), # 4 Exhibit 4 to Declaration (Under Seal), # 5 Exhibit 5 to Declaration (Under Seal), # 6 Exhibit 6 to Declaration (Under Seal), # 7 Exhibit 7 to Declaration (Under Seal), # 8 Exhibit 8 to Declaration (Under Seal), # 9 Exhibit 9 to Declaration (Under Seal), # 10 Exhibit 10 to Declaration (Under Seal), # 11 Exhibit 11 to Declaration (Under Seal), # 12 Exhibit 12 to Declaration (Under Seal), # 13 Exhibit 13 to Declaration (Under Seal), # 14 Exhibit 14 to Declaration (Under Seal), # 15 Exhibit 15 to Declaration (Under Seal), # 16 Exhibit 16 to Declaration (Under Seal))Motion or Order to File Under Seal: 73 .(Estrich, Susan) (Entered: 12/08/2023) |
| 12/08/2023 | 77 | MEMORANDUM OF LAW in Support re: 74 MOTION to Stay . . Document filed by Leon Black..(Estrich, Susan) (Entered: 12/08/2023) |
| 12/08/2023 | 78 | DECLARATION of Susan Estrich in Support re: 74 MOTION to Stay .. Document filed by Leon Black. (Attachments: # 1 Exhibit 1 to Declaration (Under Seal), # 2 Exhibit 2 to Declaration (Under Seal), # 3 Exhibit 3 to Declaration (Under Seal), # 4 Exhibit 4 to Declaration (Under Seal), # 5 Exhibit 5 to Declaration (Under Seal), # 6 Exhibit 6 to Declaration (Under Seal), # 7 Exhibit 7 to Declaration (Under Seal), # 8 Exhibit 8 to Declaration (Under Seal), # 9 Exhibit 9 to Declaration (Under Seal), # 10 Exhibit 10 to Declaration (Under Seal), # 11 Exhibit 11 to Declaration (Under Seal), # 12 Exhibit 12 to Declaration (Under Seal), # 13 Exhibit 13 to Declaration (Under Seal), # 14 Exhibit 14 to Declaration (Under Seal), # 15 Exhibit 15 to Declaration (Under Seal), # 16 Exhibit 16 to Declaration (Under Seal)).(Estrich, Susan) (Entered: 12/08/2023) |
| 12/21/2023 | 79 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 21, 2023 re: 73 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Susan Estrich dated December 8, 2023. . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 12/21/2023) |
| 12/21/2023 | 80 | MEMORANDUM OF LAW in Opposition re: 74 MOTION to Stay . . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 12/21/2023) |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| 12/21/2023 | 81 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 74 MOTION to Stay . . Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 73 .(Christensen, Jeanne-Marie) (Entered: 12/21/2023) |
| 12/27/2023 | 82 | LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated December 27, 2023 re: Respond to Plaintiff's letter-motion (ECF No. 79, the Wigdor Redaction Letter). Document filed by Leon Black..(Estrich, Susan) (Entered: 12/27/2023) |
| 12/27/2023 | 83 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated December 27, 2023 re: Respond to Plaintiff's letter-motion (ECF No. 79, the Wigdor Redaction Letter). Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit Plaintiff's opposition (ECF No. 81))Motion or Order to File Under Seal: 73 . (Estrich, Susan) (Entered: 12/27/2023) |
| 12/29/2023 | 84 | REPLY MEMORANDUM OF LAW in Support re: 74 MOTION to Stay . . Document filed by Leon Black..(Estrich, Susan) (Entered: 12/29/2023) |
| 03/04/2024 | 85 | NOTICE of Supplemental Authority re: 74 MOTION to Stay ., 40 MOTION to Dismiss .. Document filed by Leon Black. (Attachments: # 1 Exhibit A - Memorandum and Order, Bellino v. Tallarico, # 2 Exhibit B - Defendant's Memorandum, Bellino v. Tallarico). (Perry, E. Danya) (Entered: 03/04/2024) |
| 03/04/2024 | 86 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne Marie Christensen dated 03/04/2024 re: Defendant's Supplemental Authority. Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 03/04/2024) |
| 07/22/2024 | 87 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen re: notifying Court of anticipated Amended Complaint. Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 07/22/2024) |
| 08/09/2024 | 88 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated August 9, 2024 re: Update Regarding Amended Complaint. Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 08/09/2024) |
| 08/13/2024 | 89 | ORDER: On July 22, 2024, Plaintiff filed a letter indicating that she planned to file a motion for leave to amend, along with a proposed Amended Complaint, no later than the first week in August. ECF No. 87. On August 9, 2024, Plaintiff informed the Court that "Plaintiff will submit her motion for leave to amend the complaint in the coming weeks." ECF No. 88. It is hereby ordered that Plaintiff file her motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) by August 20, 2024. If Defendant plans to oppose the motion, such opposition is due September 3, 2024. Any reply by Plaintiff is due September 10, 2024. SO ORDERED. ( Motions due by 8/20/2024., Responses due by 9/3/2024, Replies due by 9/10/2024.) (Signed by Judge Jessica G. L. Clarke on 8/13/2024) (tg) (Entered: 08/13/2024) |
| 08/20/2024 | 90 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated August 20, 2024 re: Filing under seal the motion for leave to amend the complaint. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 08/20/2024) |
| 08/20/2024 | 91 | ***SELECTED PARTIES*** MOTION to Amend/Correct 1 Complaint . Document filed by Jane Doe, Leon Black.Motion or Order to File Under Seal: 90 .(Christensen, Jeanne-Marie) (Entered: 08/20/2024) |
| 08/20/2024 | 92 | ***SELECTED PARTIES***DECLARATION of Jeanne M. Christensen in Support re: 91 MOTION to Amend/Correct 1 Complaint .. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit A - Redlined copy of Proposed FAC, # 2 Exhibit B - Clean copy of Proposed FAC, # 3 Exhibit C - Proposed Order)Motion or Order to File Under Seal: 90 .(Christensen, Jeanne-Marie) (Entered: 08/20/2024) |

5/16/25, 3:45 PM                                          SDNY CM/ECF NextGen Version 1.8.3

| 08/20/2024 | 93 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 91 MOTION to Amend/Correct 1 Complaint . . Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 90 .(Christensen, Jeanne-Marie) (Entered: 08/20/2024) |
| --- | --- | --- |
| 08/23/2024 | 94 | LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 8/23/2024 re: Response to Plaintiff's Letter re Sealing (ECF 90). Document filed by Leon Black.. (Perry, E. Danya) (Entered: 08/23/2024) |
| 08/26/2024 | 95 | MEMO ENDORSEMENT on re: 94 Letter filed by Leon Black. ENDORSEMENT: The Clerk of Court is directed to unseal ECF Nos. 91, 92, 92-3, and 93. ECF Nos. 92-1 and 92-2 shall remain under seal pending the Court's decision on Plaintiff's motion for leave to amend. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 8/26/2024) (tg) (Entered: 08/26/2024) |
| 08/28/2024 | 96 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated August 28, 2024 re: Response to Defendant's Letter re Sealing (ECF 94). Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 08/28/2024) |
| 09/03/2024 | 97 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 91 MOTION to Amend/Correct 1 Complaint . addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 9/3/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 09/03/2024) |
| 09/04/2024 | 98 | ORDER granting 97 Letter Motion for Extension of Time to File Response/Reply.Application GRANTED. Defendant's opposition due September 4, 2024 and Plaintiff's reply due September 11, 2024. The parties are reminded that, per the Court's Individual Rules, requests for extensions must be made at least 48 hours prior to the deadline. The Clerk of Court is directed to terminate ECF No. 97. SO ORDERED. Responses due by 9/4/2024 Replies due by 9/11/2024. (Signed by Judge Jessica G. L. Clarke on 9/4/2024) (tg) (Entered: 09/04/2024) |
| 09/04/2024 | 99 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 9/4/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 09/04/2024) |
| 09/04/2024 | 100 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 91 MOTION to Amend/Correct 1 Complaint . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 99 .(Perry, E. Danya) (Entered: 09/04/2024) |
| 09/04/2024 | 101 | MEMORANDUM OF LAW in Opposition re: 91 MOTION to Amend/Correct 1 Complaint . . Document filed by Leon Black..(Perry, E. Danya) (Entered: 09/04/2024) |
| 09/11/2024 | 102 | REPLY MEMORANDUM OF LAW in Support re: 91 MOTION to Amend/Correct 1 Complaint . . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 09/11/2024) |
| 09/11/2024 | 104 | ***SELECTED PARTIES***DECLARATION of Jeanne M. Christensen in Support re: 91 MOTION to Amend/Correct 1 Complaint .. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 90 .(Christensen, Jeanne-Marie) (Entered: 09/11/2024) |
| 09/26/2024 | 105 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated September 26, 2024 re: Providing further authority on the N.Y.S. Child Victims Act in connection with Defendant's Motion to Dismiss. Document filed by Jane Doe. (Attachments: # 1 Exhibit A - Affidavit).(Christensen, Jeanne-Marie) (Entered: 09/26/2024) |
| 09/27/2024 | 106 | OPINION AND ORDER: For the reasons set forth above, Defendant's motion to dismiss is DENIED, Defendant's motion to stay is DENIED as moot, the parties' motions to seal |

| | | |
|---|---|---|
| | | are GRANTED in part and DENIED in part, and Defendant's motion for sanctions is DENIED. The parties are directed to publicly file versions of their materials related to the motion to stay (ECF Nos. 75 , 76 , and 81 ) that conform to Section III of this order no later than **October 4, 2024**. It is hereby ORDERED that the initial pretrial conference in this matter is set for **October 29, 2024** at **12:30 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. A proposed Civil Case Management Plan and Scheduling Order shall be filed by **October 22, 2024**. The Clerk of Court is directed to terminate ECF Nos. 22 , 40 , 49 , 73 , and 74 . (Signed by Judge Jessica G. L. Clarke on 10/29/2024) (stt) (Entered: 09/27/2024) |
| 10/01/2024 | 107 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 1, 2024 re: requesting the Court's authorization to serve three subpoenas. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 95 .(Estrich, Susan) (Entered: 10/01/2024) |
| 10/01/2024 | 108 | LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated October 1, 2024 re: requesting the Court's authorization to serve three subpoenas. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/01/2024) |
| 10/02/2024 | 109 | MEMO ENDORSEMENT on re: 108 Letter filed by Leon Black ENDORSEMENT Plaintiff is directed to file a response by October 4, 2024. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/2/2024) (jca) (Entered: 10/02/2024) |
| 10/04/2024 | 110 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated October 4, 2024 re: Response to ECF No. 108. Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 10/04/2024) |
| 10/04/2024 | 111 | MEMORANDUM OF LAW in Support re: 74 MOTION to Stay . *(Redacted)*. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/04/2024) |
| 10/04/2024 | 112 | DECLARATION of Susan Estrich in Support re: 74 MOTION to Stay .. Document filed by Leon Black. (Attachments: # 1 Exhibit 1 to Declaration, # 2 Exhibit 2 to Declaration, # 3 Exhibit 3 to Declaration, # 4 Exhibit 4 to Declaration, # 5 Exhibit 5 to Declaration, # 6 Exhibit 6 to Declaration, # 7 Exhibit 7 to Declaration, # 8 Exhibit 8 to Declaration, # 9 Exhibit 9 to Declaration, # 10 Exhibit 10 to Declaration, # 11 Exhibit 11 to Declaration, # 12 Exhibit 12 to Declaration, # 13 Exhibit 13 to Declaration, # 14 Exhibit 14 to Declaration, # 15 Exhibit 15 to Declaration, # 16 Exhibit 16 to Declaration).(Estrich, Susan) (Entered: 10/04/2024) |
| 10/04/2024 | 113 | MEMORANDUM OF LAW in Opposition re: 74 MOTION to Stay . *(Redacted)*. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 10/04/2024) |
| 10/07/2024 | 114 | REPLY re: 108 Letter, 110 Letter *[Reply to Plaintiff's Letter, dated October 4, 2024 (ECF No. 110) and in Further Support of Mr. Black's Request for the Court's authorization to serve three subpoenas ECF No. 108]*. Document filed by Leon Black..(Estrich, Susan) (Entered: 10/07/2024) |
| 10/07/2024 | 115 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 10/07/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 10/07/2024) |
| 10/07/2024 | 116 | MOTION to Amend/Correct *Caption*. Document filed by Leon Black..(Perry, E. Danya) (Entered: 10/07/2024) |
| 10/07/2024 | 117 | MEMORANDUM OF LAW in Support re: 116 MOTION to Amend/Correct *Caption*., 115 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 10/07/2024. . Document filed by Leon Black..(Perry, E. Danya) (Entered: 10/07/2024) |

| 10/07/2024 | 118 | DECLARATION of Carlos Melendez in Support re: 115 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 10/07/2024., 116 MOTION to Amend/Correct *Caption*.. Document filed by Leon Black. (Attachments: # 1 Exhibit A).(Perry, E. Danya) (Entered: 10/07/2024) |
|---|---|---|
| 10/07/2024 | 119 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 116 MOTION to Amend/Correct *Caption*. . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 115 .(Perry, E. Danya) (Entered: 10/07/2024) |
| 10/07/2024 | 120 | ***SELECTED PARTIES***DECLARATION of Carlos Melendez in Support re: 116 MOTION to Amend/Correct *Caption*.. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 115 .(Perry, E. Danya) (Entered: 10/07/2024) |
| 10/08/2024 | 121 | MEMO ENDORSEMENT on re: 108 Letter filed by Leon Black ENDORSEMENT The parties are directed to meet and confer regarding this request in advance of the initial pretrial conference. To the extent issues remain, the parties are directed to include their positions with respect to this issue in a joint letter to the Court by October 22, 2024 for discussion at the initial pretrial conference on October 29, 2024. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/8/2024) (jca) (Entered: 10/08/2024) |
| 10/11/2024 | 122 | MOTION for Interlocutory Appeal . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 10/11/2024) |
| 10/11/2024 | 123 | MEMORANDUM OF LAW in Support re: 122 MOTION for Interlocutory Appeal . . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 10/11/2024) |
| 10/11/2024 | 124 | ANSWER to 1 Complaint. Document filed by Leon Black..(Perry, E. Danya) (Entered: 10/11/2024) |
| 10/15/2024 | | ORDER Plaintiff is ordered to file any response to Defendant's motion for interlocutory appeal by October 18, 2024. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Clarke, Jessica) (Entered: 10/15/2024) |
| 10/15/2024 | 125 | LETTER MOTION for Extension of Time to File Response/Reply as to 122 MOTION for Interlocutory Appeal . *Requesting one-week extension of time to respond* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated October 15, 2024. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 10/15/2024) |
| 10/16/2024 | 126 | ORDER granting 125 Letter Motion for Extension of Time to File Response/Reply. Application GRANTED. Plaintiff's response to Defendant's Motion due October 25, 2024. The Clerk of Court is directed to terminate ECF No. 125. SO ORDERED.. (Signed by Judge Jessica G. L. Clarke on 10/16/2024) Responses due by 10/25/2024 (ks) (Entered: 10/16/2024) |
| 10/21/2024 | 127 | MEMORANDUM OF LAW in Opposition re: 116 MOTION to Amend/Correct *Caption*. . Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 10/21/2024) |
| 10/22/2024 | 128 | NOTICE OF APPEARANCE by Douglas Holden Wigdor on behalf of Jane Doe.. (Wigdor, Douglas) (Entered: 10/22/2024) |
| 10/22/2024 | 129 | PROPOSED CASE MANAGEMENT PLAN. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 10/22/2024) |
| 10/22/2024 | 130 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 10/22/2024. Document filed by Leon Black..(Gwynne, Peter) (Entered: 10/22/2024) |

| | | |
|---|---|---|
| 10/22/2024 | 131 | JOINT LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated 10/22/2024 re: Defendants Request for Pre-Conference Discovery, Redacted per Letter Motion to Seal 130 . Document filed by Leon Black..(Gwynne, Peter) (Entered: 10/22/2024) |
| 10/22/2024 | 132 | ***SELECTED PARTIES***JOINT LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated 10/22/2024 re: Defendants Request for Pre-Conference Discovery, Filed Pursuant to Court's Memo Endorsement 121 . Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 130 .(Gwynne, Peter) (Entered: 10/22/2024) |
| 10/24/2024 | 133 | LETTER addressed to Judge Jessica G. L. Clarke from Meredith Firetog dated October 24, 2024 Document filed by Jane Doe..(Firetog, Meredith) (Entered: 10/24/2024) |
| 10/24/2024 | 134 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 116 MOTION to Amend/Correct *Caption*. addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 10/24/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 10/24/2024) |
| 10/25/2024 | 135 | ORDER granting 134 Letter Motion for Extension of Time to File Response/Reply. Application GRANTED. Defendant's reply in support of the motion to amend the caption due November 4, 2024. The initial pretrial conference in this matter, previously scheduled for October 29, 2024 at 12:30 p.m., is RESCHEDULED for November 7, 2024 at 11:00 a.m. The Clerk of Court is directed to terminate ECF No. 134. SO ORDERED. Replies due by 11/4/2024. (Signed by Judge Jessica G. L. Clarke on 10/25/2024) (tg) (Entered: 10/25/2024) |
| 10/25/2024 | | Set/Reset Hearings: Initial Conference set for 11/7/2024 at 11:00 AM before Judge Jessica G. L. Clarke. (tg) (Entered: 10/25/2024) |
| 10/25/2024 | 136 | MEMORANDUM OF LAW in Opposition re: 122 MOTION for Interlocutory Appeal . . Document filed by Jane Doe..(Wigdor, Douglas) (Entered: 10/25/2024) |
| 10/28/2024 | 137 | LETTER addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 10/28/2024 re: Withdrawal of Letter-Motion for Leave to File with Redactions (ECF No. 130). Document filed by Leon Black..(Gwynne, Peter) (Entered: 10/28/2024) |
| 10/29/2024 | 138 | MEMO ENDORSEMENT on re: 137 Letter filed by Leon Black. ENDORSEMENT: Application GRANTED. The Clerk of Court is hereby directed to unseal ECF No. 132, and to terminate ECF No. 130. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 10/29/2024) (tg) (Entered: 10/29/2024) |
| 11/01/2024 | 139 | LETTER MOTION for Discovery *Letter Motion for Protective Order* addressed to Judge Jessica G. L. Clarke from Brittany N. Henderson dated November 1, 2024. Document filed by Non-Party. (Attachments: # 1 Exhibit A).(Henderson, Brittany) (Entered: 11/01/2024) |
| 11/01/2024 | 140 | REPLY MEMORANDUM OF LAW in Support re: 122 MOTION for Interlocutory Appeal . . Document filed by Leon Black..(Carlinsky, Michael) (Entered: 11/01/2024) |
| 11/04/2024 | 141 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter Gwynne dated 11/04/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 11/04/2024) |
| 11/04/2024 | 142 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#146)** ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 116 MOTION to Amend/Correct *Caption*. . Document filed by Leon Black. Motion or Order |

| | | |
|---|---|---|
| | | to File Under Seal: 141 .(Perry, E. Danya) Modified on 11/6/2024 (lb). (Entered: 11/04/2024) |
| 11/04/2024 | 143 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#147)** ***SELECTED PARTIES***DECLARATION of Peter A. Gwynne in Support re: 116 MOTION to Amend/Correct *Caption*.. Document filed by Leon Black. Motion or Order to File Under Seal: 141 .(Perry, E. Danya) Modified on 11/6/2024 (lb). (Entered: 11/04/2024) |
| 11/04/2024 | 144 | REPLY MEMORANDUM OF LAW in Support re: 141 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter Gwynne dated 11/04/2024., 116 MOTION to Amend/Correct *Caption*. . Document filed by Leon Black..(Perry, E. Danya) (Entered: 11/04/2024) |
| 11/04/2024 | 145 | DECLARATION of Peter A. Gwynne in Support re: 141 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter Gwynne dated 11/04/2024., 116 MOTION to Amend/Correct *Caption*.. Document filed by Leon Black..(Perry, E. Danya) (Entered: 11/04/2024) |
| 11/06/2024 | 146 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 141 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter Gwynne dated 11/04/2024., 116 MOTION to Amend/Correct *Caption*. . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 141 .(Perry, E. Danya) (Entered: 11/06/2024) |
| 11/06/2024 | 147 | ***SELECTED PARTIES***DECLARATION of Peter A. Gwynne in Support re: 141 LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter Gwynne dated 11/04/2024., 116 MOTION to Amend/Correct *Caption*.. Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 141 .(Perry, E. Danya) (Entered: 11/06/2024) |
| 11/06/2024 | 148 | LETTER RESPONSE to Motion addressed to Judge Jessica G. L. Clarke from Susan Estrich dated 11/06/2024 re: 139 LETTER MOTION for Discovery *Letter Motion for Protective Order* addressed to Judge Jessica G. L. Clarke from Brittany N. Henderson dated November 1, 2024. . Document filed by Leon Black..(Estrich, Susan) (Entered: 11/06/2024) |
| 11/06/2024 | 149 | PROPOSED STIPULATION AND ORDER. Document filed by Leon Black..(Barrett, Jennifer) (Entered: 11/06/2024) |
| 11/06/2024 | 150 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated November 6, 2024 re: Response to ECF 148. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 11/06/2024) |
| 11/07/2024 | 151 | NOTICE OF APPEARANCE by Ryan Adam Rakower on behalf of Leon Black.. (Rakower, Ryan) (Entered: 11/07/2024) |
| 11/07/2024 | 152 | FIRST AMENDED COMPLAINT amending 1 Complaint against Leon Black with JURY DEMAND.Document filed by Jane Doe. Related document: 1 Complaint..(Christensen, Jeanne-Marie) (Entered: 11/07/2024) |
| 11/07/2024 | | Minute Entry for proceedings held before Judge Jessica G. L. Clarke: Initial Pretrial Conference held on 11/7/2024. Counsel Jeanne-Marie B. Christensen, Meredith A. Firetog, and Douglas H. Wigdor present for the Plaintiff. Counsel Susan R. Estrich, Michael B. Carlinsky, E. Danya Perry, Jennifer J. Barrett, Peter A. Gwynne, and Ryan A. Rakower present for the Defendant. (Court Reporter Kristen Carannante) (stt) (Entered: 11/15/2024) |

| 11/08/2024 | 153 | ORDER granting 91 Motion to Amend/Correct ; granting 99 Letter Motion to Seal; granting 122 Motion. For the reasons stated on the record at the initial pre-trial conference ("IPTC") held before this Court on November 7, 2024, Plaintiff's motion for leave to file an amended complaint (ECF No. 91) is GRANTED, and Defendant's motion for an interlocutory appeal (ECF No. 122) is GRANTED. The parties are directed to refile the sealed documents with respect to the motion for leave to file an amended complaint with redactions consistent with the Court's Order at ECF No. 106. The Court further directs counsel for Plaintiff to submit all Twitter messages referenced at the IPTC (i.e., direct messages wherein Plaintiff allegedly disclosed to others what occurred with Defendant Leon Black) on or before November 12, 2024. Defendant is permitted to submit any additional information regarding Plaintiffs alleged failure to keep her identity confidential by November 15, 2024. The Court takes Defendant's motion to amend the case caption to disclose Plaintiff's identity (ECF No. 116) under advisement. The Clerk of Court is respectfully directed to terminate ECF Nos. 91, 99 and 122. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 11/8/2024) (tg) (Entered: 11/08/2024) |
| 11/08/2024 | 154 | CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 11/8/2024) (tg) (Entered: 11/08/2024) |
| 11/08/2024 | 155 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The parties have conferred pursuant to Fed. R. Civ. P. 26(f). Settlement discussions have taken place. Any motion for leave to amend or join additional parties shall be filed no later than December 2, 2024. Depositions pursuant to Fed. R. Civ. P. 30 and 31 shall be completed by the date set forth in paragraph 8(a). The case is to be tried to a jury. The parties believe the initial pretrial conference is necessary. SO ORDERED. Motions due by 12/2/2024. Expert Deposition due by 4/14/2025. Fact Discovery due by 2/26/2025. Expert Discovery due by 4/14/2025. Estimate length of trial 1 week. Case Management Conference set for 5/1/2025 at 12:00 PM before Judge Jessica G. L. Clarke. (Signed by Judge Jessica G. L. Clarke on 11/8/2024) (tg) (Entered: 11/08/2024) |
| 11/08/2024 | 156 | ORDER granting 139 Letter Motion for Discovery. The Court GRANTS Class Counsel's request to extend the time to move to quash the subpoena served on KJ until such time as Judge Rakoff has made a decision regarding the unsealing of relevant records in the case before him. The Court further directs counsel for Plaintiff to discontinue efforts to seek to serve CP personally. Counsel for Plaintiff should confer with Class Counsel regarding service of any subpoena regarding CP. The Clerk of Court is directed to terminate ECF No. 139. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 11/8/2024) (tg) (Entered: 11/08/2024) |
| 11/13/2024 | 157 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/7/2024 before Judge Jessica G. L. Clarke. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2024. Redacted Transcript Deadline set for 12/16/2024. Release of Transcript Restriction set for 2/11/2025..(McGuirk, Kelly) (Entered: 11/13/2024) |
| 11/13/2024 | 158 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/7/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically |

| | | |
|---|---|---|
| | | available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 11/13/2024) |
| 11/14/2024 | 159 | NOTICE of Intent to Request Redaction by Jeanne-Marie Bates Christensen re 157 Transcript,,..(Christensen, Jeanne-Marie) (Entered: 11/14/2024) |
| 11/18/2024 | 160 | ORDER: IT IS HEREBY ORDERED that, on or before November 19, 2024, Plaintiff file the letter previously emailed to chambers on the docket, with any redactions, as needed, consistent with this Court's prior orders. See ECF Nos. 106, 153. The unredacted versions shall be filed under seal. Plaintiff may file the exhibited communications under seal allowing access for counsel for Defendant. IT IS FURTHER ORDERED that the previous November 15, 2024 deadline for Defendant to submit additional information regarding Plaintiffs alleged failure to keep her identity confidential be extended, sua sponte, to November 22, 2024 should Defendant wish to supplement its letter from November 15. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 11/18/2024) (tg) (Entered: 11/18/2024) |
| 11/19/2024 | | ORDER On November 15, 2024, the Court received an *ex parte* letter submission from Defendant related to the Court's November 8, 2024 order (ECF No. 153 ). For substantially similar reasons as those articulated in the Court's November 18, 2024 order (ECF No. 160 ), the Court does not accept this submission, and will not consider it for the purposes of adjudicating Defendant's motion to amend the case caption to disclose Plaintiff's identity (ECF No. 116 ). As previously ordered, Defendant may file a response on the docket to Plaintiff's forthcoming letter by November 22, 2024, which may include information regarding Plaintiffs alleged failure to keep her identity confidential. Any necessary redactions to the submission must be consistent with this Court's prior orders. *See* ECF Nos. 106 , 153 . The unredacted versions shall be filed under seal. Defendant may also file any exhibits under seal allowing access for counsel for Plaintiff to the extent consistent with prior orders. SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Clarke, Jessica) (Entered: 11/19/2024) |
| 11/19/2024 | 161 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated November 12, 2024 re: Additional submission pursuant to ECF 153. Document filed by Jane Doe. (Attachments: # 1 Exhibit Twitter Messages, # 2 Exhibit Twitter Messages, # 3 Exhibit Tweet, # 4 Exhibit Tweet, # 5 Exhibit Voicemail Records, # 6 Exhibit Voicemail Recording, # 7 Exhibit Tweets, # 8 Exhibit Safety Protocol).(Christensen, Jeanne-Marie) (Entered: 11/19/2024) |
| 11/19/2024 | 162 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated November 12, 2024 re: Additional submission pursuant to ECF 153. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit Twitter Messages, # 2 Exhibit Twitter Messages, # 3 Exhibit Tweet, # 4 Exhibit Tweet, # 5 Exhibit Voicemail Records, # 6 Exhibit Tweets, # 7 Exhibit Safety Protocol)Motion or Order to File Under Seal: 153 .(Christensen, Jeanne-Marie) (Entered: 11/19/2024) |
| 11/19/2024 | 163 | LETTER MOTION for Extension of Time *to Answer or Otherwise Respond to Plaintiff's First Amended Complaint (ECF No. 152)* addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 11/19/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 11/19/2024) |
| 11/20/2024 | 164 | ORDER granting 163 Letter Motion for Extension of Time. Application GRANTED. Defendant shall answer or otherwise respond to the First Amended Complaint (ECF No. 152) on or before December 23, 2024. The Clerk of Court is respectfully directed to terminate ECF No. 163. (Signed by Judge Jessica G. L. Clarke on 11/20/2024) (jjc) (Entered: 11/21/2024) |
| 11/20/2024 | | Set/Reset Deadlines: Leon Black answer due 12/23/2024. (jjc) (Entered: 11/21/2024) |

| | | |
|---|---|---|
| 11/22/2024 | 165 | LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 11/22/2024 re: Additional information pursuant to ECF 153. Document filed by Leon Black. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E). (Perry, E. Danya) (Entered: 11/22/2024) |
| 11/26/2024 | 166 | JOINT LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 11/26/2024 re: Discovery Dispute Regarding Defendant's Request to Quash or Modify Subpoenas. Document filed by Leon Black..(Perry, E. Danya) (Entered: 11/26/2024) |
| 12/05/2024 | | ORDER The Court has received the parties' joint letter regarding an ongoing discovery dispute about depositions. ECF No. 166 . IT IS HEREBY ORDERED that the parties shall appear for a conference regarding this dispute on **December 12, 2024 at 11:00 AM.** The conference will be held remotely via Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 699 971 193#. SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Entered: 12/05/2024) |
| 12/05/2024 | 167 | LETTER addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated December 5, 2024 re: substitution of Exhibit A in Parties' Confidentiality Stipulation and Protective Order. Document filed by Jane Doe. (Attachments: # 1 Exhibit A to ECF 154 - Substitution).(Firetog, Meredith) (Entered: 12/05/2024) |
| 12/06/2024 | 168 | MEMO ENDORSEMENT on re: 167 Letter, filed by Jane Doe. ENDORSEMENT: Application GRANTED. Plaintiff is directed to submit a revised Confidentiality Stipulation and Protective Order which includes the revised Exhibit A. The Court will then enter the revised Stipulation at that time. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 12/6/2024) (tg) (Entered: 12/06/2024) |
| 12/09/2024 | 169 | PROPOSED STIPULATION AND ORDER. Document filed by Jane Doe. (Attachments: # 1 Exhibit A - Revised pursuant to ECF 168).(Christensen, Jeanne-Marie) (Entered: 12/09/2024) |
| 12/10/2024 | 170 | REVISED CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 12/10/2024) (jca) (Entered: 12/10/2024) |
| 12/10/2024 | 171 | LETTER MOTION to Adjourn Conference *re Discovery Dispute re Defendant's Request to Quash Subpoenas [ECF No. 166]* addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 12/10/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 12/10/2024) |
| 12/11/2024 | 172 | NOTICE OF APPEARANCE by Alexander Kitsock Parachini on behalf of Leon Black.. (Parachini, Alexander) (Entered: 12/11/2024) |
| 12/12/2024 | 173 | ORDER granting in part and denying in part 171 Letter Motion to Adjourn Conference. Application GRANTED in part and DENIED in part. Having conferred with the parties by electronic mail regarding their availability for a conference next week, the conference initially set for December 12, 2024 is HEREBY RESCHEDULED to December 19, 2024 at 3:00 PM. The conference will still be conducted through Microsoft Teams, and the access instructions remain unchanged. No further briefing on the discovery dispute shall be submitted prior to the conference. The Clerk of Court is respectfully directed to terminate ECF No. 171. SO ORDERED. Status Conference set for 12/19/2024 at 03:00 PM before Judge Jessica G. L. Clarke. (Signed by Judge Jessica G. L. Clarke on 12/12/2024) (tg) (Entered: 12/12/2024) |

5/16/25, 3:45 PM                                      SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| 12/13/2024 | 174 | NOTICE OF CHANGE OF ADDRESS by Michael Barry Carlinsky on behalf of Leon Black. New Address: Quinn Emanuel Urquhart & Sullivan, LLP, 295 5th Avenue, New York, NY, 10016,..(Carlinsky, Michael) (Entered: 12/13/2024) |
| 12/13/2024 | 175 | NOTICE OF CHANGE OF ADDRESS by Ryan Adam Rakower on behalf of Leon Black. New Address: Quinn Emanuel Urquhart & Sullivan, LLP, 295 5th Avenue, New York, NY, 10016,..(Rakower, Ryan) (Entered: 12/13/2024) |
| 12/13/2024 | 176 | NOTICE OF CHANGE OF ADDRESS. New Address: Quinn Emanuel Urquhart & Sullivan, LLP, 295 5th Avenue, New York, NY, 10016,..(Barrett, Jennifer) (Entered: 12/13/2024) |
| 12/16/2024 | 177 | CONSENT LETTER MOTION to Seal *forthcoming letter and exhibits* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 16, 2024. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 12/16/2024) |
| 12/16/2024 | 178 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 16, 2024 Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)Motion or Order to File Under Seal: 177 . (Christensen, Jeanne-Marie) (Entered: 12/16/2024) |
| 12/16/2024 | 179 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 12/16/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 12/16/2024) |
| 12/16/2024 | 180 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 12/16/2024 re: Recent Developments. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)Motion or Order to File Under Seal: 179 .(Perry, E. Danya) (Entered: 12/16/2024) |
| 12/17/2024 | 181 | LETTER addressed to Judge Jessica G. L. Clarke from Meredith A. Firetog dated December 17, 2024 Document filed by Jane Doe..(Firetog, Meredith) (Entered: 12/17/2024) |
| 12/17/2024 | 182 | ORDER: Given the issues raised in the parties' submissions, and the need for the Court to review the record relating to and underlying Judge Rakoff's sealed decision, IT IS HEREBY ORDERED that the conference currently scheduled for December 19, 2024 is RESCHEDULED to January 16, 2025 at 12:00 PM in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. The parties should be prepared to discuss the issues raised in their respective submissions as well as the ongoing discovery dispute to quash certain subpoenas (ECF No. 166). SO ORDERED. ( Status Conference set for 1/16/2025 at 12:00 PM in Courtroom 11B, 500 Pearl Street, New York, NY 10007 before Judge Jessica G. L. Clarke.) (Signed by Judge Jessica G. L. Clarke on 12/17/2024) (tg) (Entered: 12/17/2024) |
| 12/18/2024 | 183 | LETTER MOTION to Seal *forthcoming letter* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 18, 2024. Document filed by Jane Doe.. (Christensen, Jeanne-Marie) (Entered: 12/18/2024) |
| 12/18/2024 | 184 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated December 18, 2024 Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 183 .(Christensen, Jeanne-Marie) (Entered: 12/18/2024) |
| 12/19/2024 | 185 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 12/19/2024. Document filed by Leon Black..(Perry, E. Danya) (Entered: 12/19/2024) |

SDNY CM/ECF NextGen Version 1.8.3

| 12/19/2024 | 186 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 12/19/2024 re: Response to Plaintiff's Letter Motion [ECF No. 178]. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1)Motion or Order to File Under Seal: 185 .(Perry, E. Danya) (Entered: 12/19/2024) |
|---|---|---|
| 12/23/2024 | 187 | ANSWER to 152 Amended Complaint. Document filed by Leon Black..(Perry, E. Danya) (Entered: 12/23/2024) |
| 01/08/2025 | 188 | MOTION for Paul G. Cassell to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30430540. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Non-Party. (Attachments: # 1 Affidavit Declaration Paul Cassell, # 2 Exhibit Certificate Good Standing, # 3 Proposed Order Proposed Order).(Cassell, Paul) (Entered: 01/08/2025) |
| 01/08/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 188 MOTION for Paul G. Cassell to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30430540. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 01/08/2025) |
| 01/09/2025 | 189 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 9, 2025 re: supplementing ECF 166. Document filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Christensen, Jeanne-Marie) (Entered: 01/09/2025) |
| 01/09/2025 | 190 | ORDER FOR ADMISSION PRO HAC VICE granting 188 Motion for Paul G. Cassell to Appear Pro Hac Vice The motion of Paul G. Cassell to appear Pro Hac Vice in the above-captioned action is granted. IT IS HEREBY ORDERED that the Applicant is admitted to practice Pro Hac Vice in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules Governing discipline of attorneys. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 01/09/2025) (ar) (Entered: 01/10/2025) |
| 01/10/2025 | 191 | LETTER MOTION to Seal *Dkt No. 189* addressed to Judge Jessica G. L. Clarke from Michael B. Calinsky dated January 10, 2025. Document filed by Leon Black..(Carlinsky, Michael) (Entered: 01/10/2025) |
| 01/13/2025 | 192 | ORDER granting 191 Letter Motion to Seal. Application GRANTED. The parties are to meet and confer and propose redactions to ECF Nos. 189-1 and 189-2 by January 15, 2025. Access shall be restricted to attorneys appearing for the parties and court personnel in the interim. Plaintiff is further reminded to comply with Local Rules and this Court's Individual Rules and Practices, particularly where sensitive information may be inadvertently disclosed. The Clerk of Court is respectfully directed to terminate ECF No. 191, and to place ECF Nos. 189-1 and 189-2 under seal. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 1/13/2025) (tg) (Entered: 01/13/2025) |
| 01/13/2025 | 193 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 01/13/2025. Document filed by Leon Black..(Perry, E. Danya) (Entered: 01/13/2025) |
| 01/13/2025 | 194 | LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 01/13/2025 re: Response to Plaintiff's Letter [ECF No. 189]. Document filed by Leon Black..(Perry, E. Danya) (Entered: 01/13/2025) |

SDNY CM/ECF NextGen Version 1.8.3

| 01/13/2025 | 195 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 01/13/2025 re: Response to Plaintiff's Letter [ECF No. 189]. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 193 . (Perry, E. Danya) (Entered: 01/13/2025) |
| --- | --- | --- |
| 01/14/2025 | 196 | NOTICE OF APPEARANCE by John S. Crain on behalf of Jane Doe..(Crain, John) (Entered: 01/14/2025) |
| 01/15/2025 | 197 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Peter A. Gwynne dated 01/15/2025. Document filed by Leon Black..(Estrich, Susan) (Entered: 01/15/2025) |
| 01/15/2025 | 198 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated 01/15/2025 re: Response to Plaintiff's Letter [ECF No. 184]. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)Motion or Order to File Under Seal: 197 .(Estrich, Susan) (Entered: 01/15/2025) |
| 01/15/2025 | | ORDER The Court has received Defendant's January 15, 2025 letter (ECF No. 198 ) responding to Plaintiff's prior letter (ECF No. 184 ) and requesting certain relief. Plaintiff is HEREBY DIRECTED to file a response to this letter, if any, by **close of business today.** SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Entered: 01/15/2025) |
| 01/15/2025 | 199 | LETTER MOTION to Seal *January 16, 2025 Conference* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 15, 2025. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 01/15/2025) |
| 01/15/2025 | 200 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jessica G. L. Clarke from Susan Estrich dated January 15, 2025 re: 199 LETTER MOTION to Seal *January 16, 2025 Conference* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 15, 2025. . Document filed by Leon Black..(Estrich, Susan) (Entered: 01/15/2025) |
| 01/15/2025 | 201 | LETTER MOTION to Seal *Plaintiff's Forthcoming Letter* addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 15, 2025. Document filed by Jane Doe..(Christensen, Jeanne-Marie) (Entered: 01/15/2025) |
| 01/15/2025 | | ORDER The Court has received Plaintiff's request to seal the conference scheduled for tomorrow, January 16 (ECF No. 199 ) and Defendant's opposition (ECF No. 200 ). Plaintiff's application is DENIED, and the Court will not seal the courtroom from public access. The Court will, and counsel are permitted to, refer to the fact of Judge Rakoff's December 13, 2024 Order and the fact that he ordered certain documents to be produced. However, counsel shall not otherwise discuss or publicly disclose the contents of the Order or any other sealed document. The Clerk of Court is respectfully directed to terminate ECF No. 199. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) Transmission to Office of the Clerk of Court for processing. (Entered: 01/15/2025) |
| 01/15/2025 | 202 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 15, 2025 re: Response to ECF 198. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)Motion or Order to File Under Seal: 201 .(Christensen, Jeanne-Marie) (Entered: 01/15/2025) |
| 01/16/2025 | 203 | NOTICE OF APPEARANCE by Jacqueline M Stykes on behalf of Leon Black..(Stykes, Jacqueline) (Entered: 01/16/2025) |
| 01/16/2025 | 204 | ORDER terminating 115 Letter Motion to Seal; denying 116 Motion to Amend/Correct ; terminating 141 Letter Motion to Seal; terminating 177 Letter Motion to Seal; terminating |

179 Letter Motion to Seal; terminating 183 Letter Motion to Seal; terminating 193 Letter Motion to Seal; terminating 197 Letter Motion to Seal; terminating 201 Letter Motion to Seal. For the reasons stated on the record at the January 16, 2025 conference before this Court, Defendant's motion to amend the case caption to unseal Plaintiff's name (ECF No. 116) is DENIED, and Defendant's request to stay discovery pending disposition of their forthcoming motion for sanctions (ECF No. 198) is GRANTED. Discovery in this action is HEREBY STAYED for good cause shown. The Court also DENIES as moot Defendant's request to quash certain subpoenas in light of the discovery stay. ECF No. 166. Defendant shall file his forthcoming motion by February 21, 2025, Plaintiff shall file her opposition by March 21, 2025, and Defendant shall file his reply by April 4, 2025. In addition, as stated at the conference, Defendant shall file a letter regarding their request to use a sealed letter in other actions by January 21, 2025, and Plaintiff shall respond by January 24, 2025. For the avoidance of doubt, the Court reiterates all sealed materials may only be used in this action unless and until the Court rules otherwise. Regarding the distribution of documents discussed at the conference, the Court will correspond with the parties by electronic mail. The Court reiterates any documents that Judge Rakoff ordered to be produced shall be treated as Confidential under ECF No. 170. All other documents (i.e., those not ordered to be produced and not currently possessed by Defendant) shall be treated by Defendant's counsel as Attorneys' Eyes Only ("AEO"), which does not include investigators. These AEO documents may be used solely in connection with Defendant's forthcoming motion. Finally, all documents requested to be sealed relating to these issues (ECF Nos. 178, 180, 184, 186, 194, 198, 202) and their corresponding exhibits shall remain under seal until further order from the Court. The parties shall indicate their position with respect to sealing these documents (and Judge Rakoff's December 13, 2024 decision) in their upcoming sanctions briefing. The Clerk of Court is respectfully directed to terminate ECF Nos. 115, 116, 141, 177, 179, 183, 193, 197, and 201. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 1/16/2025) (tg) (Entered: 01/16/2025)

| 01/16/2025 | | Set/Reset Deadlines: Motions due by 2/21/2025. Responses due by 3/21/2025 Replies due by 4/4/2025. (tg) (Entered: 01/16/2025) |
|---|---|---|
| 01/16/2025 | 205 | AMENDED ORDER: For the reasons stated on the record at the January 16, 2025 conference before this Court, Defendant's motion to amend the case caption to unseal Plaintiff's name (ECF No. 116) is DENIED, and Defendant's request to stay discovery pending disposition of their forthcoming motion for sanctions (ECF No. 198) is GRANTED. Discovery in this action is HEREBY STAYED for good cause shown. The Court also DENIES as moot Defendant's request to quash certain subpoenas in light of the discovery stay. ECF No. 166. Defendant shall file his forthcoming motion by February 21, 2025, Plaintiff shall file her opposition by March 21, 2025, and Defendant shall file his reply by April 4, 2025. Regarding Defendant's request at the conference to use a sealed letter in other actions, upon further consideration, the Court directs Defendant to submit his request directly to Judge Failla. For the avoidance of doubt, the Court reiterates all sealed materials may only be used in this action unless and until Judge Failla, or this Court, instructs otherwise. Regarding the distribution of documents discussed at the conference, the Court will correspond with the parties by electronic mail. The Court reiterates any documents that Judge Rakoff ordered to be produced shall be treated as Confidential under ECF No. 170. All other documents (i.e., those not ordered to be produced and not currently possessed by Defendant) shall be treated by Defendants counsel as Attorneys' Eyes Only ("AEO"), which does not include investigators. These AEO documents may be used solely in connection with Defendant's forthcoming motion. Finally, all documents requested to be sealed relating to these issues (ECF Nos. 178, 180, 184, 186, 194, 198, 202) and their corresponding exhibits shall remain under seal until further order from the Court. The parties shall indicate their position with respect to sealing these documents (and Judge Rakoffs December 13, 2024 decision) in their upcoming sanctions briefing. The Clerk of Court is respectfully directed to terminate ECF |

SDNY CM/ECF NextGen Version 1.8.3

| | | Nos. 115, 116, 141, 177, 179, 183, 193, 197, and 201. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 1/16/2025) (tg) (Entered: 01/16/2025) |
|---|---|---|
| 01/16/2025 | | Minute Entry for proceedings held before Judge Jessica G. L. Clarke: Discovery Conference held on 1/16/2025. Counsel Jeanne-Marie B. Christensen, Douglas H. Wigdor, and John S. Crain present for the Plaintiff. Counsel Michael B. Carlinsky, E. Danya Perry, and Peter A. Gwynne present for the Defendant. (stt) (Entered: 01/28/2025) |
| 01/16/2025 | | Set/Reset Deadlines: Responses due by 3/21/2025 Replies due by 4/4/2025. (tg) (Entered: 03/05/2025) |
| 01/17/2025 | 206 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 17, 2025 re: developments following January 16, 2025 conference. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1)Motion or Order to File Under Seal: 205 .(Christensen, Jeanne-Marie) (Entered: 01/17/2025) |
| 01/18/2025 | 207 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Michael Carlinsky dated January 18, 2025. Document filed by Leon Black..(Carlinsky, Michael) (Entered: 01/18/2025) |
| 01/18/2025 | 208 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Michael Carlinsky dated January 18, 2025 re: Response to Plaintiff's Letter [ECF No. 206]. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 207 . (Carlinsky, Michael) (Entered: 01/18/2025) |
| 01/23/2025 | 209 | TRANSCRIPT of Proceedings re: CONFERNECE held on 1/16/2025 before Judge Jessica G. L. Clarke. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/13/2025. Redacted Transcript Deadline set for 2/24/2025. Release of Transcript Restriction set for 4/23/2025..(McGuirk, Kelly) (Entered: 01/23/2025) |
| 01/23/2025 | 210 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERNECE proceeding held on 1/16/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 01/23/2025) |
| 01/28/2025 | 211 | ***SELECTED PARTIES*** SEALED ORDER: Given the content of this Order, the Court directs the Clerk of Court to file it under seal, viewable to the Court and parties only. (Signed by Judge Katherine Polk Failla on 1/28/2025) (rro) (Entered: 01/28/2025) |
| 01/29/2025 | 212 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated January 29, 2025 Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 211 .(Christensen, Jeanne-Marie) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER By letter dated January 24, 2025, pursuant to this Court's amended order (ECF No. 205 ), Defendant submitted to Judge Failla a request to use a sealed decision in other matters. By sealed order dated January 28, 2025, Judge Failla referred the matter back to this Court for disposition. Black's letter request has been provided to this Court and the parties by electronic mail. Plaintiff is HEREBY DIRECTED to file, under seal, a response to Black's January 24 letter, if any, by **February 3, 2025**. The January 24 letter |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| | | will be separately docketed under seal. SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Clarke, Jessica) (Entered: 01/29/2025) |
| 02/05/2025 | 213 | LETTER MOTION to Seal addressed to Judge Jessica G. L. Clarke from Michael B. Carlinsky dated February 5, 2025. Document filed by Leon Black..(Carlinsky, Michael) (Entered: 02/05/2025) |
| 02/05/2025 | 214 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Michael B. Carlinsky dated February 5, 2025 re: Request for Limited Disclosure. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 213 . (Carlinsky, Michael) (Entered: 02/05/2025) |
| 02/05/2025 | 215 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated February 5, 2025 re: Response to ECF 214. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 213 .(Christensen, Jeanne-Marie) (Entered: 02/05/2025) |
| 02/06/2025 | 216 | ORDER granting 185 Letter Motion to Seal; granting 207 Letter Motion to Seal; granting 213 Letter Motion to Seal. The Court has reviewed the parties' submissions and denies Defendant's application at this time. Defendant has not shown good cause to use the Sealed Decision in the pending state court action. Most critically, he has not demonstrated that the Sealed Decision is relevant to the issues pending before the First Department. Furthermore, given that Defendant seeks to submit the Sealed Decision prior to oral argument before the First Department, there exists a substantial likelihood the contents of the Sealed Decision will be inappropriately referenced during oral argument. Therefore, Defendant's request is denied. However, as previously ordered, the parties must brief the issue of the continued sealing of certain documents, and Defendant is free to request to unseal the Sealed Decision (and other sealed materials) in this briefing. In addition, Defendant is directed to file a copy of his January 24, 2025 letter request to Judge Failla under seal on the docket. The parties' outstanding sealing motions (ECF Nos. 185, 207, and 213) are likewise granted, and their related documents shall remain under seal until further order from this Court. Lastly, with respect to Plaintiff's letter at ECF No. 206, counsel for Defendant are reminded that they are not to reference or characterize documents under seal. The Court's prior orders with respect to sealed matters should be strictly construed, and counsel must err on the side of caution in discussing these materials. The Clerk of Court is respectfully directed to terminate ECF Nos. 185, 207, and 213, and to leave the corresponding documents (ECF Nos. 186, 208, and 214) under seal. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 2/6/2025) (tg) (Entered: 02/06/2025) |
| 02/06/2025 | 217 | ***SELECTED PARTIES*** LETTER addressed to Judge Katherine Polk Failla from Susan Estrich dated January 24, 2025 re: Request for Limited Disclosure. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 216 .(Estrich, Susan) (Entered: 02/06/2025) |
| 02/18/2025 | 218 | ORDER: The Court has received and reviewed Defendant Leon Black's February 18, 2025 letter request for ex parte relief. The Court finds that Defendant has not demonstrated sufficient extraordinary circumstances warranting his entitlement to relief without first providing Plaintiff an opportunity to be heard. Defendant's ex parte request is therefore DENIED. Should Defendant intend to pursue the requested relief, he shall file the application on the docket, under seal, but on notice to Plaintiff's counsel, as soon as practicable, and any in event no later than February 19, 2025 by 12:00 PM. Plaintiff shall file any response or opposition on or before February 21, 2025. SO ORDERED. ( Motions due by 2/19/2025., Responses due by 2/21/2025) (Signed by Judge Jessica G. L. Clarke on 2/18/2025) (tg) (Entered: 02/18/2025) |

| | | |
|---|---|---|
| 02/19/2025 | 219 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated February 19, 2025 Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1 - Sonogram Comparison, # 2 Exhibit 2 March 15, 2024 Hearing Tr, # 3 Exhibit 3 May 10, 2024 Ltr., # 4 Exhibit 4 Journal Year 16, # 5 Exhibit 5 Journal Year 17, # 6 Exhibit 6 Journal Year 18, # 7 Exhibit 7 Journal Year 19, # 8 Exhibit 8 October 30, 2023 Email, # 9 Exhibit 9 March 1, 2024 Ltr, # 10 Exhibit 10 2006 Sonogram)Motion or Order to File Under Seal: 218 .(Estrich, Susan) (Entered: 02/19/2025) |
| 02/19/2025 | | ORDER The Court has received Defendant's February 19, 2025 sealed request (ECF No. 219 ) for an order permitting him to inspect certain of Plaintiff's documents in advance of his forthcoming motion. As this Court previously ordered (ECF No. 218 ), Plaintiff shall file any response or opposition to Defendant's request by **February 21, 2025.** In addition, Plaintiff's counsel is directed to safeguard and preserve the relevant documents, and to ensure they are not altered or destroyed, pending resolution of Defendant's request. SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Entered: 02/19/2025) |
| 02/19/2025 | 220 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated February 19, 2025 Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 218 .(Christensen, Jeanne-Marie) (Entered: 02/19/2025) |
| 02/19/2025 | 221 | ***SELECTED PARTIES*** LETTER MOTION for Leave to File Excess Pages addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 2/19/2025. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 205 .(Perry, E. Danya) (Entered: 02/19/2025) |
| 02/20/2025 | 222 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated February 20, 2025 re: Response to Wigdor Letter. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 218 .(Estrich, Susan) (Entered: 02/20/2025) |
| 02/21/2025 | 223 | ORDER granting 221 Letter Motion for Leave to File Excess Pages. After a careful review of the parties' submissions and accompanying exhibits, the Court hereby GRANTS Defendant's Inspection Request. The parties are directed to confer and arrange a mutually agreeable date, time, and location to allow Defendant's counsel to inspect the relevant documents. The parties shall arrange for this inspection to occur on or before March 7, 2025. The parties need not deliver the documents to the Court for safekeeping prior to or following the inspection. However, the parties are advised that the Court's February 19, 2025 text-order instructing Plaintiff's counsel to safeguard and preserve the documents to prevent alteration or destruction remains in effect, and shall remain in effect until Defendant's forthcoming motion is adjudicated. Defendant shall file his motion on or before March 14, 2025, Plaintiff shall file her opposition by April 11, 2025, and Defendant may file a reply on or before April 25, 2025. Plaintiff may also respond, if needed, to the substance of Defendant's February 19, 2025 letter in her opposition. Finally, the Court GRANTS Defendant's request for the parties to file oversized briefs in connection with Defendant's forthcoming motion given the complexity and seriousness of the issues to be discussed. The Clerk of Court is respectfully directed to terminate ECF No. 221. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 2/21/25) (yv) (Entered: 02/21/2025) |
| 02/21/2025 | | Set/Reset Deadlines: Motions due by 3/14/2025. Responses due by 4/11/2025 Replies due by 4/25/2025. (yv) (Entered: 02/21/2025) |

| 03/03/2025 | 224 | ***SELECTED PARTIES*** MOTION for Case-Terminating Sanctions . Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| --- | --- | --- |
| 03/03/2025 | 225 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 226 | ***SELECTED PARTIES***DECLARATION of Larry F. Stewart in Support re: 224 MOTION for Case-Terminating Sanctions .. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1 Stewart CV, # 2 Exhibit 2 Stewart Report, # 3 Exhibit 2A Attachment 1, # 4 Exhibit 2B Attachment 2)Motion or Order to File Under Seal: 209 . (Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 227 | ***SELECTED PARTIES***DECLARATION of Witness 1 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 228 | ***SELECTED PARTIES***DECLARATION of Witness 2 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 229 | ***SELECTED PARTIES***DECLARATION of Witness 3 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 230 | ***SELECTED PARTIES***DECLARATION of Witness 4 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 231 | ***SELECTED PARTIES***DECLARATION of Witness 5 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 232 | ***SELECTED PARTIES***DECLARATION of Witness 6 re: 224 MOTION for Case-Terminating Sanctions . . Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1)Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 03/03/2025) |
| 03/03/2025 | 233 | ***SELECTED PARTIES***DECLARATION of Susan Estrich in Support re: 224 MOTION for Case-Terminating Sanctions .. Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18A, # 19 Exhibit 18B, # 20 Exhibit 18C, # 21 Exhibit 18D, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22, # 26 Exhibit 23, # 27 Exhibit 24, # 28 Exhibit 25, # 29 Exhibit 26, # 30 Exhibit 27, # 31 Exhibit 28, # 32 Exhibit 29, # 33 Exhibit 30, # 34 Exhibit 31, # 35 Exhibit 32A, # 36 Exhibit 32B, # 37 Exhibit 32C)Motion or Order to File Under Seal: 209 .(Estrich, Susan) (Entered: 03/03/2025) |
| 03/05/2025 | | Terminate Transcript Deadlines (tg) (Entered: 03/05/2025) |
| 03/06/2025 | 234 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated March 6, 2025 re: briefing schedule as to ECF 224. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 209 . (Christensen, Jeanne-Marie) (Entered: 03/06/2025) |

| 03/10/2025 | | ORDER The Court has received Plaintiff's March 6, 2025 letter regarding the operative briefing schedule for Defendant's motion filed on March 3, 2025 (ECF No. 224 ). For the avoidance of doubt, the Court confirms that the briefing schedule from its prior order (ECF No. 223 ) remains in effect. Accordingly, Plaintiff shall file her opposition by **April 11, 2025**, and Defendant shall file his reply on or before **April 25, 2025**. SO ORDERED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Clarke, Jessica) (Entered: 03/10/2025) |
| 03/12/2025 | 235 | ORDER of USCA (Certified Copy) USCA Case Number 24-3025. Petitioner requests, under 28 U.S.C. § 1292(b), leave to appeal an interlocutory order of the district court. Petitioner also moves for leave to file a reply. Upon due consideration, it is hereby ORDERED that the motion for leave to file a reply is GRANTED. It is further ORDERED that the petition for leave to appeal under § 1292(b) is GRANTED. See Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 2325 (2d Cir. 1990); Mei Shing Yu v. Hasaki Rest., Inc., 874 F.3d 94, 9798 (2d Cir. 2017). In addition to all other issues the parties wish to address in their briefs, they are directed to address whether this Court should certify issues raised by this matter to the New York Court of Appeals. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 3/11/2025. (tp) (Entered: 03/12/2025) |
| 03/21/2025 | | USCA Appeal Fees received $ 605.00 receipt number 38321 on 3/21/2025 re: 235 Order of USCA. (tp) (Entered: 03/21/2025) |
| 03/26/2025 | 236 | MANDATE of USCA (Certified Copy) USCA Case Number 24-3025. Petitioner requests, under 28 U.S.C. § 1292(b), leave to appeal an interlocutory order of the district court. Petitioner also moves for leave to file a reply. Upon due consideration, it is hereby ORDERED that the motion for leave to file a reply is GRANTED. It is further ORDERED that the petition for leave to appeal under § 1292(b) is GRANTED. See Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 2325 (2d Cir. 1990); Mei Shing Yu v. Hasaki Rest., Inc., 874 F.3d 94, 9798 (2d Cir. 2017). In addition to all other issues the parties wish to address in their briefs, they are directed to address whether this Court should certify issues raised by this matter to the New York Court of Appeals. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Order: 3/25/2025. (tp) (Entered: 03/26/2025) |
| 03/27/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 236 USCA Mandate - Other, USCA Case Number 25-0564, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/27/2025) |
| 04/04/2025 | 237 | ***SELECTED PARTIES*** ORDER: The Clerk of Court is respectfully directed to file and maintain this Order under seal, and to restrict viewing access. Access is restricted to attorneys appearing for the parties and court personnel, limiting access only to counsel in this case. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 4/4/2025) (tg) (Entered: 04/04/2025) |
| 04/04/2025 | 238 | ***SELECTED PARTIES*** MOTION for Wigdor, LLP to Withdraw as Attorney *for Plantiff Jane Doe*. Document filed by Jane Doe, Leon Black.Motion or Order to File Under Seal: 238 .(Christensen, Jeanne-Marie) (Entered: 04/04/2025) |
| 04/07/2025 | 239 | ***SELECTED PARTIES*** RESPONSE to Motion re: 238 MOTION for Wigdor, LLP to Withdraw as Attorney *for Plantiff Jane Doe*. . Document filed by Leon Black, Jane Doe. (Attachments: # 1 Exhibit 1 to Ltr. Mot.: Wigdor April 4 Ltr.)Motion or Order to File Under Seal: 209 .(Carlinsky, Michael) (Entered: 04/07/2025) |
| 04/07/2025 | 240 | ***SELECTED PARTIES***LETTER REPLY to Response to Motion addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 7, 2025 re: 238 MOTION for Wigdor, LLP to Withdraw as Attorney *for Plantiff Jane Doe*. Response to |

SDNY CM/ECF NextGen Version 1.8.3

| | | |
|---|---|---|
| | | *ECF 239*. Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 239 .(Christensen, Jeanne-Marie) (Entered: 04/07/2025) |
| 04/09/2025 | 241 | ORDER granting 238 Motion to Withdraw as Attorney. Having carefully reviewed the parties' submissions, the Court grants Wigdor's request to withdraw as counsel. As further set forth in this Order. In each instance, Wigdor must file a certificate of service with this Court confirming service to Plaintiff. If Plaintiff secures new counsel, new counsel shall file a notice of appearance on or before May 16, 2025. Regarding the briefing schedule for the Sanctions Motion, the schedule is modified as follows: (1) Plaintiff has until May 23, 2025 to respond to Defendants Sanctions Motion. Should Plaintiff fail to file an opposition by that date (either with or without counsel), the Court will deem the Sanctions Motion as unopposed with respect to her, and may dismiss her complaint for failure to prosecute; (2) Wigdor shall file an opposition to the Sanctions Motion on or before the same date; and (3) any reply briefs from Defendant Black are due by June 6, 2025. As further set forth in this Order. Wigdor must serve their motion to withdraw, along with this Order, on Plaintiff by April 10, 2025 and shall promptly file proof of service by April 11, 2025. And as ordered above, Wigdor shall retain responsibility for serving any future filings and orders in this case, as instructed by this Court, on Plaintiff. The Clerk of Court is respectfully directed to terminate ECF No. 238, list Plaintiff Jane Doe as "Pro Se" and leave counsel from Wigdor LLP on the docket, but reflect they no longer represent Plaintiff in this matter. SO ORDERED.. (Signed by Judge Jessica G. L. Clarke on 4/9/2025) Attorney Douglas Holden Wigdor terminated (ks) (Entered: 04/09/2025) |
| 04/09/2025 | 242 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 241, ECF 238 served on Plaintiff on April 9, 2025. Service was made by regular and electronic mail. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit ECF 241, # 2 Exhibit ECF 238)Motion or Order to File Under Seal: 241 .(Christensen, Jeanne-Marie) (Entered: 04/09/2025) |
| 04/14/2025 | 243 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 14, 2025 Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/14/2025) |
| 04/14/2025 | 244 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 243 served on Plaintiff on April 14, 2025. Service was made by regular and electronic mail. Document filed by Jane Doe, Leon Black. (Attachments: # 1 Exhibit ECF 243)Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/14/2025) |
| 04/15/2025 | 245 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from E. Danya Perry dated 4/15/2025 re: Response to Wigdor's Letter dated April 14, 2025 (ECF Doc. No. 243). Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 209 .(Perry, E. Danya) (Entered: 04/15/2025) |
| 04/15/2025 | 246 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 245 served on Plaintiff on April 15, 2025. Service was made by regular and electronic mail. Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/15/2025) |
| 04/16/2025 | 247 | ORDER: The Court has received and reviewed Wigdor LLP's ("Wigdor") April 14, 2025 letter requesting guidance from this Court on how, and whether, to maintain original copies of certain of Plaintiff's documents. ECF No. 243. Defendant Black filed a response to this request indicating his position. ECF No. 245. All parties appear to take the position that Wigdor should maintain possession of the original documents, and this Court agrees given the importance of these documents to Defendant Black's pending motion. Accordingly, and consistent with this Court's prior instruction (see ECF No. 223), Wigdor |

| | | |
|---|---|---|
| | | is ORDERED to continue to maintain, safeguard, and preserve the relevant documents until Black's pending sanctions motion is adjudicated. Wigdor shall, however, ensure that copies of the documents are provided to Plaintiff in a timely fashion (and no later than May 1, 2025) and shall also permit Plaintiff (and any new counsel she retains) to review or inspect the documents upon request. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 4/16/2025) (tg) (Entered: 04/16/2025) |
| 04/16/2025 | 248 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 247 served on Plaintiff on April 16, 2025. Service was made by regular and electronic mail. Document filed by Jane Doe, Leon Black. Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/16/2025) |
| 04/23/2025 | | ORDER By order dated January 16, 2025, this Court stayed discovery of this action, for good cause shown, pending resolution of Defendant's sanctions motion. ECF No. 205 . This stay order applied to future scheduled conferences before this Court, and so for the avoidance of doubt, the Court makes clear that the May 1, 2025 case management conference contemplated by the case management order (ECF No. 155 ) is ADJOURNED. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (Clarke, Jessica) (Entered: 04/23/2025) |
| 04/23/2025 | 249 | LETTER addressed to Judge Jessica G. L. Clarke from Jane Doe Pro Se Plaintiff dated 4/23/2025 re: I am the pro se Plaintiff in the above-captioned matter. I respectfully write to raise serious concerns regarding the conduct of my former counsel, Wigdor LLP; to request relief necessary to protect my rights and the integrity of these proceedings; and to ask the Court for a temporary stay of proceedings, or an extension of time to oppose Defendants motion to dismiss, which is currently due on May 23, 2025. Document filed by Jane Doe.(tg) (Entered: 04/24/2025) |
| 04/24/2025 | 250 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 24, 2025 Document filed by Non-Party..(Christensen, Jeanne-Marie) (Entered: 04/24/2025) |
| 04/24/2025 | 251 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 250 served on Plaintiff on April 24, 2025. Service was made by regular and electronic mail. Document filed by Non-Party, Leon Black, Jane Doe. (Attachments: # 1 Exhibit ECF 250)Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/24/2025) |
| 04/25/2025 | 252 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Susan Estrich dated April 25, 2025 re: Response to Dkt. No. 249. Document filed by Leon Black, Jane Doe.Motion or Order to File Under Seal: 209 .(Estrich, Susan) (Entered: 04/25/2025) |
| 04/25/2025 | 253 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 25, 2025 Document filed by Leon Black, Jane Doe, Non-Party.Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/25/2025) |
| 04/25/2025 | 254 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 252, ECF 253 served on Plaintiff on April 25, 2025. Service was made by regular and electronic mail. Document filed by Non-Party, Leon Black, Jane Doe. (Attachments: # 1 Exhibit ECF 252, # 2 Exhibit ECF 253)Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/25/2025) |
| 04/30/2025 | 255 | LETTER addressed to Judge Jessica G. L. Clarke from Jane Doe dated 4/30/25 re: Request for Emergency Conference and Leave to Submit Materials Under Seal/In Camera. Document filed by Jane Doe.(yv) (Entered: 04/30/2025) |

| 04/30/2025 | 256 | LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 30, 2025 re: ECF 255. Document filed by Non-Party..(Christensen, Jeanne-Marie) (Entered: 04/30/2025) |
|---|---|---|
| 04/30/2025 | 257 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 256 served on Plaintiff on April 30, 2025. Service was made by regular and electronic mail. Document filed by Non-Party, Leon Black, Jane Doe. (Attachments: # 1 Exhibit ECF 256)Motion or Order to File Under Seal: 209 .(Christensen, Jeanne-Marie) (Entered: 04/30/2025) |
| 05/05/2025 | 258 | MEMORANDUM OPINION AND ORDER re: 224 MOTION for Case-Terminating Sanctions . As set forth below, Plaintiffs requests are GRANTED IN PART and DENIED IN PART. I. Plaintiff's Requests for an Extension or Temporary Stay and Appointment of Pro Bono Counsel The Court denies Plaintiff's request for a temporary stay of this action. Discovery has already been stayed, and Plaintiff has not identified good cause to stay the briefing schedule on Defendant's pending motion. However, the Court grants Plaintiff's request for additional time to file her opposition. Plaintiff and Wigdor LLP will have until June 23, 2025 to oppose Defendant's motion. Defendant's reply is due by July 7, 2025. As further set forth by this Order. For the reasons set forth above, Plaintiff's requests are GRANTED in part and DENIED in part. Both Plaintiff, either through newly appointed counsel or in her own capacity as a pro se litigant, and Wigdor LLP shall file an opposition to Defendant's pending sanctions motion by June 23, 2025, and Defendant shall file a reply by July 7, 2025. In addition, in light of Plaintiff's recent filings (which include an email address and physical address), the Court is satisfied that Plaintiff can now personally receive service from the Court. Accordingly, unless otherwise instructed, Wigdor need not continue to serve Plaintiff with filings in this case. Plaintiff is further reminded that she may opt-in to receive service through the Courts CM/ECF system by completing the Motion for Permission for Electronic Case Filing form which can be found on the Courts website at https://www.nysd.uscourts.gov/forms/motion-permission-electronic-case-filing-pro-se-cases. The Clerk of Court is respectfully directed to update the docket with the below information for Plaintiff, and to serve a copy of this Order on Plaintiff by email and at the physical address listed. Jane Doe P.O. Box 286 Haymarket, VA 20168 202-407-6947 jane.doe06418@gmail.com. SO ORDERED. ( Responses due by 6/23/2025, Replies due by 7/7/2025.) (Signed by Judge Jessica G. L. Clarke on 5/5/2025) (tg) (Entered: 05/05/2025) |
| 05/06/2025 | 259 | ***SELECTED PARTIES*** LETTER addressed to Judge Jessica G. L. Clarke from Jeanne M. Christensen dated April 4, 2025 re: filing under seal letter previously submitted via electronic mail pursuant to ECF 258. Document filed by Leon Black, Jane Doe, Non-Party.Motion or Order to File Under Seal: 258 .(Christensen, Jeanne-Marie) (Entered: 05/06/2025) |
| 05/06/2025 | 260 | ***SELECTED PARTIES***CERTIFICATE OF SERVICE of ECF 259 served on Plaintiff on May 6, 2025. Service was made by regular and electronic mail. Document filed by Non-Party, Leon Black, Jane Doe. Motion or Order to File Under Seal: 258 . (Christensen, Jeanne-Marie) (Entered: 05/06/2025) |
| 05/12/2025 | 261 | Letter Motion for Leave to File Letter and Supporting Materials Under Seal addressed to Judge Jessica G. L. Clarke from Jane Doe dated 5/12/2025. Document filed by Jane Doe.. (nd) (Entered: 05/13/2025) |
| 05/14/2025 | 262 | MEMO ENDORSEMENT on re: 261 Letter filed by Jane Doe. ENDORSEMENT: The Court has reviewed Plaintiff's May 12, 2025 letter requesting to file a forthcoming submission under seal. ECF No. 261. Plaintiff is permitted to file her forthcoming submission under seal with access to all counsel of record. At this time, the Court does not see a reason to receive Plaintiff's submission in camera or for the Court's view alone. Therefore, Plaintiff is warned that any submission she makes, even if placed under seal, |

A-32

| | |
|---|---|
| | will be accessible to, and viewable by, Defendant and his attorneys. To the extent Plaintiff seeks to share otherwise privileged information with the Court, and the Court agrees that it is relevant and necessary to review those communications, the Court will instruct Plaintiff regarding how to submit that information privately. The Court also reminds Plaintiff that if the items she intends to raise in her submission are relevant to Defendant's sanctions motion, she can and should raise those matters in her opposition to that motion instead of a separate filing. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 5/14/2025) (tg) (Entered: 05/14/2025) |
| 05/16/2025 | Mailed a copy of 262 Memo Endorsement, to Jane Doe P.O. BoX 286 Haymarket, VA 20168. (nb) (Entered: 05/16/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/16/2025 15:44:49 | | |
| **PACER Login:** | cpnycpara16 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-06418-JGLC |
| **Billable Pages:** | 28 | **Cost:** | 2.80 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
JANE DOE,                                                      :
                                                              :
                                    Plaintiff,                :        Civil Action No.
                                                              :
        v.                                                    :
                                                              :        **COMPLAINT**
LEON BLACK,                                                   :
                                                              :
                                    Defendant.                :        **Jury Trial Demanded**
                                                              :
-------------------------------------------------------------- X

Plaintiff Jane Doe,[1] by and through counsel Wigdor LLP, alleges against Defendant Leon

Black ("Black" or "Defendant"), as follows:

1.      In 2002, at his Manhattan townhouse, 9 East 71st, Jeffrey Epstein executed a "hand

off" to his close friend Leon Black.  But what passed directly to Black's hands from the hands of

Jeffrey Epstein was a human being – not a ball.

2.      The human being, Jane Doe, is autistic, and she was 16 when Jeffrey Epstein

introduced her to Black and said she was to give his "special friend Leon Black" the same kind of

massage that she had to give to Jeffrey Epstein when he ordered her to.  Even as Black grabbed

her hand so hard that she thought he broke bones, Jeffrey Epstein knew Jane Doe would never

disobey.  Developmentally she is about 12, and when she was threatened to do as told because

"bad girls" get in "trouble," she did as she was told.

3.      Black took her to the third floor of the townhouse, to a massage room where she

had been before with Jeffrey Epstein.  There, using adult sex toys in her anus and vagina, he raped

---

[1]      Plaintiff intends to file a motion to proceed under the pseudonym "Jane Doe" in this case
to protect her privacy because her allegations concern sexual abuse that occurred when she was a
minor.  The disclosure of her name in connection with the allegations would cause her further harm
and potentially endanger her safety.

her.  His physical force such that when he left her on the floor sobbing, she was bleeding.  As set forth below, Jeffrey Epstein refused to take her to a doctor, and instead said that Ghislaine Maxwell would take care of it.

4.      Sadly, Ms. Doe's experience is one more in a long line of despicable and heinous experiences inflicted on a minor trapped in Jeffrey Epstein's web – a web that extended to a group of powerful and influential men, including Leon Black.

## JURISDICTION, VENUE & LIMITATIONS PERIOD

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the amount in controversy in this matter exceeds $75,000.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful sexual assaults alleged herein, occurred in this district, and Defendant resides in this district.

7.      Pursuant to the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPL), as amended, N.Y.C. Admin. Code § 10-1105(a), this case is timely.

## PARTIES

8.      Plaintiff Jane Doe is over the age of 18, and is a citizen of the U.S.

9.      Defendant Leon Black is over the age of 18, is a citizen of the U.S. and resides in New York, New York.

## FACTUAL ALLEGATIONS

**I.    PLAINTIFF IS AUTISTIC**

10.    Ms. Doe is autistic,[2] and was born with Mosaic Down Syndrome, a rare condition where only some of the body's cells contain an extra chromosome (in contrast to an individual with typical Down Syndrome, who is born with an extra chromosome in every cell in her body). As a result, while Plaintiff does not appear physically or outwardly different from a neurotypical individual, she suffers from many of the same neurological disabilities and health issues that are tragically common among individuals with Down Syndrome.

11.    Although Ms. Doe has an above average intelligence quotient (IQ), her developmental age is around 12 years old.

12.    Because Ms. Doe is autistic, it is difficult for her to understand social cues based on the behavior of people she encounters.  To be clear, being able to "read the room," is an impossible task.  Instead, Plaintiff experiences the world in a child-like way and sees situations in terms of whether something is "right" or "wrong," or "good" versus "bad."

---

[2]    According to Dr. Daniel Geschwind, professor of human genetics, neurology and psychiatry at UCLA, "autism refers to a broad range of conditions characterized by challenges with social skills and social and communication and repetitive behaviors, resistance to changes in routine, or restricted interests. … it's not one thing, and no two autistic children or adults are exactly alike even though they may share basic features." https://www.cnn.com/2023/04/12/health/what-is-autism-explainer-wellness/index.html; the National Institute of Mental Health describes autism as: "a neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave. Although autism can be diagnosed at any age, it is described as a "developmental disorder" because symptoms generally appear in the first 2 years of life." https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd; the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders (DSM-5)*, states that people with autism often have: difficulty with communication and interaction with other people; restricted interests and repetitive behaviors; and symptoms that affect their ability to function in school, work, and other areas of life.

A-36

13.     As with most autistic people, she is extremely trusting.  Sadly, this is one factor which places girls with autism at a substantially increased risk of being sexually assaulted.[3]

14.     Plaintiff was a perfect target for Jeffery Epstein and his accomplice Ghislaine Maxwell.

15.     Epstein and Maxwell seized upon Plaintiff's developmental disabilities, coupled with her outwardly physical appearance, specifically fair skin, blue eyes and blond hair, for their own deviant sexual predation.

16.     Disgustingly, Epstein and Maxwell trafficked Ms. Doe to other men in their circle, including Defendant Black.

## II.   PLAINTIFF IS TRAFFICKED TO JEFFREY EPSTEIN AND GHISLAINE MAXWELL

13.     During the summer of 2001, Ms. Doe signed up for a county recreational program geared towards girls ages 8-12 interested in cheerleading.  The program was run by an adult volunteer named "Elizabeth," about age 40, who upon information and belief, had no background in cheerleading instruction.

14.     Elizabeth told Plaintiff that even though she was 15, she could participate in the recreational cheerleading if she could fit into the uniform, the largest size which was meant for 12-year-olds.

15.      Plaintiff fit into the uniform.  Because of her developmental disabilities, the fact that she was in a cheerleading group with girls as young as eight years old was not a problem for Ms. Doe.  She was happy to be participating.

---

[3]     Studies show that girls with autism from ages 9 to 18 years are three times as likely to experience sexual assault when compared to their neurotypical counterparts. https://www.psychologytoday.com/us/blog/talking-about-trauma/202209/girls-autism-face-three-times-the-risk-sexual-assault

16.     Elizabeth soon showed Plaintiff extra attention.  Not long after she began attending the cheerleading program, Plaintiff was told by Elizabeth that she was going to live at Elizabeth's house several days a week.  Of course, Plaintiff's parents were involved in the living arrangements.

17.     As the adults in her life undoubtedly anticipated, Plaintiff did as she was told and never questioned Elizabeth or her parents.

18.     Soon, several days a week turned into most days a week.  By the time school started in the fall, Plaintiff was living nearly full-time with Elizabeth.  Little did Plaintiff know what horrors were ahead for her.

19.     From the beginning of her time living with Elizabeth, Plaintiff was subjected to horrific, unimaginable physical abuse as part of the "training" Elizabeth believed necessary to prepare her for what Elizabeth had planned.

20.     By way of example only, Elizabeth violently physically abused Plaintiff, by punching and kicking her and even dragging Plaintiff up multiple flights of stairs in her townhouse by Plaintiff's ponytail.  Elizabeth psychologically abused Plaintiff by depriving her food and water and punishing Plaintiff anytime Elizabeth was dissatisfied with Plaintiff's behavior (which was often), including by locking her a room for hours, making her dress in small children's clothing and making her work out for hours at a gym until Plaintiff was too exhausted to stand, often after denying her any food.

21.     Although Ms. Doe had moved in with Elizabeth, she did not have her own bed there, much less a bedroom.  Instead, Elizabeth repeatedly told Plaintiff that she did not "deserve" her own bedroom in her house and that Plaintiff would not receive one until she "worked for it."  Sadly, Plaintiff did not understand what Elizabeth meant, but she never questioned anything Elizabeth did or said, especially because physical violence was something she wanted to avoid.

22.     Elizabeth had a number of sexual partners at the time, including a man who lived in the same house, as well as other male "friends," who would visit Elizabeth.  One of these men, "Charlie," was a white male in his late 40s.  Together with Charlie, Elizabeth began sexually grooming Plaintiff as soon as she started staying overnight with Elizabeth.

23.     The sexual grooming included forcing Plaintiff to watch them have sex.  Ms. Doe had never engaged in sexual conduct herself.  Again, Plaintiff did everything that Elizabeth and Charlie told her to do.

24.     Horribly, Elizabeth threatened Ms. Doe with the fact that she had a gun permit and kept a gun in the house.  She told Ms. Doe that if she ever told anyone about the things she and Charlie made her do, that Plaintiff would go "missing," and since no one loved or cared for her, she would not be missed.  Plaintiff never doubted what Elizabeth told her because her parents told her to live with Elizabeth.

25.     Plaintiff was forced to submit to Elizabeth's degrading and violative conduct on a daily basis.  She feared being killed and believed everything that Elizabeth said.

26.     Saying no to Elizabeth was not an option for Plaintiff.  To this day, Plaintiff lives in fear of Elizabeth and what will happen if Elizabeth ever learns that Plaintiff has found the courage to tell her story.

### III.     ELIZABETH AND CHARLIE ARRANGE FOR MAXWELL AND EPSTEIN TO MEET MS. DOE

27.     Sometime in late summer of 2001, Elizabeth told Plaintiff that she was taking her to what she referred to as an adult "party" in a suburb outside of Washington D.C.

28.     Elizabeth and Charlie drove Ms. Doe to a large home, with a circular drive, fountain and pillars.  Plaintiff was told to go inside and she did.

29.     The only people inside were adults – mostly men – who seemed "old" to Plaintiff.

6

30.    She was approached by a woman with dark hair and a British accent, who introduced herself to Plaintiff and sat with her, feigning interest in her safety and well-being.

31.    It was only later that Plaintiff learned that this woman was Ghislaine Maxwell ("Maxwell"), the convicted sex offender currently in prison serving a 20-year sentence.

32.    Maxwell led plaintiff over to a large white couch and took pains to give Plaintiff the impression that she cared about her and was genuinely interested in what she had to say. Maxwell seemed to ignore Plaintiff's natural difficulties in conversing in social settings – her inability to hold eye contact, her difficulties in picking up on social cues, how much she struggled to keep up with conversations – and instead focused on making her feel comfortable. As a result, Plaintiff mistakenly believed that Maxwell truly cared about her.

33.    Maxwell spent the conversation lavishing Plaintiff with compliments, referring to her as "a beautiful darling girl" and said that she was "a beautiful girl with the most beautiful bright blue eyes, blonde hair and perfect hair" that made her look like a living "doll."

34.    Seemingly already aware of Plaintiff's developmental disabilities, Maxwell treated her like a child, holding her hand, bringing her to the bathroom and making her stand right outside the door so Maxwell could keep talking to her the way mothers do with young children.

35.    What Plaintiff did not realize at the time was that Maxwell was merely taking a page out of what had by then become a well-rehearsed script, making efforts to bond with a vulnerable young girl so that she would lower her guard by the time Maxwell introduced them to Epstein. Although she did not know who the man was, Plaintiff noticed the constant looks passing between Maxwell and a man on the other side of the room throughout the evening.

36.     At some point Maxwell brought Plaintiff out to the driveway where Elizabeth and Charlie were waiting.  She told Elizabeth that Plaintiff was a "darling," a "good girl," and a "beautiful girl."

37.     The very next week, Elizabeth put Plaintiff on a private plane from Virginia to Palm Beach.  There she was picked up by a man who drove her in a large SUV to Epstein's home.

38.     Maxwell and Epstein began exposing Plaintiff to their sexual deviance less than an hour after she first arrived.  They placed her in a swivel chair in a hallway outside of their bedroom and told her to "not move."  She did not move from the chair, but instead turned around and around in the swivel chair while she listened to them having sex in the next room with the door open. When they were done, they came out into the hallway, and acted happy and told Plaintiff she was a "good girl" for staying seated.  They then acted as if nothing had happened and took her downstairs.

39.     Quickly, Maxwell showed Plaintiff how to "make Jeffrey happy."  Maxwell held Plaintiff's hand the first time she showed her the way to massage Jeffrey and make him ejaculate through oral sex – both Maxwell and Epstein gave Plaintiff "happy claps" for her brilliant success, the way parents do with five-year-olds.

40.     They made Plaintiff share a bed with them at night so that they could "cuddle" and Epstein could wrap his arms around both Plaintiff and Maxwell.

41.     Sarah Kellen (Kellen), not Maxwell, is the one who taught Plaintiff how to make "Jeffrey happy" by having sexual intercourse with him.

42.     On other occasions, Plaintiff was required to sit on Epstein's lap with her feet draped over Maxwell's legs as Epstein also complimented her about how beautiful she was and how much he was drawn to her mix of blonde hair and blue eyes and porcelain skin.

8

43.    Epstein often told Plaintiff that she was his "very special girl," and commented on her "special innocence."

44.    Most weekends, Elizabeth sent Plaintiff to Epstein and Maxwell – what Elizabeth referred to as "shipping you out." Plaintiff was "shipped out" to Palm Beach and to the USVI. Plaintiff missed countless Fridays and Mondays from her junior year of high school, almost causing her to fail.

45.    Epstein often required Plaintiff to give him massages, and he would strip completely naked prior to receiving the massage from Plaintiff. Plaintiff, who had turned 16 shortly before first meeting Maxwell, sometimes also was required to remove all of her clothing before giving Epstein this massage.

IV.    **THE "HAND OFF"**

46.    Once Epstein was satisfied that Plaintiff knew how to give him a massage involving sexual intercourse, which happened quickly, he began what Plaintiff knows as the "hand off."

47.    The "hand off" meant that Plaintiff had to go with any other man (usually a white male that seemed very "old" to Plaintiff) to give him a massage and have sexual intercourse. The first several times Plaintiff had to do this took place in Palm Beach and on Epstein's island in the USVI.

48.    When Plaintiff was shipped back to Elizabeth, Charlie often picked her up from the airport. Plaintiff feared nothing more than Elizabeth saying that she did not get a "good report" that Plaintiff had been a "good girl" by Epstein and Maxwell.

49.    If Plaintiff had not been a "good girl," she would be subjected to intensified physical and psychological abuse by Elizabeth.

50.     Before Plaintiff was shipped back, Maxwell, or Sarah Kellen, or another girl named Nadia, would put an envelope in Plaintiff's bag.  She was told not to touch it. They warned Plaintiff that the amount of money in the envelope was known, so if Plaintiff removed any, she would be caught.

51.     Plaintiff was not allowed to unpack her own bag when she returned to Elizabeth's. This was a task reserved for Elizabeth.

52.     One time when an envelope had been placed in Plaintiff's bag but it was not completely sealed, even though Plaintiff had not touched the envelope, much less taken cash from it, Elizabeth subjected Plaintiff to a beating simply because Elizabeth decided she was a "fucking idiot."

53.     Regularly, Elizabeth would reiterate her threats to kill Plaintiff if she ever discussed what had happened to her.

54.     Plaintiff believed Elizabeth's claim that no one in the world cared enough for her to notice if she disappeared.  She therefore lived in constant fear of what Elizabeth would do to her.  She never dared to tell anyone and kept silent for years.

**V.     PLAINTIFF IS TRAFFICKED BY EPSTEIN TO HIS NYC TOWNHOUSE FOR THE PURPOSE OF BEING HANDED OFF TO LEON BLACK**

55.     On two occasions, Epstein and Maxwell made Plaintiff stay with them in NYC, at Epstein's townhouse located at 9 East 71st Street.

56.     Not long after Plaintiff had been trained to give Epstein massages involving sex, with the assistance of Elizabeth and Charlie, Epstein and Maxwell trafficked Plaintiff across several state lines, to New York City, to sexually service Epstein and Maxwell and those she was handed off to.

57.     The first time Plaintiff was made to stay at Epstein's townhouse, which upon information and belief was late fall 2001 or winter 2002, she slept in his bedroom, in the same bed as Epstein and Maxwell.

58.     Plaintiff was never allowed to leave any of the residences alone, and certainly not in NYC, where she had never been before.  Yet, one time Epstein and Maxwell took Plaintiff to what she believed was a theater for ballet but not to see a performance.  Instead, Epstein and Maxwell met with some individuals there, in what seemed like offices behind the stage, and Plaintiff was introduced to a dancer.

59.     Another time during this NYC stay, Maxwell brought Plaintiff to a different, smaller townhouse, not far away from Epstein's.  Maxwell told Plaintiff that she needed to get a few things.  Upon information and belief, this was Maxwell's townhouse located at 116 East 65th Street.

60.     In or around late spring of 2002 or early summer, Elizabeth told Plaintiff that she was being "shipped off" to New York City.  She said that Charlie would be driving her to meet Epstein's "special friend," a man named Leon Black.  Elizabeth emphasized that Leon Black was a "very important and special person" to "Jeffrey," and she threatened Plaintiff that she "better" receive a "good report" that Plaintiff was a "good girl" for Jeffrey and his important, special friend.

61.     Charlie drove Plaintiff to Epstein's New York City townhouse.

62.     There, she was summoned to Epstein.  She found him standing with a huge older man -- Black is 6' 4" and about 300 pounds.  The two men appeared to be having a conversation.

63.     Epstein introduced Plaintiff to Leon Black, using his full name, and told her that Black was "important" and "special" to Epstein.  Plaintiff was struck by Black's immense size.  Plaintiff's initial impression of Black was that he looked like an "ogre," and she felt frightened.

11

64.     Plaintiff noticed Black's bulbous nose and that his face and neck had a number of skin tags and moles.

65.     Epstein told Plaintiff that because she was his "special girl," he had selected her specifically to give his "special friend," Black, a massage.

66.     Epstein told Plaintiff that she was to give Black the same kind of "massage treatment" that she gives Epstein – meaning that it would involve sexual intercourse and she was expected to strip naked.

67.     Black took Plaintiff by her hand, squeezing it so hard that she thought he might have broken bones, and led her upstairs to a massage room on the third floor of the townhouse. She had been in the room with Epstein on her prior stay at the townhouse.

68.     In the room there were a variety of oils and adult sex toys next to the massage table.

69.     Plaintiff assumed that Black would proceed to disrobe before laying down on the massage table, the way Epstein usually did.

70.     Instead, Black picked Plaintiff up and threw her over his shoulder and then threw her violently down on the massage table on her back, so hard he knocked the wind out of Plaintiff. She thought the massage table might have broken.  She tried to scream but Black placed his hand over her mouth and leaned over her while ripping off her shirt and under her skirt pulling her underwear off.

71.     Plaintiff was crying and terrified.  Black asked her repeatedly what made her "Jeffrey's special girl" and throughout the assault called her demeaning, shameful, disgusting names.  Plaintiff was in a complete state of shock because this was nothing like the massages she had been taught to give Epstein.

12

72.     She tried to move off the table but Black had her pinned down.  Black laughed at Plaintiff's futile attempts to escape his grasp, and he asked her if she considered herself "feisty" and mocked her by claiming that that he wanted Plaintiff to show him why Epstein referred to her as his "special girl."

73.     Plaintiff could not see, but rather heard Black rummaging among the adult toys nearby and he roughly snapped her legs apart causing Plaintiff to feel as if her pelvic bone had been broken.  Using the adult toys, Black then penetrated Plaintiff simultaneously in both her vagina and rectum, using such force that Plaintiff felt tearing in her internal tissue.  When Plaintiff screamed out in agony, Black again covered her mouth with one of his hands.

74.     Plaintiff was crying still when Black placed his mouth on her vaginal area.  At this point, Plaintiff realized that struggling would be useless given how much stronger and physically more massive Black was and instead pleaded with Black to stop as she sobbed.

75.     She felt a sharp pain in her vagina, like a hard pinch and she let out a loud scream. At the scream, Black lifted his head out from under her skirt and she saw blood on his mouth and she panicked and kicked him with her right leg.  Her "kick" landed on his chest, and while it likely did not hurt him, he was enraged that she struck out at him and he began viciously cursing her.

76.     He then called her a "whore" and a "slut," and picked Plaintiff up off the massage table and threw her to the floor.

77.     Once on the floor, Plaintiff attempted to scramble towards the door but Black instead grabbed her legs, pulled Plaintiff towards him and she saw blood on the floor which likely was from her rectum.

78.     Black got on top of her.  Plaintiff went into shock and began to disassociate, trying to convince herself that she was somewhere else but the unimaginable pain she experienced

prevented her from even this temporary respite.  He continued to violently thrust himself on her with such force, that she felt he was crushing her pelvic and hip bones.

79.     Despite violently thrusting over her with his extreme weight, Black kept telling Plaintiff to "stay still."  She felt like she could not breathe.

80.     When Black appeared to be finished, he grabbed Plaintiff up by her wrists and slammed her into the wall and watched as she slid down to a sitting position – still crying in fear and pain.

81.     After what seemed like a long time to Plaintiff, Epstein came in and found her still against the wall and crying.  Plaintiff begged Epstein to take her to a doctor because she was in physical agony and was continuing to bleed but he refused, instead telling her that Maxwell would take care of her.

82.     Epstein summarily handed her towels to clean herself up. He then took her down to the second floor of his townhouse and told her to wait in a chair.  Epstein grew increasingly frustrated as Plaintiff continued to cry.  He demanded that she pull herself together as he was expecting a visitor.  Shortly thereafter, a thin, middle-aged blonde woman arrived at the townhouse and had folders in her hands which she gave to Epstein.  Upon information and belief, this woman was Leslie Groff, Epstein's long-time New York based assistant.

83.     Although Epstein trafficked Plaintiff to other men, both before and after Black, she was never again taken to NYC.  The violent and sadistic nature of Black's rape left an indelible mark on her, both physically and psychologically.  Plaintiff suffered internal abrasions in her rectum that continue to cause her pain.

84.    To this day, Plaintiff often is triggered each month at the beginning of her menstrual cycle as the sight of blood from her body causes Plaintiff to suffer from panic attacks, reliving the attack that she endured ay Black's hands.

85.    Although Epstein and Maxwell did not take Plaintiff to the doctor that day, she was taken to the airport where she went back to Elizabeth's, with a thick envelope that she was not allowed to open and required to hand over to Elizabeth.

## VI.    BLACK'S OTHER VICTIMS THROUGH EPSTEIN

86.    Appallingly, Plaintiff is not the only female who Epstein and Black sexually violated.

87.    For example, on March 13, 2023, in the matter of *Jane Doe 1, et al. v. Deutsche Bank Aktiengesellschaft et al.*, Index No. 22 Civ. 10018 (JSR) (Southern District of New York), the district court heard oral argument on the defendant's motion to dismiss.  As part of Jane Doe 1's claims, she had alleged that,

> "There came a time when Epstein forced Jane Doe 1 to give massages to his powerful friends. During some of these massages, Jane Doe 1 was sexually abused by force and against her will by Epstein's friends, by whom she had been required to do massage."

88.    Deutsche Bank introduced a release agreement ("Release") between Jane Doe 1 and Epstein in support of its motion to dismiss.  This Release included a carve out of Jane Doe 1's claims against Black, as well as another individual, James (Jes) Staley, a former banker who Black introduced to Epstein in or around 2000.

89.    At oral argument, the portions of the Release were read into the record, including, in relevant part that:

While the parties do not believe there is any reasonable interpretation that this general release could be construed to **release James (Jes) Staley, Leon Black or their respective entity affiliations**. For clarity, this general release and settlement agreement specifically does not include **James (Jes) Staley, Leon Black or any company or entity which either is or was beneficially owned or controlled by James (Jes) Staley or Leon Black** as a releasee or released party under this general release and settlement agreement.

90.     Of course, if Black had not engaged in sexual misconduct or other tortious claims against Jane Doe 1, there would have been no reason to include him in the carve out along with Jes Staley.

91.     On July 21, 2023, the *New York Times* reported that Black agreed to pay the U.S. Virgin Islands Office of the Attorney General $62.5 million in order to avoid possible claims stemming from his relationship with Epstein.[4]  As reported, Black entered into that settlement agreement with the Office of the Attorney General in January 2023.

92.     Over the last several years, the U.S. Virgin Islands has been conducting extensive investigations into Epstein's sex trafficking activities, culminating in a lawsuit against Epstein's estate. That lawsuit was settled between the Office of the Attorney General for the U.S. Virgin Islands and Epstein's estate in December 2022 for over $100 million.

93.     Furthermore, according to the *New York Times*, "Some victims of Mr. Epstein who had received settlements directly from his estate were granted permission by the estate's executors to pursue claims against a handful of men who had socialized with Mr. Epstein, according to a person with knowledge of the matter. Mr. Black was one of those men."  It is clear that Ms. Doe is not the only victim of both Epstein and Black.

---

[4]     https://www.nytimes.com/2023/07/21/business/leon-black-settlement-jeffrey-epstein-claims.html (last visited July 24, 2023).

16

**CAUSE OF ACTION**
**Victims of Gender-Motivated Violence Protection Law (VGMVPL)**

94.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as though set forth fully herein.

95.     The above-described conduct of Defendant Black, including, but not limited to, Defendant Black's sexual assault and rape of Plaintiff constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPL), as amended, N.Y.C. Admin. Code § 10-1101, *et seq*.

96.     The above-described conduct of Defendant Black, including, but not limited to, Defendant Black's sexual assault and rape of Plaintiff constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

17

97.     As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

98.     The above-described conduct of Defendant Black constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").

99.     Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of New York and the City of New York;

B.     An injunction and order permanently restraining Defendant and any and all persons acting in concert with him, from engaging in any such further unlawful conduct, including the conduct complained of herein;

C.     An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D.     An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate

Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her physical injuries and emotional distress;

E.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, reputational harm in an amount to be determined at trial, plus prejudgment interest;

F.      An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G.      Prejudgment interest on all amounts due;

H.      An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.      Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 25, 2023
      New York, New York                   Respectfully submitted,

                                        **WIGDOR LLP**

                                        By: _____
                                          Jeanne M. Christensen

                                        85 Fifth Avenue
                                        New York, NY 10003
                                        Telephone: (212) 257-6800
                                        Facsimile: (212) 257-6845
                                        jchristensen@wigdorlaw.com

                                        *Counsel for Plaintiff Jane Doe*

A-52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, | |
| PLAINTIFF, | |
| -AGAINST- | Case No. 23-cv-06418-JGLC |
| LEON BLACK, | **NOTICE OF MOTION TO DISMISS** |
| DEFENDANT. | |

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, and all prior pleadings and proceedings in this action, Defendant Leon Black, by his undersigned counsel, will move this Court on a date to be determined by the Court for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Plaintiff Jane Doe's Complaint with prejudice, along with all other relief that the Court deems necessary and proper.

**PLEASE TAKE FURTHER NOTICE** that any papers in opposition to this motion shall be served in accordance with Local Civil Rule 6.1.

Respectfully submitted,

Dated: September 29, 2023          By:     */s/ Michael B. Carlinksy*
New York, New York                        QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
                                          Michael B. Carlinsky
                                          Jennifer J. Barrett
                                          51 Madison Avenue
                                          22nd Floor
                                          New York, New York 10010
                                          (212) 849-7000
                                          michaelcarlinsky@quinnemanuel.com
                                          jenniferbarrett@quinnemanuel.com

                                          PERRY LAW
                                          E. Danya Perry
                                          Peter A. Gwynne

157 East 86th St., 4th Floor
New York, NY 10028
(646) 357-9952
dperry@danyaperrylaw.com
pgwynne@danyaperrylaw.com

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
(213) 399-2132
susan@estrichgoldin.com

*Counsel for Defendant Leon Black*

TO: All parties and counsel of record (via ECF)

A-54

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

                              Plaintiff,

                    -against-                                    23-CV-6418 (JGLC)

LEON BLACK,                                                      **OPINION AND ORDER**

                              Defendant.

---

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Jane Doe brings this action under the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") alleging that Defendant Leon Black sexually assaulted her in 2002, when she was a minor. The truth or falsity of that allegation is not the question at this stage. Instead, the question before the Court is whether the amendment reviving claims under the VGMVPL (the "VGMVPL Revival Statute") is preempted by the Child Victims Act ("CVA"). Because Defendant has failed to demonstrate that the state legislature occupied the relevant field of legislation with the CVA or that the VGMVPL Revival Statute conflicts with the CVA, the Court finds that the VGMVPL Revival Statute is not preempted by the CVA. Accordingly, Defendant's motion to dismiss is DENIED. The Court also DENIES Defendant's motion to stay as moot, GRANTS in part and DENIES in part the parties' motions to seal, and DENIES Defendant's motion for sanctions.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

A-55

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

## DISCUSSION

The Court first denies Defendant's motion to dismiss, finding that the VGMVPL Revival Statute is not preempted by the CVA. The Court next denies Defendant's motion to stay as moot. The Court then grants in part and denies in part Defendant's motion to seal, finding that only the proposed redactions to protect Plaintiff's anonymity and her medical information are warranted. Finally, the Court denies Defendant's motion for sanctions, finding that the factual record is insufficient at this juncture to make a determination as to sanctions.

## I.    Defendant's Motion to Dismiss is Denied[1]

The New York City Council adopted the VGMVPL in 2000 in response to the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the Violence Against Women Act ("VAWA") on Commerce Clause grounds. N.Y.C. Admin. Code

---

[1] On August 20, 2024, Plaintiff filed a motion for leave to amend the Complaint. *See* ECF No. 91. Defendant acknowledges that the proposed amended complaint "has absolutely no effect on the pending motion to dismiss." *See* ECF No. 94. Thus, the Court decides the motion to dismiss herein; the Court will decide upon the motion for leave to amend and related sealing motions at a later date.

A-56

§ 10-1102. The VGMVPL provides for a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." *Id*. § 10-1104. The VGMVPL defines "crime of violence" as:

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id*. § 10-1103. The VGMVPL further defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id*.

The VGMVPL allows for actions to be commenced within seven years after the alleged crime of violence motivated by gender. *Id*. § 10-1105(a). If a potential plaintiff is unable to bring a claim within the seven years for certain enumerated reasons, including infancy, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id*. Under such limitations period, Plaintiff's claim would have expired approximately eleven years ago, as the alleged crime of violence motivated by gender occurred in 2002 when she was sixteen. *See* ECF No. 1 ("Compl.") ¶¶ 1–2.

On January 9, 2022, the New York City Council adopted an amendment to the VGMVPL – the VGMVPL Revival Statute – stating:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

City of New York, L.L. 21/2022 § 2. Plaintiff claims that she timely filed suit, because she

brought her action on July 24, 2023, less than two years and six months after September 1, 2022.

*See* Compl. ¶ 99.

Defendant argues that the VGMVPL Revival Statute is preempted by the CVA, and

therefore that Plaintiff's claim is untimely. ECF No. 41 ("Mot."). The CVA states:

> Notwithstanding any provision of law which imposes a period of limitation to the
> contrary . . . every civil claim or cause of action brought against any party
> alleging intentional or negligent acts or omissions by a person for physical,
> psychological, or other injury or condition suffered as a result of conduct which
> would constitute a sexual offense as defined in article one hundred thirty of the
> penal law committed against a child less than eighteen years of age . . . which is
> barred as of the effective date of this section because the applicable period of
> limitation has expired . . . is hereby revived, and action thereon may be
> commenced not earlier than six months after, and not later than two years and six
> months after the effective date of this section.

C.P.L.R. § 214-g. The CVA was first enacted on February 14, 2019, allowing actions to be

commenced between August 14, 2019 and August 14, 2020. 2019 N.Y. Sess. Laws, ch. 11 (S.

2440). In 2020, the CVA's revival window was extended until August 14, 2021. 2020 N.Y. Sess.

Laws, ch. 130 (S. 7082).

In part, the CVA revives previously barred actions related to the sexual abuse of children.

C.P.L.R. § 214-g. The Sponsor Memorandum provides that the CVA "would also establish a one-

year window in which adult survivors of child sexual abuse would be permitted to file civil

actions . . . ." Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7.

### A.  The VGMVPL Revival Statute Is Not Preempted by the CVA

The Court thus analyzes whether the VGMVPL Revival Statute is preempted by the

CVA. Under the New York State Constitution's "home rule" provision, municipalities are able to

adopt local laws pertaining to the "government, protection order, conduct, safety, health and

well-being of persons or property therein," as long as such local laws are "not inconsistent" with

4

the state constitution or general state laws. NY Const., art. IX, § 2(c)(10). "Local laws may be

inconsistent with and preempted by state law either because the legislature has occupied the

relevant field of regulation" – field preemption – or "because the local law conflicts with state

law" – conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New*

*York*, 40 N.Y.3d 417, 423 (2023).

Both parties rely on *Engelman v. Rofe*, 144 N.Y.S.3d 20 (1st Dep't 2021), to support their

arguments regarding preemption. *Engelman*, though providing useful context, is not directly

applicable. In *Engelman*, the court analyzed whether the seven-year limitation period for a claim

under the VGMVPL was preempted by C.P.L.R. § 215(3), which provides for a one-year

limitation period for assault, finding that it was not. 144 N.Y.S.3d at 23. The court held that the

"[VGMVPL's] construct is consistent with the City's broad policing power to enact legislation to

protect its residents from discrimination, including gender-related violence." *Id*. at 25 (cleaned

up). In so holding, the court found that "the legislative intent of the [VGMVPL] was to create a

civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of

limitations for a particular class of assaults." *Id*. at 25–26. Here, however, the provision of the

VGMVPL at issue is specifically about the statute of limitations – extending the time for which

potential plaintiffs can bring causes of action. Therefore, this case does not resolve the issue

before the Court: whether the VGMVPL Revival Statute is preempted by the CVA by either field

or conflict preemption.

**1. Field Preemption Does Not Bar the VGMVPL Revival Statute**

The Court next turns to analyzing the VGMVPL under field preemption. "Field

preemption prohibits a local government from legislating in a field or area of the law where the

legislature has assumed full regulatory responsibility." *Police Benevolent Ass'n*, 40 N.Y.3d at

423 (cleaned up). "Permitting such laws 'to operate in a field preempted' by the state 'would tend to inhibit the operation of the state's general law and thereby thwart the operation of the state's overriding policy concerns.'" *Id.* (quoting *Jancyn Mfg. Corp. v. Cnty. of Suffolk*, 71 N.Y.2d 91, 97 (1987)). However, "the mere fact that a local law may deal with some of the same matters touched upon by state law does not render the local law invalid." *Id.* at 425 (quoting *People v. Judiz*, 38 N.Y.2d 529, 531–32 (1976)). Instead, "[a] desire to pre-empt may be implied from a declaration of State policy by the Legislature or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area." *Consol. Edison Co. of New York v. Town of Red Hook*, 60 N.Y.2d 99, 105 (1983) (internal citations omitted). Here, Defendant's field preemption arguments fail for the reasons stated below.

### a.  The CVA Does Not Indicate an Intent to Occupy the Field

The state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases.[2] Defendant points to several statements by the legislature with respect to the CVA in an attempt to demonstrate field preemption. They are that (1) the CVA applies to "'every civil claim . . . brought against any party . . . as a result of conduct which would constitute a sexual offense' against a minor as defined in, among other provisions, 'article one hundred thirty of the New York State penal law'"; (2) passage of the CVA "will finally allow justice for past and future survivors of child sexual abuse"; (3) the CVA "will finally give . . . all survivors of childhood sexual abuse in the state of New York the justice that they deserve"; (4) the CVA was "on behalf of all of New York's survivors"; and (5) passing the CVA meant "finally getting something done that helps every single victim in this state." Mot. at 17–18 (quoting

---

[2] The Court does not consider the exhibits filed at ECF No. 105, which are not part of the legislative history of the CVA.

C.P.L.R. § 214-g; New York Bill Jacket, 2020 S.B. 7082, Ch. 130, at 8; N.Y. Senate Debate on Senate Bill S2440, Jan. 28, 2019, at 754, 762, 773).

None of these statements support a finding of field preemption on the matter of statutes of limitations. Instead, they merely indicate that the legislature intended for the CVA to benefit all New York child sexual assault victims. This is not the same as "an expression of need for uniform State-wide control" that has been found to support field preemption. *See Vatore v. Comm'r of Consumer Affs. of City of New York*, 83 N.Y.2d 645, 650 (1994). These general statements about helping all New Yorkers are similar to statements made with respect to the New York State Human Rights Law ("NYSHRL"). The NYSHRL states that its purpose is to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" free from discrimination. N.Y. Exec. L. § 290(3). Nonetheless, the New York Court of Appeals (the "Court of Appeals") found the New York City Human Rights Law, which overlaps substantially with the NYSHRL, not to be preempted. *See New York State Club Ass'n, Inc. v. City of New York*, 69 N.Y.2d 211, 217–18 (1987), *aff'd*, 487 U.S. 1 (1988).

Cases where courts have found that the state has expressed a need for complete control in a field are readily distinguishable. For example, in *Consolidated Edison*, the Court of Appeals found that a state law providing that all decisions regarding where new major steam electric generating facilities should be located were to be determined by a state siting board preempted a local law requiring that people obtain a license from the town board to begin a site study for a power plant. 60 N.Y.2d at 103, 105. The desire to preempt was implied from legislative declarations of state policy that the purpose of the state law was "to provide for the expeditious resolution of all matters concerning the location of major steam electric generating facilities presently under the jurisdiction of multiple state and local agencies, including all matters of state

and local law, in a single proceeding" and that "there is a need for the state to control determinations regarding the proposed siting of major steam electric generating facilities within the state." *Id*. at 105. The court also found relevant that the governor approved the law as "the establishment of a unified certificating procedure." *Id*.

Likewise, the Court of Appeals found similar language in the Alcoholic Beverage Control Law ("ABC Law") to be indicative of field preemption. In *People v. De Jesus*, the court considered whether a local law about the sale and offering of alcohol after a certain time was preempted by the ABC Law. 54 N.Y.2d 465 (1981). The ABC Law declared that it was the goal of the state, through the statute, to "regulate and control the manufacture, sale and distribution within the state of alcoholic beverages." *Id*. at 470. Stating that the policy behind the legislation was not "left to the imagination" by this language, the court concluded that the local law was indeed preempted. *Id*.

Here, no similar statements were made in the context of the CVA. Instead, the statements Defendant has pointed to do not support field preemption but instead focus on the benefits the CVA would provide all child victims. The statements do not indicate a desire by the state to assume full control or regulation of this issue.

### b. The CVA Is Not a Comprehensive and Detailed Regulatory Scheme

The CVA is not the kind of scheme – one that is "comprehensive and detailed" – that would support a finding of field preemption. *See Consol. Edison*, 60 N.Y.2d at 105. The cases Defendant cites only further this conclusion. First, in *Consolidated Edison*, the Court of Appeals found field preemption where the statute regulating the siting of new major steam electric generating facilities was "comprehensive and detailed." *Id*. There, the state law included provisions that encouraged prospective applicants to consult state agency staffs regarding

8

preapplication site studies, instructed applicants to request exceptions or variances from municipal regulations, allowed the state board to waive compliance with municipal regulations, and required information to be gathered in carefully prescribed site studies prior to filing an application. *Id*. at 106.

Second, in *ILC Data Device Corporation v. County of Suffolk*, the Second Department held that the state legislature intended to preclude local regulation in the field of employee safety in the workplace with the enacting of a "comprehensive regulatory scheme." 588 N.Y.S.2d 845, 850 (2d Dep't 1992). The New York Commissioner of Labor (the "Commissioner") was given "expansive authority to engage in inspections, investigations, and enforcement" with regard to workplace safety and health as well as the authority to establish and maintain local branch offices, "thereby facilitating the application of State-wide regulation by State officials at the local level." *Id*. at 850–51. The state law provided the Commissioner with the authority to allow variations from health and safety standards, to inspect physical premises and books and records, and to issue subpoenas and conduct hearings. *Id*. at 851. Moreover, the state law set forth comprehensive procedures for administrative and judicial review, governed the employment of minors, controlled work hours and wages, and authorized the Commissioner to identify and ameliorate dangers in machinery and equipment. *Id*. The law also regulated the adoption, implementation, and enforcement of health and safety standards for private employees in New York. *Id*.

Third, in *Wholesale Laundry Board of Trade, Inc. v. City of New York*, the court concluded that the state law regarding minimum wage "indicate[d] a purpose to occupy the entire field." 234 N.Y.S.2d 862, 865 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963). This was because

the "provisions for amendment of the wage fixed formulate an elaborate machinery for the determination of an adequate wage in any occupation and in any locality." *Id*.

And lastly, in *Lansdown Entertainment Corporation v. New York City Department of Consumer Affairs*, the Court of Appeals affirmed that the regulatory system of the ABC Law was comprehensive and detailed. 74 N.Y.2d 761, 762–63 (1989). The court cited to *De Jesus*, which explained that the ABC Law gave the State Liquor Authority the power to grant licenses under defined circumstances, provided for criminal sanctions against unauthorized purveyors of alcoholic beverages, specified when alcoholic beverages could be sold and consumed at retail venues, included a provision against disorderliness, and imposed direct controls at the local level by creating local alcoholic beverage control boards and granting certain powers to those boards. *See id*.; *De Jesus*, 54 N.Y.2d at 469.

Here, the CVA does not come close to enacting a comprehensive scheme. The details of the schemes relied upon in the cases Defendant cites do not exist in the instant matter. The state did not create a commissioner or board with investigatory or enforcement power. The state did not impose direct controls at the local level. The state did not set forth comprehensive procedures for administrative and judicial review. Simply put, there is no detailed and comprehensive scheme. *See Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992) (holding that the statutory scheme was not "so broad in scope or so detailed as to require a conclusion that all local law in the area of rental vehicle company practices is preempted" when "statutes merely proscribe discriminatory practices against renters or the imposition of additional rental fees").

Defendant claims that the CVA is comprehensive because the state did more than revive statute of limitations for child sex abuse cases. It has also extended the statute of limitations for certain criminal cases involving sex offenses against minors (N.Y. Crim. Proc. L. § 30.10(3)(f));

10

extended the time for which civil actions related to sexual offenses against minors could be brought (N.Y. C.P.L.R. § 208(b)); and instructed the judiciary to promulgate rules for the timely adjudication of revived actions brought pursuant to N.Y. C.P.L.R. § 214-g (N.Y. Judiciary L. § 219-d). Mot. at 18. Extending the time for certain criminal and civil cases related to sexual offenses does not meet the bar of a comprehensive and detailed regulatory scheme. It is not "so broad and detailed in scope as to require a determination that [the CVA] has precluded all local regulation in the area . . . ." *Vatore*, 83 N.Y.2d at 650.

Accordingly, the VGMVPL Revival Statute is not preempted by the CVA under field preemption.

### 2.  Conflict Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to conflict preemption. "Under the doctrine of conflict preemption, a local law is preempted by a state law when a right or benefit is expressly given by State law which has then been curtailed or taken away by the local law." *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 933 N.Y.S.2d 388, 395 (1st Dep't 2011), *aff'd sub nom. Sunrise Check Cashing v. Town of Hempstead*, 20 N.Y.3d 481 (2013) (cleaned up). "For a local law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit the conduct the local law prohibits or provide 'some other indication that deviation from state law is prohibited.'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617–18 (2018)). Conflict preemption exists where "there is a head-on collision between" the local law and the state law. *Lansdown*, 74 N.Y.2d at 764.  However, the Court of Appeals has made clear not to read conflict preemption principles too broadly, because doing so "carries with it the risk of rendering the power of local governments illusory." *Ctr. for Indep. of Disabled v. Metro. Transportation Auth.*, 125 N.Y.S.3d

697, 704 (1st Dep't 2020) (citing *Garcia*, 31 N.Y.3d at 617). And the mere "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict." *Garcia*, 31 N.Y.3d at 617 (cleaned up).

Here, the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state. The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA. *Cf. Lansdown*, 74 N.Y.2d at 764–65 (holding that city ordinance conflicted with state law when state law allowed patrons to remain on premises consuming alcohol until 4:30 a.m. but city ordinance prohibited such).

There is also no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action. *See Vatore*, 83 N.Y.2d at 650 (finding no conflict preemption when "the local law would only further the State's policy interests"). The CVA sought to remedy the injustices to survivors of child sexual abuse by extending New York's statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse. Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7. The legislative history for the extension of the revival window states that "[e]xtending the length of the revival window would provide more time to notify New Yorkers about the new law and allow more survivors to seek the justice that was denied them by New York's formerly prohibitive civil statute of limitations." *Id.* Similarly, the VGMVPL Revival Statute "would give survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations."[3] These statutes serve the same purpose.

---

[3] New York City Council, *Creating a Two Year Look-Back Window to the Gender-Motivated Violence Act, and Extending Its Statute of Limitations*, https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

Furthermore, as *Engelman* recognized, the VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents from gender-related violence. *Engelman*, 144 N.Y.S.3d at 23. Preventing the City from enacting its own deadline to file a claim under its own law to protect its residents, risks rendering that power illusory.

Defendant relies on several cases in support of conflict preemption; none change the Court's conclusion. First, Defendant argues that *Turnpike Woods v. Town of Stony Point*, 70 N.Y.2d 735 (1987), supports his proposition that a local law is preempted by a state law when the local law attempts to extend or alter a limitation that the state has fixed. *See* Mot. at 14–15. However, that case dealt with supersession, not preemption, and therefore is not on point.

Second, Defendant cites to an out-of-state case that does not analyze New York law so is not applicable here. *See id*. at 15 (citing *Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 162 (Cal. Ct. App. 2019)).

And lastly, Defendant cites *Bellino v. Tallarico*, No. 24-CV-712. The Court acknowledges that a different result was reached in that case. There, the court issued an order dismissing a case brought under the VGMVPL. In part, the court, adopting the position set forth in the defendant's brief, found that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act [("ASA")], substantially for the reasons set forth by the defendant." Memorandum and Order, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 21, 2024). The defendant in *Bellino* argued that the CVA and ASA "clearly occupy the field regarding the revival of claims derived from state penal sexual assault law," relying on *Engelman* and *Doe v. Gooding*, No. 20-CV-6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022), for support. Brief of Defendant at 14–15, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 2, 2024). For the reasons stated above, this Court finds otherwise.

## II.    The Motion to Stay is Denied

Because the Court has decided on Defendant's motion to dismiss, Defendant's motion to stay is denied as moot.

## III.    The Motion to Seal is Granted in Part and Denied in Part

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *See Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id.* at 119. Second, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Id.* Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id.* at 120.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Id.* Under the First Amendment "experience and logic" test,

the Court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Id*. (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### A. Competing Considerations Outweigh the Presumption of Access for Some of the Materials in Question

Defendant seeks to file his Memorandum of Law in Support of his Motion for a Stay of Discovery (ECF Nos. 75, 77) as well as the accompanying Estrich Declaration and exhibits thereto (ECF Nos. 76, 78) with redactions. ECF No. 73 at 1. Plaintiff seeks to file her opposition to the motion to stay (ECF Nos. 80, 81) under seal, or alternatively, with redactions. ECF No. 79 at 2. Defendant argues that Plaintiff proposed additional redactions that Defendant does not believe are necessary and that the only redactions that should be applied are those that protect Plaintiff's anonymity. ECF No. 73 at 3. Plaintiff argues that not only would information contained in these documents lead to Plaintiff's identity being revealed, but also that Defendant seeks to make the information public in order to embarrass, disparage, and intimidate Plaintiff. ECF No. 79 at 2.

The supporting materials in connection with a motion to stay are judicial documents. *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015). Thus, there is a presumption of public access that attaches to the documents. *Id*. The documents may only be filed under seal or with redactions if the parties are able to overcome the presumption in favor of public access. *Id*.; *see also Lugosch*, 435 F.3d at 119–20.

15

Thus, the Court balances the "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. Established "competing considerations" include "the privacy interests of those resisting disclosure." *Id.* Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. Parties "opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id.*

The Court agrees with the parties that "information tending to reveal [Plaintiff's] identity" should be redacted, as the privacy interest of Plaintiff outweighs the presumption of public interest. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 3759161, at *1 (S.D.N.Y. Mar. 15, 2019). This includes information such as the contents of Plaintiff's tweets, which could be reverse-engineered to determine Plaintiff's identity. Although Defendant argues that the Court should not allow redactions of "information about the country of origin from which [Plaintiff] falsely claims that various members of her family emigrated," the Court finds that it is unclear at this juncture what information regarding Plaintiff's family and country of origin is true, and therefore allows this information to be redacted. *See infra* Section IV; ECF No. 83 at 2.

Accordingly, the following information related to Plaintiff's identity, including her name, her tweets, information about her family, information about her country of origin, and other information tending to reveal her identity may be properly redacted. The Court also directs that

16

the below redactions should be made in conformity with the redactions in the Sanctions

Memorandum and ECF No. 55 ("Melendez Decl."), which the Court previously ruled upon, and

which the parties, for the most part, agreed upon. *See* ECF Nos. 45, 47.

- Plaintiff's name. ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24).

- Plaintiff's Twitter handle, the content and/or description of her tweets and the dates of her tweets. ECF No. 77 at 1 (ECF No. 75 at 1), language from tweets in the second bullet point; ECF No. 77 at 6 (ECF No. 75 at 6), language from tweets in the last paragraph; ECF No. 77 at 8 (ECF No. 75 at 8), last sentence of second full paragraph; ECF No. 78 ¶¶ 7, 16–20, 26–29 (ECF No. 76 ¶¶ 7, 16–20, 26–29), dates related to the tweets and the content and/or description of the tweets; ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24), Twitter handles; ECF No. 78 ¶ 25 (ECF No. 76 ¶ 25), date; ECF No. 78 ¶ 35 (ECF No. 76 ¶ 35), description of Plaintiff's tweets; ECF Nos. 78-1–16 (ECF Nos. 76-1–16).

- Information about Plaintiff's family. ECF No. 77 at 7 (ECF No. 75 at 7), after "Plaintiff's" to "stated" in the last line; ECF No. 78 ¶ 14 (ECF No. 76 ¶ 14), after "Plaintiff's" to "stated."

- Information regarding Plaintiff's country of origin. ECF No. 77 at 7 (ECF No. 75 at 7), first full paragraph; ECF No. 78 Section III Heading (ECF No. 76 Section III Heading), the proposed redaction; ECF No. 78 ¶ 15 (ECF No. 76 ¶ 15), bullet points; ECF No. 78 ¶ 16 (ECF No. 76 ¶ 16), after the redacted date to "Ms."; ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), remainder of sentence following "by her own admission"; ECF No. 78 ¶ 21 (ECF No. 76 ¶ 21); ECF No. 78 ¶ 22 (ECF No. 76 ¶ 22); ECF No. 80 at 6–7 (ECF No. 81 at 6–7), references to family members and bullet points in full.

- Other information tending to reveal Plaintiff's identity. ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), after "was" to "that" in the second line; ECF No. 78 ¶ 20 (ECF No. 76 ¶ 20), after "received" to "messages"; ECF No. 80 at 7 (ECF No. 81 at 7), quoted language in the last line of the first paragraph.

Requests to redact information regarding Plaintiff's medical records, treatment, and

diagnosis are also approved. *See Valentini v. Grp. Health Inc.*, No. 20-CV-9526 (JPC), 2020 WL

7646892, at *2 (S.D.N.Y. Dec. 23, 2020) (noting individuals generally "maintain[] significant

privacy rights to [their] medical information," and courts "regularly seal" such information); *see*

*also* S.D.N.Y. ECF Rule 21.4 (stating that litigants should consider redacting documents that

contain medical records, treatment, and diagnosis). Accordingly, the following information may
be properly redacted:

- ECF No. 77 at 7 (ECF No. 75 at 7), second sentence in second full paragraph;
  ECF No. 78 ¶ 11 (ECF No. 76 ¶ 11), bullet points; ECF No. 80 at 2 (ECF No. 81
  at 2), the proposed redaction; ECF No. 80 at 5–6 (ECF No. 81 at 5–6), bullet
  points; ECF No. 80 at 6 (ECF No. 81 at 6), the beginning of the third line in the
  first full paragraph to "has."

Plaintiff's remaining requests for redaction are denied. The Court will not allow
redactions of information that is already public, such as descriptions of information in public
docket entries or caselaw parentheticals. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215
(JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying motion to seal information
that is already a matter of public record). "Because the common law framework is dispositive" of
the motions to seal, "the Court need not undertake the First Amendment analysis." *Id.*

## IV.    The Motion for Sanctions is Denied

Defendant argues that everything the Complaint says about him is "utterly and
demonstrably false" and that Plaintiff's lawyers "failed to conduct a reasonable inquiry." ECF
No. 54 at 2. Federal Rule of Civil Procedure 11 requires an attorney filing a pleading to certify
that "to the best of the person's knowledge, information and belief, formed after an inquiry
reasonable under the circumstances . . . the factual contentions have evidentiary support or, if
specifically so identified, will likely have evidentiary support after a reasonable opportunity for
further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 creates an "incentive to stop,
think and investigate more carefully before serving and filing papers." *Cooter & Gell v.
Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (internal quotation marks omitted). "Rule 11
'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a
reasonable inquiry into the viability of a pleading before it is signed.'" *AJ Energy LLC v. Woori*

*Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

The Court finds that because there has not yet been any discovery in this action, there is no basis from which to conclude that the facts alleged in the Complaint are false or that Plaintiff did not undertake a reasonable inquiry as a matter of law. *See Gartenbaum v. Beth Israel Med. Ctr.*, 26 F. Supp. 2d 645, 649 (S.D.N.Y. 1998) (declining to impose Rule 11 sanctions when there had been no discovery since the filing of the complaint); *see also* Decision, *Pierson v. Black*, No. 952002/2022 (N.Y. Oct. 24, 2023). Indeed, many of the cases that Defendant cites in support of issuing Rule 11 sanctions based on insufficient inquiries made surrounding the filing of a pleading were decided during a later phase of litigation. *See, e.g.*, *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (deciding Rule 11 motion along with summary judgment). Accordingly, Defendant's motion for sanctions is denied without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED, Defendant's motion to stay is DENIED as moot, the parties' motions to seal are GRANTED in part and DENIED in part, and Defendant's motion for sanctions is DENIED. The parties are directed to publicly file versions of their materials related to the motion to stay (ECF Nos. 75, 76, and 81) that conform to Section III of this order no later than **October 4, 2024**.

It is hereby ORDERED that the initial pretrial conference in this matter is set for **October 29, 2024** at **12:30 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. A proposed Civil Case Management Plan and Scheduling Order shall be filed by **October 22, 2024**.

A-73

The Clerk of Court is directed to terminate ECF Nos. 22, 40, 49, 73, and 74.

Dated: September 27, 2024
      New York, New York

                     SO ORDERED.

                     *Jessica Clarke*

                     JESSICA G. L. CLARKE
                     United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JANE DOE,                                          :
                                                   :
                          Plaintiff,               :        Civil Action No. 23-cv-06418
                                                   :
            v.                                      :
                                                   :        **FIRST AMENDED COMPLAINT**
LEON BLACK,                                         :
                                                   :
                          Defendant.               :        **Jury Trial Demanded**
                                                   :
-------------------------------------------------------------- X

---

**He threw me on the floor and blood all over
Jeffreys carpet and I am the issue?
Who the fuck bites someone? Sick!
No one is that important and Leon can go fuck himself.
I hate New York!**

**Plaintiff Jane Doe's Journal Entry**

---

Plaintiff Jane Doe, by and through counsel Wigdor LLP, alleges against Defendant Leon

Black ("Black" or "Defendant"), as follows:

1.       Plaintiff Jane Doe, from ages 16 to 19, had almost no ability to speak out about the

horrors she experienced as the victim of sex trafficking, particularly because her ███ and

███ at the time were directly involved in and responsible for sending her off to men,

including Jeffrey Epstein, for the purpose of sexual exploitation.  She was, however, able to start

a journal to document what she was forced to endure.

2.       In these journals, she wrote two specific entries that documented a particularly

brutal instance of abuse by Defendant Leon Black.  In the first she wrote:

> Walk down Madison Avenue to 71st St.
>
> My ████ has lost her fucking mind. Even though Ghislane said it was best to take me home because **Mr. Black** is so important for some reason over my health.
>
> There is going to be hell to pay. I ruined their trip and I am dramatic when **that fat fuck bit me!**
>
> **He threw me on the floor and blood all over Jeffreys carpet and I am the issue?**
>
> **Who the fuck bites someone? Sick!**
>
> **No one is that important and Leon can go fuck himself.**
>
> I hate New York!

3.      In her next journal entry, Plaintiff wrote "Leon Black" next to a poem she cut and pasted into the notebook, having underlined words in the poem such as "Fatso" and "millionaire."

4.      The horrific incident these entries reference was a particular day when at Jeffrey Epstein's Manhattan townhouse located at 9 East 71st, Epstein trafficked Jane Doe to his close friend Leon Black.

5.      Jane Doe is autistic, and she was 16 when Jeffrey Epstein introduced her to Black and said she was to give his "special friend Leon Black" the same kind of massage that she had to give to Jeffrey Epstein when he ordered her to. Even as Black grabbed her hand so hard that she thought he broke bones, Jeffrey Epstein knew Jane Doe would never disobey.  Developmentally she is about 12, and when she was threatened to do as told because "bad girls" get in "trouble," she did as she was told.

6.      Black took her to the third floor of the townhouse, to a massage room where she had been before with Jeffrey Epstein.  There, and using adult sex toys in her anus and vagina, he

2

raped her.

7.      He also bit her vagina – a heinous act.

8.      His physical force was such that when he left her on the floor sobbing, she was bleeding.  As set forth below, Jeffrey Epstein refused to take her to a doctor, and instead said that Ghislaine Maxwell would take care of it.

9.      Sadly, Ms. Doe's experience is one more in a long line of despicable and heinous experiences inflicted on a minor trapped in a web of sexual exploitation – a web that extended to a group of powerful and influential politicians and business moguls, including Black and Epstein.

10.     Ms. Doe filed the instant lawsuit on July 25, 2023, seeking justice and accountability for Black's assault of her.

## JURISDICTION, VENUE & LIMITATIONS PERIOD

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the amount in controversy in this matter exceeds $75,000.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful sexual assaults alleged herein, occurred in this district, and Defendant resides in this district.

13.     Pursuant to the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPL), as amended, N.Y.C. Admin. Code § 10-1105(a), this case is timely.

## PARTIES

14.     Plaintiff Jane Doe is over the age of 18, and is a citizen of the U.S.

15.     Defendant Leon Black is over the age of 18, is a citizen of the U.S. and resides in

New York, New York.

## FACTUAL ALLEGATIONS

### I.     PLAINTIFF IS AUTISTIC

16.     Ms. Doe is autistic,[1] and was born with Mosaic Down Syndrome, a rare condition where only some of the body's cells contain an extra chromosome (in contrast to an individual with typical Down Syndrome, who is born with an extra chromosome in every cell in her body). As a result, while Plaintiff does not appear physically or outwardly different from a neurotypical individual, she suffers from many of the same neurological disabilities and health issues that are tragically common among individuals with Down Syndrome.

17.     Although Ms. Doe has an above average intelligence quotient (IQ), her developmental age is around 12 years old.

18.     Because Ms. Doe is autistic, it is difficult for her to understand social cues based on the behavior of people she encounters.  To be clear, being able to "read the room," is an impossible task.  Instead, Plaintiff experiences the world in a child-like way and sees situations in terms of whether something is "right" or "wrong," or "good" versus "bad."

19.     As with most autistic people, she is extremely trusting.  Sadly, this is one factor

---

[1]     According to Dr. Daniel Geschwind, professor of human genetics, neurology and psychiatry at UCLA, "autism refers to a broad range of conditions characterized by challenges with social skills and social and communication and repetitive behaviors, resistance to changes in routine, or restricted interests. … it's not one thing, and no two autistic children or adults are exactly alike even though they may share basic  features."   https://www.cnn.com/2023/04/12/health/what-is-autism-explainer-wellness/index.html; the National Institute of Mental Health describes autism as: "a neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave.  Although autism can be diagnosed at any age, it is described as a "developmental disorder" because symptoms generally appear in the first 2 years of life."   https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd; the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders (DSM-5)*, states that people with autism often have: difficulty with communication and interaction with other people; restricted interests and repetitive behaviors; and symptoms that affect their ability to function in school, work, and other areas of life.

which places girls with autism at a substantially increased risk of being sexually assaulted.[2]

20.    Plaintiff was a perfect target for Jeffery Epstein and his accomplice Ghislaine Maxwell.

21.    Epstein and Maxwell seized upon Plaintiff's developmental disabilities, coupled with her outwardly physical appearance, specifically fair skin, blue eyes and blond hair, for their own deviant sexual predation.

22.    Disgustingly, Epstein and Maxwell trafficked Ms. Doe to other men in their circle, including Defendant Black.

## II.    PLAINTIFF IS TRAFFICKED TO MULTIPLE POWERFUL PEOPLE, INCLUDING JEFFREY EPSTEIN AND GHISLAINE MAXWELL

23.    During the summer of 2001, Ms. Doe signed up for a county recreational cheerleading program geared towards girls ages 8-12. The program was run by an adult volunteer named "Elizabeth," about age 40, who upon information and belief, had no background in cheerleading instruction.

24.    Elizabeth told Plaintiff that even though she was 15, she could participate in the recreational cheerleading if she could fit into the uniform, which she did.

25.    Because of her developmental disabilities, the fact that she was in a cheerleading group with girls as young as eight years old was not a problem for Ms. Doe. She was happy to be participating.

26.    Elizabeth soon showed Plaintiff extra attention. Not long after she began attending the cheerleading program, Plaintiff was told by Elizabeth that she was going to live at Elizabeth's

---

[2]    Studies show that girls with autism from ages 9 to 18 years are three times as likely to experience sexual assault when compared to their neurotypical counterparts. https://www.psychologytoday.com/us/blog/talking-about-trauma/202209/girls-autism-face-three-times-the-risk-sexual-assault

house several days a week.  Of course, Plaintiff's parents were involved in the living arrangements.

27.    As the adults in her life undoubtedly anticipated, Plaintiff did as she was told and never questioned Elizabeth or her parents.

28.    Plaintiff travelled back and forth between Elizabeth's home and her parents' home throughout the school year.  Little did Plaintiff know what horrors were ahead for her.

29.    From the beginning of her time living with Elizabeth, Plaintiff was subjected to horrific, unimaginable physical abuse as part of the "training" Elizabeth believed necessary to prepare her for what Elizabeth had planned.

30.    By way of example only, Elizabeth violently physically abused Plaintiff, by punching and kicking her and even dragging Plaintiff up multiple flights of stairs in her townhouse by Plaintiff's ponytail.  Elizabeth psychologically abused Plaintiff by depriving her food and water and punishing Plaintiff anytime Elizabeth was dissatisfied with Plaintiff's behavior (which was often), including by locking her a room for hours, making her dress in small children's clothing and making her work out for hours at a gym until Plaintiff was too exhausted to stand, often after denying her any food.

31.    Although Ms. Doe had moved in with Elizabeth, she did not have her own bed there, much less a bedroom.  Instead, Elizabeth repeatedly told Plaintiff that she did not "deserve" her own bedroom in her house and that Plaintiff would not receive one until she "worked for it." Sadly, Plaintiff did not understand what Elizabeth meant, but she never questioned anything Elizabeth did or said, especially because physical violence was something she wanted to avoid.

32.    Elizabeth had a number of sexual partners at the time, including a man who lived in the same house, as well as other male "friends," who would visit Elizabeth.  One of these men, "Charlie," was a white male in his late 40s.  Elizabeth began sexually grooming Plaintiff as soon

6

as she started staying overnight with Elizabeth.

33.     The sexual grooming included Elizabeth telling Plaintiff that she had to stay close to Elizabeth's bedroom while Elizabeth then had sex with men with the door to her room open so that Plaintiff could hear what was happening, and see inside if she tried to. Ms. Doe had never engaged in sexual conduct herself. Again, Plaintiff did everything that Elizabeth and Charlie told her to do.

34.     Horribly, Elizabeth threatened Ms. Doe with the fact that she had a gun permit and kept a gun in the house. She told Ms. Doe that if she ever told anyone about the things she and Charlie made her do, that Plaintiff would go "missing," and since no one loved or cared for her, she would not be missed. Plaintiff never doubted what Elizabeth told her because her parents told her to live with Elizabeth.

35.     Plaintiff was forced to submit to Elizabeth's degrading and violative conduct on a daily basis. She feared being killed and believed everything that Elizabeth said.

36.     Saying no to Elizabeth was not an option for Plaintiff. To this day, Plaintiff lives in fear of Elizabeth.

### III.     PLAINTIFF IS TRAFFICKED TO EPSTEIN AND MAXWELL

37.     In 2001, when Ms. Doe was 15 years old, her ▮▮▮▮ took her to Clearwater, Florida, where she was introduced to a woman with dark hair and a British accent. During the meeting, Ms. Doe was asked to undress in front of the woman. It was only later that Plaintiff learned that this woman was Ghislaine Maxwell ("Maxwell"), the convicted sex offender currently in prison serving a 20-year sentence.

38.     Sometime in late summer of 2001, Elizabeth told Plaintiff that she was taking her to what she referred to as an adult "party" in McLean, Virginia, a suburb outside of Washington

7

D.C.

39.    Elizabeth drove Ms. Doe to a large home, with a circular drive, fountain and pillars. Plaintiff was told to go inside and she did.

40.    The only people inside were adults – mostly men – who seemed "old" to Plaintiff.

41.    At this party, she was approached by Maxwell, who sat with Plaintiff and feigned interest in her safety and well-being.

42.    At the time, Plaintiff did not know the woman's name.

43.    Maxwell led plaintiff over to a large white couch and took pains to give Plaintiff the impression that she cared about her and was genuinely interested in what she had to say. Maxwell seemed to ignore Plaintiff's natural difficulties in conversing in social settings – her inability to hold eye contact, her difficulties in picking up on social cues, how much she struggled to keep up with conversations – and instead focused on making her feel comfortable. As a result, Plaintiff mistakenly believed that Maxwell truly cared about her.

44.    Maxwell spent the conversation lavishing Plaintiff with compliments, referring to her as "a beautiful darling girl" and said that she was "a beautiful girl with the most beautiful bright blue eyes, blonde hair and perfect hair" that made her look like a living "doll."

45.    Seemingly already aware of Plaintiff's developmental disabilities, Maxwell treated her like a child, holding her hand, bringing her to the bathroom and making her stand right outside the door so Maxwell could keep talking to her the way mothers do with young children.

46.    What Plaintiff did not realize at the time was that Maxwell was merely taking a page out of what had by then become a well-rehearsed script, making efforts to bond with a vulnerable young girl so that she would lower her guard by the time Maxwell introduced them to Epstein. Although she did not know who the man was, Plaintiff noticed the constant looks passing

between Maxwell and a man on the other side of the room throughout the evening.

47.     At some point Maxwell brought Plaintiff out to the driveway where Elizabeth was waiting.  She told Elizabeth that Plaintiff was a "darling," a "good girl," and a "beautiful girl."

48.     In a contemporaneous journal Plaintiff created in 2001, she wrote:

- "Same exact British lady from Clearwater was there!  She talked to me all night."

- "She wants me to come to her house in Florida so I can learn new things!"

- She also wrote that perhaps the "British lady from Clearwater" could "get her away from" [Elizabeth].

49.     The very next week, Elizabeth put Plaintiff on a private plane from Virginia to Palm Beach.  There she was picked up by a man who drove her in a large SUV to Epstein's home.

50.     Maxwell and Epstein began exposing Plaintiff to their sexual deviance less than an hour after she first arrived.  They placed her in a swivel chair in a hallway outside of their bedroom and told her to "not move."  She did not move from the chair, but instead turned around and around in the swivel chair while she listened to them having sex in the next room with the door open. When they were done, they came out into the hallway, and acted happy and told Plaintiff she was a "good girl" for staying seated.  They then acted as if nothing had happened and took her downstairs.

51.     Quickly, Maxwell showed Plaintiff how to "make Jeffrey happy."  Maxwell held Plaintiff's hand the first time she showed her the way to massage Jeffrey and make him ejaculate through oral sex – both Maxwell and Epstein gave Plaintiff "happy claps" for her brilliant success, the way parents do with five-year-olds.

52.     They made Plaintiff engage in sexual acts that night.  Epstein wrapped his arms around both Plaintiff and Maxwell, and Maxwell was affectionate and made Plaintiff believe that

she cared about her.

53.    Sarah Kellen (Kellen), not Maxwell, is the one who taught Plaintiff how to make "Jeffrey happy" by having sexual intercourse with him.

54.    Epstein made Plaintiff sit on his  lap with her feet draped over Maxwell's legs as Epstein also complimented her about how beautiful she was and how much he was drawn to her mix of blonde hair and blue eyes and porcelain skin.

55.    Epstein often told Plaintiff that she was his "very special girl," and commented on her "special innocence."

56.    Elizabeth trafficked Plaintiff to other men in addition to Epstein. Numerous times, Elizabeth sent Plaintiff to have sexual interactions with other powerful and wealthy men in areas not far from where Elizabeth and Plaintiff's parents lived.  This happened during the school week, causing Plaintiff  to miss partial and full  days of school.  Elizabeth would refer to this as "shipping you out."

57.    Elizabeth was not the only adult who trafficked Plaintiff during this time.  Horribly, Plaintiff's own ███████████████  and close friends of ███████ also shipped her out to Epstein and Maxwell, and to other men.  Plaintiff understood that she was expected to have sexual intercourse with whomever she was sent to.

58.    Epstein required Plaintiff to give him massages, and he would strip completely naked prior to receiving the massage from Plaintiff. Plaintiff, who was 15 or had just turned 16 shortly before first meeting Maxwell, sometimes also was required to remove all of her clothing before giving Epstein this massage.

## IV.    THE "HAND OFF"

59.    Once Epstein was satisfied that Plaintiff knew how to give him a massage involving sexual intercourse, which happened quickly, he began what Plaintiff knows as the "hand off."

60.    The "hand off" meant that Plaintiff had to go with any other man (usually a white male that seemed very "old" to Plaintiff) to give him a massage and have sexual intercourse. Plaintiff had to do this in Palm Beach and on Epstein's island in the USVI.

61.    It was important that Epstein or any other men did not complain about Plaintiff to her handlers.  Plaintiff feared nothing more than Elizabeth saying that she did not get a "good report" that Plaintiff had been a "good girl" by Epstein or whichever man she had been sent to.

62.    If Plaintiff had not been a "good girl," she would be subjected to intensified physical and psychological abuse by Elizabeth.

63.    On a few occasions when Plaintiff had been sent to Epstein and returned to Elizabeth's, an envelope was put into her bag and she was told not to touch it.  Plaintiff was warned that the amount of money in the envelope was known, so if Plaintiff removed any, she would be caught.

64.    Plaintiff was not allowed to unpack her own bag when she returned to Elizabeth's. This was a task reserved for Elizabeth.

65.    One time when an envelope had been placed in Plaintiff's bag after having to be with Epstein but it was not completely sealed, even though Plaintiff had not touched the envelope, much less taken cash from it, Elizabeth subjected Plaintiff to a beating simply because Elizabeth decided she was a "fucking idiot."

66.    Regularly, Plaintiff was threatened by her handlers that she must remain silent. Elizabeth would reiterate her threats to kill Plaintiff if she ever discussed what had happened to her.

11

67.     Plaintiff believed Elizabeth's claim that no one in the world cared enough for her to notice if she disappeared.  She therefore lived in constant fear of what would happen if she ever spoke up about being trafficked and kept silent for years.

68.     In 2002, Plaintiff wrote in her journal about the multiple powerful men she was trafficked to, including Epstein and Black, and mentioned the various locations where she was trafficked:

> It doesn't matter how far away you are.
>
> No matter how good you think they are.
>
> Even the [redacted]! They will get you.
>
> He should have been thinking of [redacted]! Gross!
>
> In a plane on a yacht in NY, in DC, at the vineyard.
>
> On the island. In palm beach.
>
> It doesn't matter.
>
> Disgusting pigs like [redacted] and Mr. [redacted] and even Mr. [redacted] will hurt you especially if Ghislaine is busy or not with you!

## V.     PLAINTIFF IS TRAFFICKED BY EPSTEIN TO HIS NYC TOWNHOUSE FOR THE PURPOSE OF BEING HANDED OFF TO LEON BLACK

69.     Not long after Plaintiff had been trained to give Epstein massages involving sex, with the assistance of Elizabeth, Charlie, and other handlers, Epstein and Maxwell trafficked Plaintiff across several state lines to Epstein's townhouse located at 9 East 71st Street.

70.    Upon information and belief, in late fall 2001 or early winter 2002, she was brought there and stayed overnight.

71.    Plaintiff  never left any of Epstein's  residences alone, and certainly not in NYC, where she had never been before.  Yet, one time Epstein and Maxwell took Plaintiff to what she believed was a theater for ballet but not to see a performance.  Instead, Epstein and Maxwell met with some individuals there, in what seemed like offices behind the stage, and Plaintiff was introduced to a dancer.

72.    During this NYC stay, Maxwell brought Plaintiff to a different, smaller townhouse, not far away from Epstein's.  Maxwell told Plaintiff that she needed to get a few things.

73.    Upon information and belief, this was Maxwell's townhouse located at 116 East 65th Street.

74.    In or around late spring of 2002 or early summer, Elizabeth told Plaintiff that she was being "shipped off" to New York City. She said that Charlie would be driving her to New York City to meet Epstein's "special friend," a man named Leon Black.  It was emphasized that Leon Black was a "very important and special person" to "Jeffrey," and Plaintiff was told that she "better" receive a "good report" that she needed to be a "good girl" for Jeffrey and his important, special friend.

75.    Charlie drove Plaintiff to New York City.   She went to Epstein's where she was summoned to Epstein who was standing with a huge older man – Black is 6' 4" and about 300 pounds.  The two men appeared to be having a conversation.

76.    Epstein introduced Plaintiff to Leon Black, using his full name, and told her that Black was "important" and "special" to Epstein.  Plaintiff was struck by Black's immense size. Plaintiff's initial impression of Black was that he looked like an "ogre," and she felt frightened.

77.    Plaintiff noticed Black's bulbous nose and that his face and neck had a number of skin tags and moles.

78.    Epstein told Plaintiff that because she was his "special girl," he had selected her specifically to give his "special friend," Black, a massage.

79.    Epstein told Plaintiff that she was to give Black the same kind of "massage treatment" that she gives Epstein – meaning that it would involve sexual intercourse and she was expected to strip naked.

80.    Black took Plaintiff by her hand, squeezing it so hard that she thought he might have broken bones, and led her upstairs to a massage room on the third floor of the townhouse. She had been in the room with Epstein on her prior stay at the townhouse.

81.    In the room there were a variety of oils and adult sex toys next to the massage table.

82.    Plaintiff assumed that Black would proceed to disrobe before laying down on the massage table, the way Epstein usually did.

83.    Instead, Black picked Plaintiff up and threw her over his shoulder and then threw her violently down on the massage table on her back, so hard he knocked the wind out of Plaintiff. She thought the massage table might have broken.  She tried to scream but Black placed his hand over her mouth and leaned over her while ripping off her shirt and under her skirt pulling her underwear off.

84.    Plaintiff was crying and terrified.  Black asked her repeatedly what made her "Jeffrey's special girl" and throughout the assault called her demeaning, shameful, disgusting names.  Plaintiff was in a complete state of shock because this was nothing like the massages she had been taught to give Epstein.

85.    She tried to move off the table but Black had her pinned down.  Black laughed at

14

Plaintiff's futile attempts to escape his grasp, and he asked her if she considered herself "feisty" and mocked her by claiming that that he wanted Plaintiff to show him why Epstein referred to her as his "special girl."

86.     Plaintiff could not see, but rather heard Black rummaging among the adult toys nearby and he roughly forced her legs apart causing Plaintiff to feel as if her pelvic bone had been broken.  Using what upon information and belief was a large dildo, Black then penetrated Plaintiff simultaneously in both her vagina and rectum, using such force that Plaintiff felt tearing in her internal tissue.  When Plaintiff screamed out in agony, Black again covered her mouth with one of his hands.

87.     Plaintiff was crying still when Black placed his mouth on her vaginal area.  At this point, Plaintiff realized that struggling would be useless given how much stronger and physically more massive Black was and instead pleaded with Black to stop as she sobbed.

88.     She felt a sharp pain in her vagina, like a hard pinch and she let out a loud scream.  At the scream, Black lifted his head out from under her skirt and she saw blood on his mouth and she panicked and kicked him with her right leg.  Her "kick" landed on his chest, and while it likely did not hurt him, he was enraged that she struck out at him and he began viciously cursing her.

89.     He then called her a "fucking bitch," "whore" and a "slut," and picked Plaintiff up off the massage table and threw her to the floor.

90.     Once on the floor, Plaintiff attempted to scramble towards the door but Black instead grabbed her legs, pulled Plaintiff towards him and she saw blood on the floor which likely was from her rectum.  In his rage, Black called her a "little cunt."

91.     Black got on top of her.  Plaintiff went into shock and began to disassociate, trying to convince herself that she was somewhere else but the unimaginable pain she experienced

prevented her from even this temporary respite.  He continued to violently thrust himself on her with such force, that she felt he was crushing her pelvic and hip bones.

92.    Despite violently thrusting over her with his extreme weight, Black kept telling Plaintiff to "stay still."  She felt like she could not breathe.

93.    When Black appeared to be finished, he grabbed Plaintiff up by her wrists and slammed her into the wall and watched as she slid down to a sitting position – still crying in fear and pain.  After what seemed like a long time to Plaintiff, Epstein came in and found her still against the wall and crying.

94.    Plaintiff begged Epstein to take her to a doctor because she was in physical agony and was continuing to bleed but he refused, instead he handed her towels to clean herself up.

95.    He then took her down to the second floor of his townhouse and told her to wait in a chair.  Epstein said that Maxwell would take care of her.

96.    Epstein grew increasingly frustrated as Plaintiff continued to cry.  He demanded that she pull herself together as he was expecting a visitor.

97.    Shortly thereafter, a thin, middle-aged blonde woman arrived at the townhouse and had folders in her hands which she gave to Epstein.  Upon information and belief, this woman was Leslie Groff, Epstein's long-time New York based assistant.

98.    As set forth above, Black's assault of her is detailed by Plaintiff in her contemporaneously kept notebooks:

> Walk down Madison Avenue to 71st St.
>
> My ▆▆▆▆ has lost her fucking mind. Even though Ghislane said it was best to take me home because Mr. Black is so important for some reason over my health.
>
> There is going to be hell to pay. I ruined their trip and I am dramatic when that fat fuck bit me!

16

> He threw me on the floor and blood all over Jeffreys carpet and I am
> the issue?
>
> Who the fuck bites someone? Sick!
>
> No one is that important and Leon can go fuck himself.
>
> I hate New York !

99.    In a journal entry after the one above, Plaintiff wrote "Leon Black" next to a poem she cut and pasted into the notebook, having underlined words in the poem such as "Fatso" and "millionaire."

100.    Plaintiff was trafficked by Elizabeth and others to many other men, both before and after Black.  The violent and sadistic nature of Black's rape left an indelible mark on her, both physically and psychologically.  Plaintiff suffered internal abrasions in her rectum that continue to cause her pain.

101.    To this day, Plaintiff often is triggered each month at the beginning of her menstrual cycle as the sight of blood from her body causes Plaintiff to suffer from panic attacks, reliving the attack that she endured ay Black's hands.

## VI.    BLACK'S OTHER VICTIMS THROUGH EPSTEIN

102.    Upon information and belief, Plaintiff is not the only female who Epstein and Black sexually violated.

103.    For example, on March 13, 2023, in the matter of *Jane Doe 1, et al. v. Deutsche Bank Aktiengesellschaft et al.*, Index No. 22 Civ. 10018 (JSR) (Southern District of New York), the district court heard oral argument on the defendant's motion to dismiss.  As part of Jane Doe 1's claims, she had alleged that,

> There came a time when Epstein forced Jane Doe 1 to give massages
> to his powerful friends. During some of these massages, Jane Doe 1

17

was sexually abused by force and against her will by Epstein's friends, by whom she had been required to do massage.

104.    Deutsche Bank introduced a release agreement ("Release") between Jane Doe 1 and Epstein in support of its motion to dismiss. This Release included a carve out of Jane Doe 1's claims against Black, as well as another individual, James (Jes) Staley, a former banker who Black introduced to Epstein in or around 2000.

105.    At oral argument, the portions of the Release were read into the record, including, in relevant part that:

> While the parties do not believe there is any reasonable interpretation that this general release could be construed to **release James (Jes) Staley, Leon Black or their respective entity affiliations**. For clarity, this general release and settlement agreement specifically does not include **James (Jes) Staley, Leon Black or any company or entity which either is or was beneficially owned or controlled by James (Jes) Staley or Leon Black** as a releasee or released party under this general release and settlement agreement.

106.    Of course, if Black had not engaged in sexual misconduct or other tortious claims against Jane Doe 1, there would have been no reason to include him in the carve out along with Jes Staley.

107.    Additionally, beginning in August 2019, the U.S. Virgin Islands ("USVI") conducted extensive investigations into Epstein's sex trafficking activities, culminating in a lawsuit against Epstein's estate. That lawsuit was settled between the Office of the Attorney General for the USVI and Epstein's estate in December 2022 for over $100 million.

108.    As part of the USVI's investigation into Epstein, in August 2020, Black was served with subpoenas from the USVI.

18

109.    The subpoenas to Black sought extensive financial documents and tax information relating to Epstein and entities controlled by Epstein, including Southern Trust, the entity Epstein used to operate Little St. James.

110.    In September 2020, the NYT disclosed that Black had deposited $158 million into Southern Trust's account between 2013-2017.  Thereafter, Black came under intense scrutiny from Wall Street contingencies and other interested parties, and in October 2020, to help protect Black's reputation, Dechert LLP was retained to "investigate" Epstein's ties to Black and to Apollo.

111.    Following Dechert's private investigation, it wrote a report that it filed with the Securities and Exchange Commission ("SEC") (the "Dechert Report")[3].

112.    The Dechert Report revealed that Black claimed he paid Epstein $158 million to Epstein, who possessed neither a college degree, nor any advanced degrees related to tax advisement or estate planning, "for the overall value he believed Epstein was providing to him through Epstein's advice on trust and estate planning, tax issues, philanthropic issues, and the operation of [Black's] Family [wealth management] Office."

113.    According to the Dechert Report, Epstein offered his "most valuable piece of work" to Black in 2012, which was advice related to Black's Grantor Retained Annuity Trust ("GRAT"), that reportedly saved Black "as much as $1 billion or more" in tax liabilities.

114.    Black has never explained why Epstein performed his GRAT work rather than Paul Weiss, when the law firm had provided the legal work for Apollo and Black for decades and several Paul Weiss partners are considered our nation's leading tax and estate planning lawyers.

---

[3]    Available at: www.sec.gov/Archives/edgar/data/1411494/000119312521016405/d118102dex99.

115.    On July 21, 2023, the *New York Times* reported that Black agreed to pay the U.S. Virgin Islands Office of the Attorney General $62.5 million in order to avoid possible claims stemming from his relationship with Epstein.[4]

116.    Black entered into that settlement agreement with the USVI on January 20, 2023, following mediation.

117.    According to the *New York Times*, "Some victims of Mr. Epstein who had received settlements directly from his estate were granted permission by the estate's executors to pursue claims against a handful of men who had socialized with Mr. Epstein, according to a person with knowledge of the matter. Mr. Black was one of those men."

118.    Based on the above, it is clear that Ms. Doe is not the only victim of both Epstein and Black.

## CAUSE OF ACTION

### Victims of Gender-Motivated Violence Protection Law (VGMVPL)

119.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as though set forth fully herein.

120.    The above-described conduct of Defendant Black, including, but not limited to, Defendant Black's sexual assault and rape of Plaintiff constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPL), as amended, N.Y.C. Admin. Code § 10-1101, *et seq*.

121.    The above-described conduct of Defendant Black, including, but not limited to,

---

[4]      Goldstein, "Leon Black Agreed to Pay $62.5 Million to Settle Epstein-Related Claims," *NY Times*, July 21, 2023, https://www.nytimes.com/2023/07/21/business/leon-black-settlement-jeffrey-epstein-claims.html.

Defendant Black's sexual assault and rape of Plaintiff constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

122.    As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

123.    The above-described conduct of Defendant Black constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").

124.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendant

complained of herein violate the laws of the State of New York and the City of New York;

B.    An injunction and order permanently restraining Defendant and any and all persons acting in concert with him, from engaging in any such further unlawful conduct, including the conduct complained of herein;

C.    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D.    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her physical injuries and emotional distress;

E.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, reputational harm in an amount to be determined at trial, plus prejudgment interest;

F.    An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G.    Prejudgment interest on all amounts due;

H.    An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.    Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 7, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _Jeanne Christn_
       Jeanne M. Christensen
       Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff Jane Doe*

# 24-

# United States Court of Appeals

*for the*

## Second Circuit

LEON BLACK,

*Petitioner,*

– v. –

JANE DOE,

*Respondent.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(b)

E. Danya Perry
Peter A. Gwynne
PERRY LAW
445 Park Avenue, 7th Fl.
New York, NY 10028
(212) 393-4250

Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7000

Susan Estrich (*pro hac vice forthcoming*)
ESTRICH GOLDIN LLP
947 Berkeley Street
Santa Monica, CA 90403
(213) 399-2132

*Attorneys for Petitioner*

November 18, 2024

A-98

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

QUESTION PRESENTED FOR REVIEW ............................................................ 3

STATEMENT OF THE RELEVANT FACTS AND BACKGROUND .................. 3

    A.    The Relevant Statutes ................................................................. 3

          1.    New York City's VGMVPL ....................................... 3

          2.    New York State's CVA ............................................... 4

          3.    New York City's Revival Statute ............................... 5

    B.    Procedural History ..................................................................... 6

RELIEF SOUGHT ............................................................................................... 8

THE CERTIFIED QUESTION SATISFIES THE CRITERIA FOR
INTERLOCUTORY REVIEW UNDER § 1292(B) ............................................... 8

I.    THE DISTRICT COURT'S ORDER PRESENTS A CONTROLLING
    QUESTION OF LAW ................................................................................ 9

II.    THERE IS SUBSTANTIAL GROUND FOR DISAGREEMENT
    WITH THE DISTRICT COURT'S RULING ON THE QUESTION
    PRESENTED ........................................................................................... 10

III.    INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE
    THE ULTIMATE TERMINATION OF THE LITIGATION ...................... 16

IV.    INTERLOCUTORY REVIEW IS CONSISTENT WITH THE
    PURPOSE OF SECTION 1292(B) ........................................................... 17

CONCLUSION .................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amadou v. Doyle*,
   674 F. App'x 50 (2d Cir. 2017) ............................................................................17

*Arizona v. United States*,
   567 U.S. 387 (2012)............................................................................................14

*Bellino v. Tallarico*,
   2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) ...........................................7, 11, 13

*Cantero v. Bank of Am., N.A.*,
   49 F.4th 121 (2d Cir. 2022)...................................................................................9

*Capitol Records, LLC v. Vimeo*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................................................11

*Capitol Records, LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ..................................................................................11

*Casey v. Long Island R.R.*,
   406 F.3d 142 (2d Cir. 2005) ..................................................................................9

*Cohen v. Bd. of Appeals of Vill. of Saddle Rock*,
   100 N.Y.2d 395 (2003)........................................................................................12

*Connell v. Hayden*,
   83 A.D.2d 30 (2d Dep't 1981)..............................................................................19

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000).............................................................................................14

*Drake v. Lab'y Corp. of Am. Holdings*,
   458 F.3d 48 (2d Cir. 2006) ....................................................................................9

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978) ................................................................................16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fenton v. State*,
213 A.D.3d 737 (2d Dep't 2023)..........................................................................4

*Gerosa v. Savasta & Co.*,
329 F.3d 317 (2d Cir. 2003) ................................................................................9

*Isra Fruit, Ltd. v. Agrexco Agric. Export Co.*,
804 F.2d 24 (2d Cir. 1986) ................................................................................16

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*,
96 F.4th 539 (2d Cir.), *certified question accepted*, 41 N.Y.3d 969
(2024) ............................................................................................................10, 18

*Kane v. Mount Pleasant Cent. Sch. Dist.*,
80 F.4th 101 (2d Cir. 2023) ..............................................................................18

*Klinghoffer v. S.N.C Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ....................................................................8, 10, 17

*Koehler v. Bank of Bermuda*,
101 F.3d 863 (2d Cir. 1996) .......................................................................16, 19

*Lansdown Ent. Corp. v. New York City Dep't of Consumer Affairs*,
74 N.Y.2d 761 (1989)....................................................................................13, 14

*Marisol A. by Forbes v. Giuliani*,
104 F.3d 524 (2d Cir. 1996) ..............................................................................19

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
849 F.2d 761 (2d Cir. 1988) ..............................................................................18

*Mei Xing Yu v. Hasaki Rest., Inc.*,
874 F.3d 94 (2d Cir. 2017) ................................................................................10

*Montefiore Med. Ctr. v. Teamsters Loc. 272*,
642 F.3d 321 (2d Cir. 2011) ................................................................................9

*N.Y. State Assn's for Affordable Hous. v. Council of the City of N.Y.*,
141 A.D.3d 208 (1st Dep't 2016)........................................................................13

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*New York City Health & Hosps. Corp. v. Council of the City of N.Y. York*,
   303 A.D.2d 69 (1st Dep't 2003) .......................................................................... 15

*Oglesby v. Delaware & Hudson Ry. Co.*,
   180 F.3d 458 (2d Cir. 1999) (per curiam) ............................................................ 9

*Pac. Capital Bank, N.A. v. Connecticut*,
   542 F.3d 341 (2d Cir. 2008) ................................................................................. 9

*Patrolmen's Benev. Ass'n of City of New York, Inc. v. City of New
   York*, 142 A.D.3d 53 (1st Dep't 2016) ................................................................ 15

*People v. Torres*,
   37 N.Y.3d 256 (2021) .......................................................................................... 12

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020) ............................................................................... 17

*Red Bull Assocs. v. Best Western Int'l*,
   862 F.2d 963 (2d Cir. 1988) ............................................................................... 16

*Stephens v. Am. Int'l Ins. Co.*,
   66 F.3d 41 (2d Cir. 1995) ................................................................................... 10

*Sutton v. Tapscott*,
   2024 WL 4657123 (2d Cir. Nov. 4, 2024) ......................................................... 18

*Tantaros v. Fox News Network, LLC*,
   12 F.4th 135 (2d Cir. 2021) ................................................................................. 9

*United States v. Kubrick*,
   444 U.S. 111 (1979) ............................................................................................ 19

*United States v. Morrison*,
   529 U.S. 598 (2000) .............................................................................................. 3

### **Statutes**

28 U.S.C. § 1292(b) ............................................................................................ *passim*

iv

## TABLE OF AUTHORITIES
(continued)

Page(s)

New York State Penal Law § 130................................................................5

N.Y. C.P.L.R. § 214-g...................................................................4, 13, 14

### Regulations

N.Y.C. Admin. Code § 10-1102 ...............................................................3

N.Y.C. Admin. Code § 10-1105 ...........................................1, 3, 5, 6, 14

### Rules

Federal Rule of Appellate Procedure 5.....................................................8

### Legislative Materials

City of New York, L.L. 21/2022 § 2 ........................................................5

City of New York, L.L. 73/2000 § I .........................................................3

NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440) .................4

NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082) ..................................................................................................5

### Other Authorities

16 Edward H. Cooper, Federal Practice and Procedure, (Wright & Miller) § 3930 (3d ed. 2023)................................................................16

## INTRODUCTION

In July 2023, Plaintiff-Respondent Jane Doe filed this suit based on a sexual assault that allegedly occurred more than 21 years ago: in 2002, when she was a 16-year-old minor. These allegations are a complete work of fiction and Defendant-Petitioner Leon Black categorically denies Ms. Doe's allegations, which have unfairly smeared his reputation. The basis of the decision below and this petition, however, is a purely legal question: whether Ms. Doe's claims are time-barred given that her only basis for asserting them now—a New York *City* extender statute—is preempted by applicable New York *State* law. The district court (Clarke, J.) denied Mr. Black's motion to dismiss but acknowledged that another judge in the district (Kaplan, J.) dismissed a legally indistinguishable claim on preemption and timeliness grounds. The district court accordingly certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). This Court should grant this petition to resolve the important question presented, which is controlling in this case and others—and has divided the two district courts that have considered it.

Ms. Doe filed her claim under New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL"), which generally allows claims for sexual assault and other specified violations within seven years of the alleged violation or nine years after the plaintiff became an adult. N.Y.C. Admin. Code § 10-1105(a). It is undisputed that those deadlines ran more than decade ago for Ms. Doe. She

1

instead contends that her claim is timely under a recent New York City law allowing expired VGMVPL claims to be filed between March 2023 and March 2025 ("VGMVPL Revival Statute"). The problem with that position is that New York State has separately enacted a law reviving such claims for minor victims—the Child Victims Act ("CVA")—and limiting their filing to a period between August 2019 and August 2021. New York City is thus attempting to enforce a directly conflicting timetable for claims that New York State expressly addressed in the CVA. That effort is preempted under a straightforward application of New York law, as Judge Kaplan held in the first case presenting the question in the Southern District of New York. *Bellino v. Tallarico*, 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024).

The court below reached a contrary conclusion but appropriately certified its decision under Section 1292(b), and the criteria for immediate appellate review are readily satisfied. The appeal presents a "controlling question of law" because the preemption issue is a purely legal question that is dispositive of Ms. Doe's action. There is "substantial ground for difference of opinion" because there are two conflicting district court decisions, and the question is of first impression in this Court. And immediate appeal would materially advance the ultimate termination of the litigation because the action would end if this Court reversed the district court's decision. Finally, immediate appeal is consistent with Section 1292(b)'s purpose of avoiding unnecessary litigation and promoting judicial efficiency, particularly

2

considering that the issue is likely to recur with frequency (and is already pending in another case before the court below).

QUESTION PRESENTED FOR REVIEW

Whether, under New York law, New York City's VGMVPL revival provision is preempted by New York State's CVA revival provision.

**STATEMENT OF THE RELEVANT FACTS AND BACKGROUND**

**A.      The Relevant Statutes**

There are three relevant statutes at issue in this case: New York City's VGMVPL, New York State's CVA, and New York City's Revival Statute.

**1.      New York City's VGMVPL**

The New York City Council adopted the VGMVPL in 2000 in response to the U.S. Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the federal Violence Against Women Act on Commerce Clause grounds. *See* City of New York, L.L. 73/2000 § I; N.Y.C. Admin. Code § 10-1102. The VGMVPL creates a civil cause of action for a "crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104.

As a general matter, a claim under the VGMVPL must "be commenced within seven years after the alleged crime of violence motivated by gender occurred." N.Y.C. Admin. Code § 10-1105(a). However, if a potential plaintiff is unable to bring an action at the time the crime of violence occurs for certain enumerated

3

reasons, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id.* One of the enumerated reasons is "infancy" (*i.e.*, minor status). *Id.* A VGMVPL plaintiff whose claim arose when the plaintiff was a minor thus has nine years to bring the claim after becoming an adult. *Id.*

### 2. New York State's CVA

New York state also has a statutory scheme covering sexual assaults against minors. In 2019, the New York State Legislature enacted the CVA. NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440). The CVA comprehensively reformed New York's laws related to sexual offenses committed against minors in both criminal and civil contexts. *Id.* In particular, it dramatically extended numerous statutes of limitations for child victims of sexual assault. *See Fenton v. State*, 213 A.D.3d 737, 740 (2d Dep't 2023) ("The legislative purpose of the CVA is to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations.") (internal quotations omitted).

The CVA provision relevant here revives civil claims for specifically defined forms of sexual assault against minors for which the applicable limitations period has already expired. N.Y. C.P.L.R. § 214-g. The CVA Revival Provision begins by stating that it applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id.* It then describes its coverage: "every civil

4

claim ... brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in"—among other provisions—"article one hundred thirty of the" New York State Penal Law, which was "committed against" a minor and was "barred as of" February 14, 2019 because "the applicable period of limitation has expired." *Id.* The CVA Revival Provision provides that such claims are "hereby revived, and action thereon may be commenced" between August 14, 2019, and August 14, 2020. *Id.* On August 3, 2020, the New York State Legislature extended the CVA's revival window period for another year, until August 14, 2021. NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082).

### 3. New York City's Revival Statute

On January 9, 2022, the New York City Council also adopted a revival provision, amending the VGMVPL and stating that "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." City of New York, L.L. 21/2022 § 2; N.Y.C. Admin. Code § 10-1105(a). The revival period accordingly lasts for two years, beginning on March 1, 2023, and concluding on March 1, 2025—all after the CVA's revival period has expired.

5

### B. Procedural History

In July 2023, Ms. Doe filed a complaint based on a sexual assault that allegedly occurred more than 21 years ago: in 2002, when she was a 16-year-old minor. Dist. Ct. Dkt. 1 at ¶¶1-2, 60. She brought the claim under the VGMVPL and alleged that her claim was timely under the VGMVPL Revival Statute because it was commenced within the two-year window extending from March 2023 to March 2025, or "two years and six months after September 1, 2022." *Id.* at ¶¶95-99 (citing N.Y.C. Admin. Code § 10-1105(a)).

Setting aside the fact that the allegations are categorically baseless,[1] Mr. Black moved to dismiss the complaint as untimely under Federal Rule of Civil Procedure 12(b)(6). Dist. Ct. Dkt. 40, 41. Mr. Black argued that Ms. Doe's claim was barred by the VGMVPL's statute of limitations because it was not commenced within seven years of the alleged assault or within the alternative nine-year period established by that law. Dist. Ct. Dkt. 41 at 9. The VGMVPL Revival Statute did not render Ms. Doe's claims timely because that statute was preempted by New York State's CVA Revival Provision, which sets an exclusive, earlier revival window for sexual-assault claims against minors. *Id.* at 9-13. Mr. Black argued that the VGMVPL Revival Statute was preempted under both field and conflict preemption. *Id.* at 14-20.

---

[1] Professional investigators engaged by Mr. Black's attorneys have already uncovered significant evidence that Ms. Doe is making these allegations up.

6

Because Ms. Doe failed to file her complaint within New York State's CVA Revival Provision's window (between August 2019 and August 2021), her claim was time-barred. *Id.* at 20-21.

The district court denied Mr. Black's motion to dismiss. Ex. 1. ("MTD Or."). The district court held that the VGMVPL Revival Statute was not field preempted because the state had not made statements "evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases," and the New York State's CVA was not a comprehensive and detailed scheme. *Id.* at 6-11. The district court also held conflict preemption did not apply because the VGMVPL Revival Statute did not curtail or take away a right or benefit expressly given by the state and both statutes further the same goals. *Id.* at 11-13. In the order, the district court acknowledged that another decision in the Southern District of New York reached the opposite conclusion; in *Bellino v. Tallarico*, 2024 WL 1344075, (S.D.N.Y. Feb. 21, 2024), that court held that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act." *Id.* at 13.

Mr. Black moved to certify the district court's order for interlocutory review pursuant to 28 U.S.C. § 1292(b). Dist. Ct. Dkt. 122. On November 8, 2024, the district court entered an order granting Mr. Black's certification motion. *See* Ex. 2 ("Certification Or."). That same day, in the same written order, the district court

7

granted Ms. Doe's motion for leave to amend. *Id.* On November 7, 2024, after a conference during which the district court stated on the record that it intended to grant Ms. Doe's motion for leave to amend, Ms. Doe filed an amended complaint, in which she again asserted only one cause of action for violation of the VGMVPL arising out of the single alleged encounter in 2002, and again relied on the VGMVPL Revival Statute as the basis for asserting a timely claim. *See* Dist. Ct. Dkt. 152.

## RELIEF SOUGHT

This Court should grant permission to appeal from the Order below under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5.

## THE CERTIFIED QUESTION SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW UNDER § 1292(B)

Immediate appeal of an interlocutory order is appropriate under 28 U.S.C. § 1292(b) when (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three statutory criteria are met here. The district court properly certified the order for interlocutory review and this Court should exercise it discretion to hear the appeal. Interlocutory appeal of the threshold preemption question could terminate the litigation and avoid unnecessary litigation, making this precisely the sort of case for which Section 1292(b) was designed.

## I.   THE DISTRICT COURT'S ORDER PRESENTS A CONTROLLING QUESTION OF LAW

It is indisputable that the issue here—whether the VGMVPL is preempted by the CVA—raises a controlling question of law.  While an issue on appeal may be controlling even when it does not terminate the action, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Klinghoffer v. S.N.C Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  A ruling reversing the district court in favor of Mr. Black on this threshold question would fully dispose of Ms. Doe's claim, terminating the litigation.

Whether preemption applies is a pure question of law to be reviewed de novo.  *See Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) ("A district court's determination as to preemption is a conclusion of law, which we review de novo."); *cf. Casey v. Long Island R.R.*, 406 F.3d 142, 146-47 (2d Cir. 2005) (denying petition for leave to appeal when the issue was not a question of law to be reviewed de novo).  Resolving the preemption issue here does not require extensive review of the factual record.  *Cf. Casey*, 406 F.3d at 146-47 (issue requiring evaluation of trial evidence was not a question of law).

This Court has frequently granted interlocutory review of preemption questions.  *See Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 129 (2d Cir. 2022), *vacated and remanded on other grounds*, 602 U.S. 205 (2024); *Tantaros v. Fox News Network*, LLC, 12 F.4th 135, 140 (2d Cir. 2021); *Montefiore Med. Ctr. v.*

9

*Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011); *Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 55 (2d Cir. 2006); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 320 (2d Cir. 2003); *Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458, 460 (2d Cir. 1999) (per curiam); *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 43 (2d Cir. 1995). Accordingly, the district court's order presents a controlling question of law warranting interlocutory review.[2]

## II.    THERE IS SUBSTANTIAL GROUND FOR DISAGREEMENT WITH THE DISTRICT COURT'S RULING ON THE QUESTION PRESENTED

A substantial ground for difference of opinion exists when there are differing district court rulings within the Circuit. *See Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017). This Court has also acknowledged that a substantial ground for difference of opinion exists when the issue is "difficult and of first impression." *Klinghoffer*, 921 F.2d at 25. Both circumstances are present here.

There are two conflicting district court opinions: the district court's decision in this case and Judge Kaplan's decision in *Bellino*. Both decisions were issued this same year on the same issue of whether the VGMVPL is preempted by the CVA.

The issue would also be one of first impression in this Circuit, as no other

---

[2]   This Court could also certify this issue to the New York Court of Appeals, as this question involves the interpretation of New York statutes and policy. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 546 (2d Cir.) (certifying question of whether CVA's waiting provision is a statute of limitations), *certified question accepted*, 41 N.Y.3d 969 (2024).

federal court has addressed the issue. The fact that there are only two conflicting decisions appearing to address this issue only further suggests there is substantial ground for difference of opinion. *See Klinghoffer*, 921 F.2d at 25 (certifying appeal under Section 1292(b) where the issue was difficult and of first impression).

This Court has accepted Section 1292(b) interlocutory appeals in nearly identical circumstances. The district court in *Capitol Records, LLC v. Vimeo* certified an issue for immediate appeal when the only other district court case to address the issue reached the opposite conclusion and there were no federal appellate court decisions on point. 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) ("This issue is a question of first impression in the Second Circuit, and aside from these two decisions no other federal court appears to have addressed the issue. In view of the paucity of case law and these conflicting conclusions, the Court finds that the second statutory factor has been satisfied."). This Court accepted the interlocutory appeal. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 86-87 (2d Cir. 2016).

Here, the difference between the *Bellino* decision and the district court's order is particularly acute because almost identical arguments were advanced in both actions. Like Mr. Black here, the defendant in *Bellino* also argued that the CVA preempted the VGMVPL Revival Statute. *Compare* Dist. Ct. Dkt. 41 at 16 ("But the NYC Revival Statute cannot render her claim timely, because the statute is preempted by the New York State CVA Revival Provision."), *with Bellino*, No. 24-

11

cv-0712 (LAK), ECF No. 6 at 13-14 (arguing that the CVA and ASA preempt the VGMVPL). Judge Kaplan agreed with the defendant in *Bellino* on this very point, holding that "the limitations provision of the VGMVP[L] is preempted by the state's adoption of the Child Victims Act and Adult Survivors Act, substantially for the reasons set forth by the defendant." *Bellino*, 2024 WL 1344075, at *1. The district court here however, held that the VGMVPL is not preempted, finding that the CVA does not amount to "a comprehensive scheme," and listing a series of factors that it found lacking with the CVA's scheme. MTD Or. at 10. It is therefore impossible to reconcile the district court's order with Judge Kaplan's decision in *Bellino*. Judge Kaplan's acceptance of the same preemption argument in *Bellino* demonstrates that courts disagree on this issue and there is substantial ground for difference of opinion.[3]

The arguments for preemption and against the district court's ruling have merit. Preemption under New York law can arise through both conflict preemption and field preemption. *See People v. Torres*, 37 N.Y.3d 256, 265 (2021). Neither form of preemption requires the State to preempt local law expressly, as preemption may be implied either through the nature of the subject matter being regulated as

---

[3] The plaintiff in *Bellino* initially filed two notices of appeal, but both appeals have now been withdrawn. *See Bellino v. Tallarico*, 2024 WL 3170987 (2d Cir. Apr. 4, 2024); *Bellino v. Tallarico*, No. 24-01885, doc. 17 (2d Cir. Oct. 10, 2024).

well as the scope and purpose of the legislative scheme. *See Cohen v. Bd. of Appeals of Vill. of Saddle Rock*, 100 N.Y.2d 395, 400 (2003). Mr. Black argued below that the VGMVPL is preempted by the CVA under both a conflict and field preemption analysis.

Field preemption exists because, in enacting the CVA, the State Legislature definitively prescribed a specific time window for claims relating to sexual offenses against minors throughout the state of New York. *See* N.Y. C.P.L.R. § 214-g (stating that it applies to "every civil claim or cause of action brought against any party … as a result of conduct which would constitute a sexual offense" against a minor). The CVA thus provided a comprehensive and detailed regulatory scheme overhauling statutes of limitations applicable to child sexual assault and sexual abuse claims. In doing so, it indicated a purpose to occupy an entire field of regulation, thus preempting Plaintiff's claims. *See Lansdown Ent. Corp. v. New York City Dep't of Consumer Affairs*, 74 N.Y.2d 761, 765 (1989) ("Where a State Law indicates a purpose to occupy an entire field of regulation … local regulations are preempted regardless of whether their terms conflict with provisions of the State statute or only duplicate them."). This same reasoning was advanced by the defendant in *Bellino* and accepted by Judge Kaplan. *See Bellino*, 2024 WL 1344075, at \*1.

The VGMVPL Revival Statute is also preempted under a conflict preemption analysis, which exists where "a state law prohibits what a local law explicitly

13

allows." *N.Y. State Assn's for Affordable Hous. v. Council of the City of N.Y.*, 141 A.D.3d 208, 215 (1st Dep't 2016) (quotations omitted). In short, the VGMVPL Revival Statute establishes a different and conflicting period for bringing claims than the CVA Revival Provision. The CVA revived these claims for a two-year window lasting from August 2019 to August 2021, N.Y. C.P.L.R. § 214-g, but the VGMVPL Revival Statute attempts to revive these same claims for a different two-year window lasting from March 2023 to March 2025, N.Y.C. Admin. Code § 10-1105.

While the district court reasoned that that there could be no conflict between the CVA and VGMVPL because "[t]hese statutes serve the same purpose," MTD Or. at 12, conflict preemption has been found where statutes directly conflict even if the statutes had the same claimed purpose, *see Lansdown*, 74 N.Y.2d at 763 ("Nevertheless, even assuming that this local ordinance was adopted for the claimed purpose, this conclusion would not alone be sufficient to surmount the preemption hurdle."); *see also Arizona v. United States*, 567 U.S. 387, 402 (2012) (holding state law was preempted despite having "same aim" as federal law); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 379 (2000) ("The conflicts are not rendered irrelevant by the State's argument that there is no real conflict between the statutes because they share the same goals…. The fact of a common end hardly neutralizes conflicting means."). As the New York Court of Appeals explained in *Lansdown*, "[e]ven where the local goal does not conflict with State legislative objectives, the

14

locality must still tailor its ordinance to ensure that its impact upon the preempted field is merely incidental." 74 N.Y.2d at 763-64. But here, the VGMVPL provides an entirely different period of time in which to bring claims than what the CVA provides, thus providing for a claim where one would not otherwise exist under the CVA. *See id*. at 764 ("[R]ather, the direct consequences of a local ordinance should be examined to ensure that it does not render illegal what is specifically allowed by State law.") (quotations omitted).

The district court also found that the "VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents" and that "[p]reventing the City from enacting its own deadline … risks rendering that power illusory." MTD Or. at 13. But New York courts have expressly found that "the City Council may not exercise its police power to adopt a law … which is inconsistent with a State statute." *New York City Health & Hosps. Corp. v. Council of the City of N.Y.*, 303 A.D.2d 69, 74 (1st Dep't 2003); *see Patrolmen's Benev. Ass'n of City of New York, Inc. v. City of New York*, 142 A.D.3d 53, 58 (1st Dep't 2016) (explaining that municipalities are accorded broad police powers, "provided local governments refrain from adopting laws that are inconsistent with the Constitution or state statutes"). By providing a different time period in which to bring claims, the VGMVPL Revival Statute is inconsistent with the CVA. Accordingly, there are reasoned bases to find for Defendant, establishing substantial ground for difference

15

of opinion.

## III. INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Appellate review of whether the VGMVPL Revival Statue is preempted by the CVA will materially advance the ultimate termination of the litigation. Immediate appeal materially advances the ultimate termination of the litigation when reversal of the district court's order would "immediately end the litigation." *Red Bull Assocs. v. Best Western Int'l*, 862 F.2d 963, 965 n.5 (2d Cir. 1988). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law," because both standards are satisfied when immediate appeal "involve[s] the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial." 16 Edward H. Cooper, Federal Practice and Procedure (Wright & Miller) § 3930 (3d ed. 2024); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (recognizing that courts tend to treat the controlling question of law requirement as the same as the materially advance requirement).

For the same reasons that this appeal presents a controlling question of law, immediate appeal will also materially advance the termination of the litigation. If this Court reverses the district court's order, the litigation will immediately end. There would be no need for any further proceedings. *Cf. Koehler v. Bank of Bermuda*, 101 F.3d 863, 866 (2d Cir. 1996) (declining to hear interlocutory appeal

16

when remand would be required regardless of how court ruled); *Isra Fruit, Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 25-26 (2d Cir. 1986) (holding appeal would not "materially advance the termination" of the suit when trial would likely occur without significant time saving even if appeal was successful).[4]

## IV.  INTERLOCUTORY REVIEW IS CONSISTENT WITH THE PURPOSE OF SECTION 1292(B)

In addition to satisfying the statutory criteria, this appeal is consistent with the purpose of Section 1292(b).  Resolution of the preemption issue would have precedential value for future parties litigating this same issue, who otherwise would

---

[4]  If this Court permits interlocutory appeal and rules in Mr. Black's favor, the result would be dismissal of the case with prejudice, and there would be no need to consider Ms. Doe's amended complaint.  In all events, the Amended Complaint—which like the original complaint, asserts only one cause of action for violation of the VGMVPL arising out of a single alleged encounter in 2002, when Ms. Doe was 16, and relies on the VGMVPL Revival Statute as the sole basis for the claim being timely—would be untimely for the same reasons as the original complaint.  *See* Dist. Ct. Dkt. 152 (Am. Compl.).  While the filing of an amended complaint may moot an appeal where "the operative facts changed," *Amadou v. Doyle*, 674 F. App'x 50, 52 (2d Cir. 2017), the operative facts in the Amended Complaint are the same as those in the original complaint.  Further, the district court already contemplated the effect of the Amended Complaint and did not see mootness as a problem.  In its order denying Mr. Black's motion to dismiss, the district court acknowledged that Plaintiff had filed a motion for leave to amend the Complaint but because Mr. Black acknowledged it had no effect on the pending motion to dismiss, the court decided the motion.  *See* MTD Or. at 2 n.1; *see also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) (holding that "when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint").  The district court also granted the motion to amend and the motion for Section 1292(b) certification on the same day and in the same order.  *See* Certification Or.

17

be faced with the ambiguity created by two directly conflicting district court opinions and no appellate caselaw. *See Klinghoffer*, 921 F.2d at 24 ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court. But that is not the same as defining a 'controlling question of law' in terms of its precedential value.").

Appellate review of this issue now could prevent the filing of other potentially time-barred lawsuits, as well as resolve the current uncertainty concerning the VGMVPL. While there appear to only be two opinions discussing whether the CVA preempts the VGMVPL, this issue is likely to be recurring as the CVA's lookback period only recently expired. Indeed, the same preemption issue is currently pending before the same district court judge in another case. *See Doe v. Combs*, No. 23-cv-10628 (S.D.N.Y.), Dkt. 57 (arguing, *inter alia*, that the complaint should be dismissed because the CVA preempts the VGMVPL). Additionally, this Court has heard multiple CVA cases, including cases involving statute of limitations issues. *See Jones*, 96 F.4th at 541; *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 104 (2d Cir. 2023) (addressing whether CVA Revival Statute can revive or toll a federal claim that is otherwise time barred but is based on alleged sexual assault falling under the CVA); *see also Sutton v. Tapscott*, 2024 WL 4657123, at *1 (2d Cir. Nov. 4, 2024) (addressing CVA claim).

18

Additionally, interlocutory review would prevent unnecessary litigation and promote judicial efficiency. Section 1292(b) review is especially warranted when immediate appeal would avoid unnecessary litigation. *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761, 765 (2d Cir. 1988) ("Courts have noted that … section 1292(b) certification might be the most appropriate way in which to avoid unnecessary litigation in cases involving such interlocutory orders as those entered in response to motions seeking compelled arbitration."). It would be unnecessary and a waste of judicial resources for the parties here to litigate the merits of Ms. Doe's claim to the end, only to have this Court reverse the district court's threshold preemption ruling on appeal. This Court has acknowledged that a case like this—"where a long trial is envisioned to determine liability over a defense disputing the right to maintain the action"—is one of the kinds of cases that, while considering Section 1292(b), the House Committee on the Judiciary listed as appropriate for interlocutory appeal. *Koehler*, 101 F.3d at 866. Immediate appeal here would thus promote judicial efficiency, one of the purposes of Section 1292(b). *See Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1996) (acknowledging judicial efficiency as one of the purposes of § 1292(b)).

Immediate review is also consistent with the very purpose of statutes of limitations; it would prevent Mr. Black from having to defend against a time-barred action. *See United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("[Statutes of

19

limitations] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."); *see also Connell v. Hayden*, 83 A.D.2d 30, 41 (2d Dep't 1981) ("[T]he primary purpose of Statutes of Limitations is to relieve defendants of the necessity of … preparing a defense where the action is commenced against them after the expiration of the statutory period because the law presumes that by that time evidence has been lost, memories have faded, and witnesses have disappeared.") (quotations omitted). The need for appellate review is therefore compelling.

## CONCLUSION

For the foregoing reasons, Defendants' petition for permission to appeal should be granted.

Dated: November 18, 2024                    Respectfully submitted,

| | */s/ Michael B. Carlinsky* | |
|---|---|---|
| E. Danya Perry | Michael B. Carlinsky | Susan Estrich (*pro hac* |
| Peter A. Gwynne | Jennifer J. Barrett | *vice forthcoming*) |
| PERRY LAW | QUINN EMANUEL URQUHART | ESTRICH GOLDIN LLP |
| 445 Park Avenue, 7th Fl. | & SULLIVAN, LLP | 947 Berkeley Street |
| New York, NY 10028 | 51 Madison Avenue, 22nd Fl. | Santa Monica, CA 90403 |
| (212) 393-4250 | New York, NY 10010 | (213) 399-2132 |
| | (212) 849-7000 | |

*Counsel for Defendant-Petitioner*

20

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitations of Fed. R. App. P. 5(c) and 32(c)(2) because it contains 5030 words, excluding the parts of the petition excluded from the length by Fed. R. App. P. 32(f).

2. Pursuant to Fed. R. App. P. 32(c)(2), this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman 14-point font.

Dated: November, 18, 2024                 Respectfully submitted,

                                          By: */s/ Michael B. Carlinsky*
                                          Michael B. Carlinsky

21

# EXHIBIT 1

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 29 of 50

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

     Plaintiff,

   -against-

LEON BLACK,

     Defendant.

23-CV-6418 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

  Plaintiff Jane Doe brings this action under the Victims of Gender-Motivated Violence

Protection Law ("VGMVPL") alleging that Defendant Leon Black sexually assaulted her in

2002, when she was a minor. The truth or falsity of that allegation is not the question at this

stage. Instead, the question before the Court is whether the amendment reviving claims under the

VGMVPL (the "VGMVPL Revival Statute") is preempted by the Child Victims Act ("CVA").

Because Defendant has failed to demonstrate that the state legislature occupied the relevant field

of legislation with the CVA or that the VGMVPL Revival Statute conflicts with the CVA, the

Court finds that the VGMVPL Revival Statute is not preempted by the CVA. Accordingly,

Defendant's motion to dismiss is DENIED. The Court also DENIES Defendant's motion to stay

as moot, GRANTS in part and DENIES in part the parties' motions to seal, and DENIES

Defendant's motion for sanctions.

<strong>LEGAL STANDARD</strong>

  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the

complaint liberally, accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

## DISCUSSION

The Court first denies Defendant's motion to dismiss, finding that the VGMVPL Revival Statute is not preempted by the CVA. The Court next denies Defendant's motion to stay as moot. The Court then grants in part and denies in part Defendant's motion to seal, finding that only the proposed redactions to protect Plaintiff's anonymity and her medical information are warranted. Finally, the Court denies Defendant's motion for sanctions, finding that the factual record is insufficient at this juncture to make a determination as to sanctions.

## I. Defendant's Motion to Dismiss is Denied[1]

The New York City Council adopted the VGMVPL in 2000 in response to the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the Violence Against Women Act ("VAWA") on Commerce Clause grounds. N.Y.C. Admin. Code

---

[1] On August 20, 2024, Plaintiff filed a motion for leave to amend the Complaint. *See* ECF No. 91. Defendant acknowledges that the proposed amended complaint "has absolutely no effect on the pending motion to dismiss." *See* ECF No. 94. Thus, the Court decides the motion to dismiss herein; the Court will decide upon the motion for leave to amend and related sealing motions at a later date.

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 129 of 149

A-127

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 31 of 50
Case 1:23-cv-06418-JGLC    Document 106    Filed 09/27/24    Page 3 of 20

§ 10-1102. The VGMVPL provides for a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." *Id*. § 10-1104. The VGMVPL defines "crime of violence" as:

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id*. § 10-1103. The VGMVPL further defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id*.

The VGMVPL allows for actions to be commenced within seven years after the alleged crime of violence motivated by gender. *Id*. § 10-1105(a). If a potential plaintiff is unable to bring a claim within the seven years for certain enumerated reasons, including infancy, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id*. Under such limitations period, Plaintiff's claim would have expired approximately eleven years ago, as the alleged crime of violence motivated by gender occurred in 2002 when she was sixteen. *See* ECF No. 1 ("Compl.") ¶¶ 1–2.

On January 9, 2022, the New York City Council adopted an amendment to the VGMVPL – the VGMVPL Revival Statute – stating:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

City of New York, L.L. 21/2022 § 2. Plaintiff claims that she timely filed suit, because she

brought her action on July 24, 2023, less than two years and six months after September 1, 2022.

*See* Compl. ¶ 99.

Defendant argues that the VGMVPL Revival Statute is preempted by the CVA, and

therefore that Plaintiff's claim is untimely. ECF No. 41 ("Mot."). The CVA states:

> Notwithstanding any provision of law which imposes a period of limitation to the
> contrary . . . every civil claim or cause of action brought against any party
> alleging intentional or negligent acts or omissions by a person for physical,
> psychological, or other injury or condition suffered as a result of conduct which
> would constitute a sexual offense as defined in article one hundred thirty of the
> penal law committed against a child less than eighteen years of age . . . which is
> barred as of the effective date of this section because the applicable period of
> limitation has expired . . . is hereby revived, and action thereon may be
> commenced not earlier than six months after, and not later than two years and six
> months after the effective date of this section.

C.P.L.R. § 214-g. The CVA was first enacted on February 14, 2019, allowing actions to be

commenced between August 14, 2019 and August 14, 2020. 2019 N.Y. Sess. Laws, ch. 11 (S.

2440). In 2020, the CVA's revival window was extended until August 14, 2021. 2020 N.Y. Sess.

Laws, ch. 130 (S. 7082).

In part, the CVA revives previously barred actions related to the sexual abuse of children.

C.P.L.R. § 214-g. The Sponsor Memorandum provides that the CVA "would also establish a one-

year window in which adult survivors of child sexual abuse would be permitted to file civil

actions . . . ." Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7.

### A. The VGMVPL Revival Statute Is Not Preempted by the CVA

The Court thus analyzes whether the VGMVPL Revival Statute is preempted by the

CVA. Under the New York State Constitution's "home rule" provision, municipalities are able to

adopt local laws pertaining to the "government, protection order, conduct, safety, health and

well-being of persons or property therein," as long as such local laws are "not inconsistent" with

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 131 of 149

A-129

Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 5 of 20
Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 33 of 50

the state constitution or general state laws. NY Const., art. IX, § 2(c)(10). "Local laws may be
inconsistent with and preempted by state law either because the legislature has occupied the
relevant field of regulation" – field preemption – or "because the local law conflicts with state
law" – conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New
York*, 40 N.Y.3d 417, 423 (2023).

Both parties rely on *Engelman v. Rofe*, 144 N.Y.S.3d 20 (1st Dep't 2021), to support their
arguments regarding preemption. *Engelman*, though providing useful context, is not directly
applicable. In *Engelman*, the court analyzed whether the seven-year limitation period for a claim
under the VGMVPL was preempted by C.P.L.R. § 215(3), which provides for a one-year
limitation period for assault, finding that it was not. 144 N.Y.S.3d at 23. The court held that the
"[VGMVPL's] construct is consistent with the City's broad policing power to enact legislation to
protect its residents from discrimination, including gender-related violence." *Id*. at 25 (cleaned
up). In so holding, the court found that "the legislative intent of the [VGMVPL] was to create a
civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of
limitations for a particular class of assaults." *Id*. at 25–26. Here, however, the provision of the
VGMVPL at issue is specifically about the statute of limitations – extending the time for which
potential plaintiffs can bring causes of action. Therefore, this case does not resolve the issue
before the Court: whether the VGMVPL Revival Statute is preempted by the CVA by either field
or conflict preemption.

### 1. Field Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to analyzing the VGMVPL under field preemption. "Field
preemption prohibits a local government from legislating in a field or area of the law where the
legislature has assumed full regulatory responsibility." *Police Benevolent Ass'n*, 40 N.Y.3d at

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 132 of 149

A-130

Case 1:23-cv-06418-JGLC    Document 106    Filed 09/27/24    Page 6 of 20
Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 34 of 50

423 (cleaned up). "Permitting such laws 'to operate in a field preempted' by the state 'would tend

to inhibit the operation of the state's general law and thereby thwart the operation of the state's

overriding policy concerns.'" *Id.* (quoting *Jancyn Mfg. Corp. v. Cnty. of Suffolk*, 71 N.Y.2d 91,

97 (1987)). However, "the mere fact that a local law may deal with some of the same matters

touched upon by state law does not render the local law invalid." *Id*. at 425 (quoting *People v.

Judiz*, 38 N.Y.2d 529, 531–32 (1976)). Instead, "[a] desire to pre-empt may be implied from a

declaration of State policy by the Legislature or from the fact that the Legislature has enacted a

comprehensive and detailed regulatory scheme in a particular area." *Consol. Edison Co. of New

York v. Town of Red Hook*, 60 N.Y.2d 99, 105 (1983) (internal citations omitted). Here,

Defendant's field preemption arguments fail for the reasons stated below.

### a. The CVA Does Not Indicate an Intent to Occupy the Field

The state has made no statements evincing a desire to fully control the issue of statutes of

limitation in child sexual offense cases.[2] Defendant points to several statements by the legislature

with respect to the CVA in an attempt to demonstrate field preemption. They are that (1) the CVA

applies to "'every civil claim . . . brought against any party . . . as a result of conduct which

would constitute a sexual offense' against a minor as defined in, among other provisions, 'article

one hundred thirty of the New York State penal law'"; (2) passage of the CVA "will finally allow

justice for past and future survivors of child sexual abuse"; (3) the CVA "will finally give . . . all

survivors of childhood sexual abuse in the state of New York the justice that they deserve"; (4)

the CVA was "on behalf of all of New York's survivors"; and (5) passing the CVA meant "finally

getting something done that helps every single victim in this state." Mot. at 17–18 (quoting

---

[2] The Court does not consider the exhibits filed at ECF No. 105, which are not part of the
legislative history of the CVA.

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 133 of 149

A-131

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 35 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 7 of 20

C.P.L.R. § 214-g; New York Bill Jacket, 2020 S.B. 7082, Ch. 130, at 8; N.Y. Senate Debate on Senate Bill S2440, Jan. 28, 2019, at 754, 762, 773).

None of these statements support a finding of field preemption on the matter of statutes of limitations. Instead, they merely indicate that the legislature intended for the CVA to benefit all New York child sexual assault victims. This is not the same as "an expression of need for uniform State-wide control" that has been found to support field preemption. *See Vatore v. Comm'r of Consumer Affs. of City of New York*, 83 N.Y.2d 645, 650 (1994). These general statements about helping all New Yorkers are similar to statements made with respect to the New York State Human Rights Law ("NYSHRL"). The NYSHRL states that its purpose is to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" free from discrimination. N.Y. Exec. L. § 290(3). Nonetheless, the New York Court of Appeals (the "Court of Appeals") found the New York City Human Rights Law, which overlaps substantially with the NYSHRL, not to be preempted. *See New York State Club Ass'n, Inc. v. City of New York*, 69 N.Y.2d 211, 217–18 (1987), *aff'd*, 487 U.S. 1 (1988).

Cases where courts have found that the state has expressed a need for complete control in a field are readily distinguishable. For example, in *Consolidated Edison*, the Court of Appeals found that a state law providing that all decisions regarding where new major steam electric generating facilities should be located were to be determined by a state siting board preempted a local law requiring that people obtain a license from the town board to begin a site study for a power plant. 60 N.Y.2d at 103, 105. The desire to preempt was implied from legislative declarations of state policy that the purpose of the state law was "to provide for the expeditious resolution of all matters concerning the location of major steam electric generating facilities presently under the jurisdiction of multiple state and local agencies, including all matters of state

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 36 of 50

and local law, in a single proceeding" and that "there is a need for the state to control determinations regarding the proposed siting of major steam electric generating facilities within the state." *Id*. at 105. The court also found relevant that the governor approved the law as "the establishment of a unified certificating procedure." *Id*.

Likewise, the Court of Appeals found similar language in the Alcoholic Beverage Control Law ("ABC Law") to be indicative of field preemption. In *People v. De Jesus*, the court considered whether a local law about the sale and offering of alcohol after a certain time was preempted by the ABC Law. 54 N.Y.2d 465 (1981). The ABC Law declared that it was the goal of the state, through the statute, to "regulate and control the manufacture, sale and distribution within the state of alcoholic beverages." *Id*. at 470. Stating that the policy behind the legislation was not "left to the imagination" by this language, the court concluded that the local law was indeed preempted. *Id*.

Here, no similar statements were made in the context of the CVA. Instead, the statements Defendant has pointed to do not support field preemption but instead focus on the benefits the CVA would provide all child victims. The statements do not indicate a desire by the state to assume full control or regulation of this issue.

### b. The CVA Is Not a Comprehensive and Detailed Regulatory Scheme

The CVA is not the kind of scheme – one that is "comprehensive and detailed" – that would support a finding of field preemption. *See Consol. Edison*, 60 N.Y.2d at 105. The cases Defendant cites only further this conclusion. First, in *Consolidated Edison*, the Court of Appeals found field preemption where the statute regulating the siting of new major steam electric generating facilities was "comprehensive and detailed." *Id*. There, the state law included provisions that encouraged prospective applicants to consult state agency staffs regarding

preapplication site studies, instructed applicants to request exceptions or variances from municipal regulations, allowed the state board to waive compliance with municipal regulations, and required information to be gathered in carefully prescribed site studies prior to filing an application. *Id*. at 106.

Second, in *ILC Data Device Corporation v. County of Suffolk*, the Second Department held that the state legislature intended to preclude local regulation in the field of employee safety in the workplace with the enacting of a "comprehensive regulatory scheme." 588 N.Y.S.2d 845, 850 (2d Dep't 1992). The New York Commissioner of Labor (the "Commissioner") was given "expansive authority to engage in inspections, investigations, and enforcement" with regard to workplace safety and health as well as the authority to establish and maintain local branch offices, "thereby facilitating the application of State-wide regulation by State officials at the local level." *Id*. at 850–51. The state law provided the Commissioner with the authority to allow variations from health and safety standards, to inspect physical premises and books and records, and to issue subpoenas and conduct hearings. *Id*. at 851. Moreover, the state law set forth comprehensive procedures for administrative and judicial review, governed the employment of minors, controlled work hours and wages, and authorized the Commissioner to identify and ameliorate dangers in machinery and equipment. *Id*. The law also regulated the adoption, implementation, and enforcement of health and safety standards for private employees in New York. *Id*.

Third, in *Wholesale Laundry Board of Trade, Inc. v. City of New York*, the court concluded that the state law regarding minimum wage "indicate[d] a purpose to occupy the entire field." 234 N.Y.S.2d 862, 865 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963). This was because

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 136 of 149

A-134

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 38 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 10 of 20

the "provisions for amendment of the wage fixed formulate an elaborate machinery for the determination of an adequate wage in any occupation and in any locality." *Id*.

And lastly, in *Lansdown Entertainment Corporation v. New York City Department of Consumer Affairs*, the Court of Appeals affirmed that the regulatory system of the ABC Law was comprehensive and detailed. 74 N.Y.2d 761, 762–63 (1989). The court cited to *De Jesus*, which explained that the ABC Law gave the State Liquor Authority the power to grant licenses under defined circumstances, provided for criminal sanctions against unauthorized purveyors of alcoholic beverages, specified when alcoholic beverages could be sold and consumed at retail venues, included a provision against disorderliness, and imposed direct controls at the local level by creating local alcoholic beverage control boards and granting certain powers to those boards. *See id*.; *De Jesus*, 54 N.Y.2d at 469.

Here, the CVA does not come close to enacting a comprehensive scheme. The details of the schemes relied upon in the cases Defendant cites do not exist in the instant matter. The state did not create a commissioner or board with investigatory or enforcement power. The state did not impose direct controls at the local level. The state did not set forth comprehensive procedures for administrative and judicial review. Simply put, there is no detailed and comprehensive scheme. *See Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992) (holding that the statutory scheme was not "so broad in scope or so detailed as to require a conclusion that all local law in the area of rental vehicle company practices is preempted" when "statutes merely proscribe discriminatory practices against renters or the imposition of additional rental fees").

Defendant claims that the CVA is comprehensive because the state did more than revive statute of limitations for child sex abuse cases. It has also extended the statute of limitations for certain criminal cases involving sex offenses against minors (N.Y. Crim. Proc. L. § 30.10(3)(f));

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 137 of 149

A-135

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 39 of 50
Case 1:23-cv-06418-JGLC    Document 106    Filed 09/27/24    Page 11 of 20

extended the time for which civil actions related to sexual offenses against minors could be brought (N.Y. C.P.L.R. § 208(b)); and instructed the judiciary to promulgate rules for the timely adjudication of revived actions brought pursuant to N.Y. C.P.L.R. § 214-g (N.Y. Judiciary L. § 219-d). Mot. at 18. Extending the time for certain criminal and civil cases related to sexual offenses does not meet the bar of a comprehensive and detailed regulatory scheme. It is not "so broad and detailed in scope as to require a determination that [the CVA] has precluded all local regulation in the area . . . ." *Vatore*, 83 N.Y.2d at 650.

Accordingly, the VGMVPL Revival Statute is not preempted by the CVA under field preemption.

### 2. Conflict Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to conflict preemption. "Under the doctrine of conflict preemption, a local law is preempted by a state law when a right or benefit is expressly given by State law which has then been curtailed or taken away by the local law." *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 933 N.Y.S.2d 388, 395 (1st Dep't 2011), *aff'd sub nom. Sunrise Check Cashing v. Town of Hempstead*, 20 N.Y.3d 481 (2013) (cleaned up). "For a local law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit the conduct the local law prohibits or provide 'some other indication that deviation from state law is prohibited.'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617–18 (2018)). Conflict preemption exists where "there is a head-on collision between" the local law and the state law. *Lansdown*, 74 N.Y.2d at 764. However, the Court of Appeals has made clear not to read conflict preemption principles too broadly, because doing so "carries with it the risk of rendering the power of local governments illusory." *Ctr. for Indep. of Disabled v. Metro. Transportation Auth*., 125 N.Y.S.3d

11

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 138 of 149

A-136

Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 12 of 20
Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 40 of 50

697, 704 (1st Dep't 2020) (citing *Garcia*, 31 N.Y.3d at 617). And the mere "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict." *Garcia*, 31 N.Y.3d at 617 (cleaned up).

Here, the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state. The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA. *Cf. Lansdown*, 74 N.Y.2d at 764–65 (holding that city ordinance conflicted with state law when state law allowed patrons to remain on premises consuming alcohol until 4:30 a.m. but city ordinance prohibited such).

There is also no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action. *See Vatore*, 83 N.Y.2d at 650 (finding no conflict preemption when "the local law would only further the State's policy interests"). The CVA sought to remedy the injustices to survivors of child sexual abuse by extending New York's statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse. Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7. The legislative history for the extension of the revival window states that "[e]xtending the length of the revival window would provide more time to notify New Yorkers about the new law and allow more survivors to seek the justice that was denied them by New York's formerly prohibitive civil statute of limitations." *Id*. Similarly, the VGMVPL Revival Statute "would give survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations."[3] These statutes serve the same purpose.

---

[3] New York City Council, *Creating a Two Year Look-Back Window to the Gender-Motivated Violence Act, and Extending Its Statute of Limitations*, https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 139 of 149

A-137

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 41 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 13 of 20

Furthermore, as *Engelman* recognized, the VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents from gender-related violence. *Engelman*, 144 N.Y.S.3d at 23. Preventing the City from enacting its own deadline to file a claim under its own law to protect its residents, risks rendering that power illusory.

Defendant relies on several cases in support of conflict preemption; none change the Court's conclusion. First, Defendant argues that *Turnpike Woods v. Town of Stony Point*, 70 N.Y.2d 735 (1987), supports his proposition that a local law is preempted by a state law when the local law attempts to extend or alter a limitation that the state has fixed. *See* Mot. at 14–15. However, that case dealt with supersession, not preemption, and therefore is not on point.

Second, Defendant cites to an out-of-state case that does not analyze New York law so is not applicable here. *See id*. at 15 (citing *Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 162 (Cal. Ct. App. 2019)).

And lastly, Defendant cites *Bellino v. Tallarico*, No. 24-CV-712. The Court acknowledges that a different result was reached in that case. There, the court issued an order dismissing a case brought under the VGMVPL. In part, the court, adopting the position set forth in the defendant's brief, found that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act [("ASA")], substantially for the reasons set forth by the defendant." Memorandum and Order, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 21, 2024). The defendant in *Bellino* argued that the CVA and ASA "clearly occupy the field regarding the revival of claims derived from state penal sexual assault law," relying on *Engelman* and *Doe v. Gooding*, No. 20-CV-6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022), for support. Brief of Defendant at 14–15, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 2, 2024). For the reasons stated above, this Court finds otherwise.

13

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 140 of 149

A-138

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 42 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 14 of 20

## II.     The Motion to Stay is Denied

Because the Court has decided on Defendant's motion to dismiss, Defendant's motion to stay is denied as moot.

## III.     The Motion to Seal is Granted in Part and Denied in Part

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *See Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id*. at 120.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Id*. Under the First Amendment "experience and logic" test,

14

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 141 of 149

A-139

Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 15 of 20
Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 43 of 50

the Court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Id*. (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### A. Competing Considerations Outweigh the Presumption of Access for Some of the Materials in Question

Defendant seeks to file his Memorandum of Law in Support of his Motion for a Stay of Discovery (ECF Nos. 75, 77) as well as the accompanying Estrich Declaration and exhibits thereto (ECF Nos. 76, 78) with redactions. ECF No. 73 at 1. Plaintiff seeks to file her opposition to the motion to stay (ECF Nos. 80, 81) under seal, or alternatively, with redactions. ECF No. 79 at 2. Defendant argues that Plaintiff proposed additional redactions that Defendant does not believe are necessary and that the only redactions that should be applied are those that protect Plaintiff's anonymity. ECF No. 73 at 3. Plaintiff argues that not only would information contained in these documents lead to Plaintiff's identity being revealed, but also that Defendant seeks to make the information public in order to embarrass, disparage, and intimidate Plaintiff. ECF No. 79 at 2.

The supporting materials in connection with a motion to stay are judicial documents. *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015). Thus, there is a presumption of public access that attaches to the documents. *Id*. The documents may only be filed under seal or with redactions if the parties are able to overcome the presumption in favor of public access. *Id*.; *see also Lugosch*, 435 F.3d at 119–20.

15

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 142 of 149

A-140

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 44 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 16 of 20

Thus, the Court balances the "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. Established "competing considerations" include "the privacy interests of those resisting disclosure." *Id.* Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. Parties "opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id*.

The Court agrees with the parties that "information tending to reveal [Plaintiff's] identity" should be redacted, as the privacy interest of Plaintiff outweighs the presumption of public interest. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 3759161, at *1 (S.D.N.Y. Mar. 15, 2019). This includes information such as the contents of Plaintiff's tweets, which could be reverse-engineered to determine Plaintiff's identity. Although Defendant argues that the Court should not allow redactions of "information about the country of origin from which [Plaintiff] falsely claims that various members of her family emigrated," the Court finds that it is unclear at this juncture what information regarding Plaintiff's family and country of origin is true, and therefore allows this information to be redacted. *See infra* Section IV; ECF No. 83 at 2.

Accordingly, the following information related to Plaintiff's identity, including her name, her tweets, information about her family, information about her country of origin, and other information tending to reveal her identity may be properly redacted. The Court also directs that

the below redactions should be made in conformity with the redactions in the Sanctions

Memorandum and ECF No. 55 ("Melendez Decl."), which the Court previously ruled upon, and

which the parties, for the most part, agreed upon. *See* ECF Nos. 45, 47.

- Plaintiff's name. ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24).

- Plaintiff's Twitter handle, the content and/or description of her tweets and the dates of her tweets. ECF No. 77 at 1 (ECF No. 75 at 1), language from tweets in the second bullet point; ECF No. 77 at 6 (ECF No. 75 at 6), language from tweets in the last paragraph; ECF No. 77 at 8 (ECF No. 75 at 8), last sentence of second full paragraph; ECF No. 78 ¶¶ 7, 16–20, 26–29 (ECF No. 76 ¶¶ 7, 16–20, 26–29), dates related to the tweets and the content and/or description of the tweets; ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24), Twitter handles; ECF No. 78 ¶ 25 (ECF No. 76 ¶ 25), date; ECF No. 78 ¶ 35 (ECF No. 76 ¶ 35), description of Plaintiff's tweets; ECF Nos. 78-1–16 (ECF Nos. 76-1–16).

- Information about Plaintiff's family. ECF No. 77 at 7 (ECF No. 75 at 7), after "Plaintiff's" to "stated" in the last line; ECF No. 78 ¶ 14 (ECF No. 76 ¶ 14), after "Plaintiff's" to "stated."

- Information regarding Plaintiff's country of origin. ECF No. 77 at 7 (ECF No. 75 at 7), first full paragraph; ECF No. 78 Section III Heading (ECF No. 76 Section III Heading), the proposed redaction; ECF No. 78 ¶ 15 (ECF No. 76 ¶ 15), bullet points; ECF No. 78 ¶ 16 (ECF No. 76 ¶ 16), after the redacted date to "Ms."; ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), remainder of sentence following "by her own admission"; ECF No. 78 ¶ 21 (ECF No. 76 ¶ 21); ECF No. 78 ¶ 22 (ECF No. 76 ¶ 22); ECF No. 80 at 6–7 (ECF No. 81 at 6–7), references to family members and bullet points in full.

- Other information tending to reveal Plaintiff's identity. ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), after "was" to "that" in the second line; ECF No. 78 ¶ 20 (ECF No. 76 ¶ 20), after "received" to "messages"; ECF No. 80 at 7 (ECF No. 81 at 7), quoted language in the last line of the first paragraph.

Requests to redact information regarding Plaintiff's medical records, treatment, and

diagnosis are also approved. *See Valentini v. Grp. Health Inc.*, No. 20-CV-9526 (JPC), 2020 WL

7646892, at *2 (S.D.N.Y. Dec. 23, 2020) (noting individuals generally "maintain[] significant

privacy rights to [their] medical information," and courts "regularly seal" such information); *see*

*also* S.D.N.Y. ECF Rule 21.4 (stating that litigants should consider redacting documents that

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 144 of 149

A-142

Case 1:23-cv-06418-JGLC   Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 46 of 50
Document 106   Filed 09/27/24   Page 18 of 20

contain medical records, treatment, and diagnosis). Accordingly, the following information may
be properly redacted:

- ECF No. 77 at 7 (ECF No. 75 at 7), second sentence in second full paragraph;
  ECF No. 78 ¶ 11 (ECF No. 76 ¶ 11), bullet points; ECF No. 80 at 2 (ECF No. 81
  at 2), the proposed redaction; ECF No. 80 at 5–6 (ECF No. 81 at 5–6), bullet
  points; ECF No. 80 at 6 (ECF No. 81 at 6), the beginning of the third line in the
  first full paragraph to "has."

Plaintiff's remaining requests for redaction are denied. The Court will not allow

redactions of information that is already public, such as descriptions of information in public

docket entries or caselaw parentheticals. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215

(JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying motion to seal information

that is already a matter of public record). "Because the common law framework is dispositive" of

the motions to seal, "the Court need not undertake the First Amendment analysis." *Id.*

**IV.    The Motion for Sanctions is Denied**

Defendant argues that everything the Complaint says about him is "utterly and

demonstrably false" and that Plaintiff's lawyers "failed to conduct a reasonable inquiry." ECF

No. 54 at 2. Federal Rule of Civil Procedure 11 requires an attorney filing a pleading to certify

that "to the best of the person's knowledge, information and belief, formed after an inquiry

reasonable under the circumstances . . . the factual contentions have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 creates an "incentive to stop,

think and investigate more carefully before serving and filing papers." *Cooter & Gell v.

Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (internal quotation marks omitted). "Rule 11

'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a

reasonable inquiry into the viability of a pleading before it is signed.'" *AJ Energy LLC v. Woori*

Case: 25-564, 06/17/2025, DktEntry: 53.1, Page 145 of 149

A-143

Case: 24-3025, 11/19/2024, DktEntry: 2.2, Page 47 of 50
Case 1:23-cv-06418-JGLC   Document 106   Filed 09/27/24   Page 19 of 20

*Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

The Court finds that because there has not yet been any discovery in this action, there is no basis from which to conclude that the facts alleged in the Complaint are false or that Plaintiff did not undertake a reasonable inquiry as a matter of law. *See Gartenbaum v. Beth Israel Med. Ctr.*, 26 F. Supp. 2d 645, 649 (S.D.N.Y. 1998) (declining to impose Rule 11 sanctions when there had been no discovery since the filing of the complaint); *see also* Decision, *Pierson v. Black*, No. 952002/2022 (N.Y. Oct. 24, 2023). Indeed, many of the cases that Defendant cites in support of issuing Rule 11 sanctions based on insufficient inquiries made surrounding the filing of a pleading were decided during a later phase of litigation. *See*, *e.g.*, *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (deciding Rule 11 motion along with summary judgment). Accordingly, Defendant's motion for sanctions is denied without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED, Defendant's motion to stay is DENIED as moot, the parties' motions to seal are GRANTED in part and DENIED in part, and Defendant's motion for sanctions is DENIED. The parties are directed to publicly file versions of their materials related to the motion to stay (ECF Nos. 75, 76, and 81) that conform to Section III of this order no later than **October 4, 2024**.

It is hereby ORDERED that the initial pretrial conference in this matter is set for **October 29, 2024** at **12:30 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. A proposed Civil Case Management Plan and Scheduling Order shall be filed by **October 22, 2024**.

19

The Clerk of Court is directed to terminate ECF Nos. 22, 40, 49, 73, and 74.

Dated:  September 27, 2024
        New York, New York

                                        SO ORDERED.

                                        *Jessica Clarke*

                                        JESSICA G. L. CLARKE
                                        United States District Judge

A-145

# EXHIBIT 2

**A-146**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                Plaintiff,

       -against-

LEON BLACK,

                Defendant.

23-CV-6418 (JGLC)

**<u>ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

For the reasons stated on the record at the initial pre-trial conference ("IPTC") held before this Court on November 7, 2024, Plaintiff's motion for leave to file an amended complaint (ECF No. 91) is GRANTED, and Defendant's motion for an interlocutory appeal (ECF No. 122) is GRANTED. The parties are directed to refile the sealed documents with respect to the motion for leave to file an amended complaint with redactions consistent with the Court's Order at ECF No. 106.

The Court further directs counsel for Plaintiff to submit all Twitter messages referenced at the IPTC (i.e., direct messages wherein Plaintiff allegedly disclosed to others what occurred with Defendant Leon Black) on or before **November 12, 2024**. Defendant is permitted to submit any additional information regarding Plaintiff's alleged failure to keep her identity confidential by **November 15, 2024**. The Court takes Defendant's motion to amend the case caption to disclose Plaintiff's identity (ECF No. 116) under advisement.

The Clerk of Court is respectfully directed to terminate ECF Nos. 91, 99 and 122.

Dated: November 8, 2024
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

A-147

S.D.N.Y. – N.Y.C.
23-cv-6418
Clarke, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

---

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand twenty-five.

Present:

John M. Walker, Jr.,
Richard C. Wesley,
Joseph F. Bianco,
　　　*Circuit Judges*.

---

Leon Black,

　　　　　*Petitioner*,

　　　v.　　　　　　　　　　　　　　　　　　24-3025

Jane Doe,

　　　　　*Respondent*.

---

Petitioner requests, under 28 U.S.C. § 1292(b), leave to appeal an interlocutory order of the district court. Petitioner also moves for leave to file a reply. Upon due consideration, it is hereby ORDERED that the motion for leave to file a reply is GRANTED. It is further ORDERED that the petition for leave to appeal under § 1292(b) is GRANTED. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23–25 (2d Cir. 1990); *Mei Shing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 97–98 (2d Cir. 2017). In addition to all other issues the parties wish to address in their briefs, they are directed to address whether this Court should certify issues raised by this matter to the New York Court of Appeals.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

